UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2016 SEP 30 P 12: 41

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

DEMONTRAY HUNTER, by and through his next friend Rena Hunter; RUSSELL D. SENN, by and through his next friend Irene Senn; TRAVIS S. PARKS, by and through his next friend Catherine Young,

    Plaintiffs,

v.

JAMES V. PERDUE, in his official capacity as Commissioner of the Alabama Department of Mental Health and Mental Retardation,

    Defendant.

Case No. 2:16-cv-798

## COMPLAINT

### I. INTRODUCTION

1. In this civil action, Plaintiffs Demontray Hunter, Russell Senn, and Travis Parks, each of whom has severe mental illness and has been found incompetent to stand trial in the criminal proceedings against him, challenge the Alabama Department of Mental Health and Mental Retardation's ("Department of Mental Health") continuing failure to provide them the competency restoration treatment to which they are entitled under federal law.

2. Individuals with severe mental illness who have been deemed incompetent to stand trial in Alabama, and who are awaiting transfer to a suitable institution for competency restoration treatment, wait an average of eight months from the date of the order committing them to the custody of the Department of Mental Health for that purpose to begin receiving appropriate treatment. During that waiting period, individuals deemed incompetent to stand trial as a result of

the impact of their mental illness on their functioning languish in county jails that are not equipped to provide the extensive mental health treatment that these individuals need.

3. The failure of the Alabama Department of Mental Health to provide timely competency restoration therapy and treatment to Plaintiffs violates their right to due process under the Fourteenth Amendment and Title II of the Americans with Disabilities Act. This action seeks declaratory and injunctive relief, preliminarily and permanently thereafter, to remedy the irreparable harm suffered by Plaintiffs as a result of the violation of their rights under federal law.

## II. JURISDICTION AND VENUE

4. This is a civil action authorized by 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights, privileges, and immunities guaranteed by federal law. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, because this action arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343(a)(4), because this action seeks to redress the deprivation of Plaintiffs' civil rights and to secure equitable or other relief for the violation of those rights.

5. This Court has jurisdiction over this action for declaratory relief pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by 28 U.S.C. § 2202, 42 U.S.C. § 1983, and Rule 65 of the Federal Rules of Civil Procedure.

6. Venue is proper in this District and Division under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred within this District and Division. Defendant Perdue performs his official duties on behalf of the State of Alabama within the Middle District, thus making venue proper therein.

## III. PARTIES

7. Plaintiff **DEMONTRAY HUNTER** is a twenty-eight year-old U.S. citizen who resides in Jefferson County, Alabama who has been charged with attempted murder. Mr. Hunter has been found incompetent to stand trial and committed to the custody of the Alabama Department of Mental Health to receive competency restoration care and treatment.

8. Mr. Hunter's current mental state limits his ability to protect his legal interests. A next friend is, therefore, necessary to represent his interests. Mr. Hunter maintains a close relationship with his mother, Rena Hunter, who has advocated for Mr. Hunter's receipt of mental health treatment since he witnessed the murder of his father at age thirteen. Rena Hunter has volunteered to serve as Mr. Hunter's next friend.

9. Plaintiff **RUSSELL D. SENN** is a fifty-six year-old U.S. citizen and veteran residing in Pike County, Alabama who has been charged with murder. Mr. Senn has been found incompetent to stand trial and has been committed to the custody of the Alabama Department of Mental Health to receive competency restoration care and treatment.

10. Mr. Senn's current mental state limits his ability to protect his legal interests. A next friend is, therefore, necessary to represent his interests. Mr. Senn maintains a close relationship with his mother, Irene Senn, who has been an advocate for his receipt of mental health treatment for many years. Irene Senn has volunteered to serve as Mr. Senn's next friend.

11. Plaintiff **TRAVIS S. PARKS** is a thirty-seven year-old U.S. citizen residing in Houston County, Alabama who has been charged with third degree burglary. Mr. Parks has been deemed incompetent to stand trial and has been committed to the custody of the Department of Mental Health for competency restoration care and treatment.

3

12. Mr. Parks's current mental state limits his ability to protect his legal interests. A next friend is, therefore, necessary to represent his interests. Mr. Parks maintains a close relationship with his mother, Catherine Young, who has been an active advocate for Mr. Parks's receipt of mental health treatment for many years. Catherine Young has volunteered to serve as Mr. Parks's next friend.

13. Defendant **JAMES V. PERDUE** is the Commissioner of the Alabama Department of Mental Health. As Commissioner of the Department of Mental Health, Defendant Perdue is charged, under Alabama law, with directing, supervising, and controlling the Department's provision of mental health care to persons with severe mental illness throughout Alabama. Ala. Code § 22-50-2 (1975); Ala. Admin. Code §§ 580-1-1-.01 (commissioners and divisions of department), 580-1-1-.03 (persons served by the Department of Mental Health), 580-1-1-.04 (agency head), 580-1-1-.06 (authority of commissioner), 580-1-1-.08 (agency is under direction, supervision, and control of commissioner). Specifically, Commissioner Perdue has the authority and power to devise and implement the policies, procedures, and practices necessary to ensure that persons committed to the custody of the Department of Mental Health for competency restoration treatment by courts of competent jurisdiction throughout the State of Alabama timely receive the mental health treatment for which they are committed to the custody of the Department of Mental Health through the State of Alabama's only forensic hospital, the Taylor Hardin Secure Medical Facility, or other suitable institution. The Department of Mental Health is the sole state agency in the State of Alabama designated to administer or supervise the provision of competency restoration treatment pursuant to Alabama Rule of Criminal Procedure 11.6. Defendant Perdue, by and through the Alabama Department of Mental Health, utilizes federal and state funds in providing services in a way that he is obligated to ensure compliance with state and federal constitutional

4

and statutory protections for individuals who are involuntarily detained in order to receive mental health services.

## IV. FACTUAL ALLEGATIONS

### A. Defendant Perdue, By and Through the Alabama Department of Mental Health, Must Provide Individuals Found Incompetent to Stand Trial Timely Competency Restoration Treatment.

14. Alabama Rule of Criminal Procedure 11.6 specifies the procedure for the determination and the restoration of competency of individuals with mental illness who are being criminally prosecuted.

15. Where a court holds the competency hearing prescribed in Alabama Rule of Criminal Procedure 11.6(b), and finds that the defendant is incompetent to stand trial but that there is a substantial probability that the defendant will be restored to competency within a reasonable period of time, if the court *also* finds that (a) that the defendant's being a large poses a real and present threat of substantial harm to the defendant or others, and (b) that the defendant is mentally ill and if not treated will continue to suffer mental distress and will experience deterioration of the ability to function independently, and (c) that the defendant is unable to make a rational and informed decision whether treatment is desirable, the court "shall order the defendant committed to the custody of the Alabama Department of Mental Health and Mental Retardation *for therapy and treatment, in an institution suitable to receive such persons*, for a *period not to exceed six months or until the defendant's earlier restoration to competency*[.]" Ala. R. Crim. P. 11.6(c)(3)(i) (emphasis added).

16. Alabama Rule of Criminal Procedure 11.6(d)(1) requires the court to periodically "review the situation of a defendant" committed pursuant to Rule 11.6(c)(3)(i). The commitment of an incompetent defendant for restorative treatment shall not exceed six months pursuant to an

5

original order. Ala. R. Crim. P. 11.6(d)(1). Commitment of an incompetent defendant for restorative therapy pursuant to an order renewing an original order "shall not exceed one year." *Id.*

17. Alabama Rule of Procedure 11.6 likewise requires any person responsible for the therapy and treatment of an incapacitated defendant subject to commitment to report on the defendant's status no less frequently than every ninety-one days. Ala. R. Crim. P. 11.6(f).

18. The time periods for the commitment of an incapacitated defendant for restorative therapy and treatment, as well as the requisite reporting on the defendant's status, impose a duty on the Alabama Department of Mental Health to provide competency restoration treatment in an appropriate institution within the timeframe specified.

19. Incapacitated criminal defendants have liberty interests in freedom from incarceration and in restorative treatment.

20. Incapacitated criminal defendants who have been committed to the Department of Mental Health for restorative treatment in a suitable institution have liberty interests in receiving appropriate restorative treatment in an institution suitable to provide that restorative treatment.

21. While they are detained in jail, incapacitated criminal defendants do not receive care giving them a realistic opportunity of becoming competent to stand trial.

22. Federal courts have repeatedly recognized that county jails are poorly equipped to provide appropriate mental health care to individuals requiring competency restoration treatment. *See, e.g., Trueblood, et al. v. Washington State Department of Social and Health Services, et al.*, Case No. 2:14-cv-01178-MJP (W.D. Wash. Apr. 2, 2015) Doc. 131 (Findings of Fact and Conclusions of Law) at ¶¶ 25-28, *affirmed in part and reversed in part*, 822 F.3d 1037 (9th Cir.

2016) (on unrelated grounds); *Advocacy Ctr. for the Elderly & Disabled v. La. Dep't of Health & Hosps.*, 731 F. Supp. 2d 603, 612-18 (E.D. La. 2010).

23. Under the Due Process Clause of the Fourteenth Amendment, "a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain capacity in the foreseeable future." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

24. "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Id.*

25. The Department of Mental Health has a duty to ensure that persons committed to its custody for purposes of competency restoration therapy and treatment do not languish, for unnecessarily protracted periods, in jails where the minimal care afforded them bears little relationship to the purposes of their detention and the duration of that confinement bears no relationship to their progress towards competency.

26. Notwithstanding Defendant Perdue's duty to provide timely competency restoration treatment to criminal defendants with severe mental illness, by and through the Department of Mental Health, incapacitated defendants often wait eight months or longer before being transferred to Alabama's single forensic treatment facility, the Taylor Hardin Secure Medical Facility. Defendant Perdue recently acknowledged as much: "If you want to put a gun in the hands of the federal government and put a bullet in it, we're doing it." Amy Yurkanin, *Long Waits as Gridlock Grips Alabama Mental Health System*, AL.COM (Aug. 17, 2015, 2:21 PM), http://www.al.com/news/birmingham/index.ssf/2016/08/mental_illness_part_2.html.

### B. Alabama's County Jails Do Not and Cannot Provide Competency Restoration Treatment to Individuals Deemed Incompetent to Stand Trial.

27. Alabama's county jails are, as the Tuscaloosa County sheriff described them, "the worst place for someone with a mental illness." E. FULLER TORREY, M.D., ET AL., THE TREATMENT OF PERSONS WITH MENTAL ILLNESS IN PRISONS AND JAILS: A STATE SURVEY 27 (2014), *available at* http://www.treatmentadvocacycenter.org/storage/documents/treatment-behind-bars/treatment-behind-bars.pdf.

28. Alabama's county jails provide or arrange for the provision of minimal mental health care and treatment, such as medication management. The minimal mental health care provided by Alabama's county jails is designed to manage inmates' mental illness not restore the capacity of an incapacitated criminal defendant.

29. Alabama's county jails, for legitimate penological reasons, do not permit treating professionals to use the full array of pharmacological options in their treatment of mentally ill inmates who require complicated pharmacological cocktails to restore them to competency. For example, Alabama's county jails, including those in which Plaintiffs are confined, do not provide narcotics to mentally ill inmates even where doing so would otherwise be medically indicated.

30. Alabama's county jails do not, and cannot, employ the range of full-time clinicians necessary to provide competency restoration treatment to incapacitated defendants.

31. Alabama's county jails do not, and cannot, provide the therapeutic environment often necessary to address severe, and complicated, mental illnesses.

32. Individuals with severe mental illness who have been deemed incompetent to stand trial often engage in disruptive or problematic behaviors in the jail setting that provoke punitive

responses by county jail officials. These punitive responses to the behavioral manifestations of mental illness often exacerbate the individuals' mental illness.

33. Because individuals with severe mental illness who have been found incompetent to stand trial need extensive mental health treatment unavailable in Alabama's county jails, the mental condition of these individuals often markedly deteriorates during long periods of incarceration in county jails.

34. Alabama's jails often segregate inmates with severe mental illness to ensure necessary order and prevent inmates with severe mental illness from harming themselves or others, or being harmed.

### C. Defendant Perdue Has Failed to Arrange for the Provision of Timely Competency Restoration Treatment to Plaintiffs.

#### i. Plaintiff Demontray Hunter

35. Mr. Hunter began exhibiting symptoms of mental illness after he witnessed his brother kill his father at age thirteen. During his incarceration for his present offense, Mr. Hunter was provisionally diagnosed with schizophrenia paranoid type with active psychosis.

36. Mr. Hunter was arrested on May 27, 2015, and charged with attempted murder after allegedly shooting his brother. Mr. Hunter has been incarcerated in the Jefferson County Jail since his arrest.

37. A Jefferson County circuit judge found Mr. Hunter incompetent to stand trial on April 14, 2016. The court found that there was a substantial probability that Mr. Hunter could be restored to competency within a reasonable period of time and entered an order committing Mr. Hunter to the custody of the Alabama Department of Mental Health for "such treatment as is

9

required for [Mr. Hunter] to attain competency or minimize or abate the risk of harm threatened by [Mr. Hunter's] being at large" on April 14, 2016.

38. The Jefferson County circuit judge's April 14, 2016 order generally continued further criminal proceedings against Mr. Hunter until such time as the court determines that Mr. Hunter has been restored to competency to participate in the criminal proceedings against him.

39. Mr. Hunter is on the waiting list for transfer from the Jefferson County Jail to the Taylor Hardin Secure Medical Facility for competency restoration care and treatment. As of the date of this filing, Mr. Hunter remains incarcerated at the Jefferson County Jail.

40. Mr. Hunter does not take prescribed medication regularly in the Jefferson County Jail, nor does he receive any form of intensive mental health treatment designed to restore him to competency to participate in the criminal proceedings against him.

41. As a result of his mental illness and his inability to receive appropriate mental health care in the Jefferson County Jail, Mr. Hunter has exhibited behaviors that have resulted in his being placed in segregation approximately three times.

42. As a result of Mr. Hunter's inability to receive appropriate mental health treatment in the Jefferson County Jail, his mental health has regressed. Mr. Hunter experiences auditory hallucinations and/or delusional thinking, nervousness, paranoia, and insomnia.

    ii.    **Plaintiff Russell Senn**

43. Mr. Senn has an extensive history of mental illness, and has been diagnosed with schizoaffective disorder, bipolar type, among others. He has a history of psychiatric institutionalization and outpatient treatment with the Department of Veteran's Affairs. Mr. Senn has struggled with suicidal ideation, as well as compliance with medications.

44. Mr. Senn was arrested on April 26, 2013, and charged with murder after allegedly shooting his sister following an extended period of sleep deprivation.

45. A Pike County circuit judge found Mr. Senn incompetent to stand trial on February 5, 2016. The court found that there was a substantial probability that Mr. Senn could be restored to competency within a reasonable period of time and entered an order committing Mr. Senn to the custody of the Department of Mental Health for "such treatment as is required for [Mr. Senn] to attain competency or minimize or abate the risk of harm threatened by [Mr. Senn's] being at large" on February 5, 2016.

46. The Pike County circuit judge's February 5, 2016 order generally continued further criminal proceedings against Mr. Senn until such time as the court determines that Mr. Senn has been restored to competency to participate in the criminal proceedings against him.

47. Mr. Senn is on the waiting list for transfer from the Houston County Jail to the Taylor Hardin Secure Medical Facility for competency restoration care and treatment. As of the date of filing, Mr. Senn remains incarcerated at the Pike County Jail.

48. While incarcerated at the Pike County Jail, clinicians at the East Alabama Mental Health Center prepared an outpatient treatment plan for Mr. Senn on March 8, 2016, specifically noting "problems" of psychosis and mood disorder, as well as insomnia. The "treatment goals" in Mr. Senn's March 8, 2016 treatment plan do not include competency restoration. Mr. Senn's clinical records reflect that, on June 25, 2016, he was found to be making insufficient progress toward his treatment goals and that he had not been "seen" since his intake appointment on March 8, 2016. While the services specified in Mr. Senn's March 8, 2016 treatment plan include medication management, Mr. Senn does not take prescribed medication in the Pike County Jail.

11

49. As a result of Mr. Senn's inability to receive appropriate mental health treatment incarcerated in the Pike County Jail, his mental health has regressed. Mr. Senn continues to suffer from insomnia and experiences anxiety, as well as the symptoms of his diagnosed illnesses.

### iii.   Plaintiff Travis Parks

50. Mr. Parks has an extensive history of mental illness and has been diagnosed with chronic paranoid schizophrenia with acute exacerbation. He has required extensive in-patient and out-patient mental health treatment throughout the past decade, which has included not only significant pharmacological treatment and management, but also extensive home- and community-based services. Mr. Parks has also struggled with taking medication regularly. Mr. Parks has experienced suicidal ideation and attempted to commit suicide in the past.

51. Mr. Parks was arrested on September 14, 2014, and charged with third degree burglary.

52. A Houston County circuit judge found Mr. Parks incompetent to stand trial, and entered an order committing him to the custody of the Department of Mental Health for competency restoration care and treatment on January 21, 2016. The court entered another order committing Mr. Parks to Taylor Hardin Secure Medical Facility on August 29, 2016. As of the date of this filing, Mr. Parks remains incarcerated at the Houston County Jail.

53. Mr. Parks is on the waiting list for transfer from the Houston County Jail to the Taylor Hardin Secure Medical Facility for competency restoration care and treatment.

54. Mr. Parks receives some medication management in the Houston County Jail. Mr. Parks does not receive intensive mental health treatment designed to restore his competency to participate in the criminal proceedings against him.

55. As a result of his severe mental illness and his inability to receive adequate mental health treatment in the Houston County Jail, Mr. Parks has exhibited problematic behavior while incarcerated that has resulted in his being placed in segregation.

56. As a result of Mr. Parks's inability to receive adequate mental health treatment in the Houston County Jail, his mental health has regressed. Mr. Parks experiences auditory hallucinations, paranoia, mania, anxiety levels that prevent him from eating, and adverse side effects from his medications.

## V. LEGAL CLAIMS

### COUNT I
### Violation of the Fourteenth Amendment of the United States Constitution
### 42 U.S.C. § 1983

57. The allegations in Paragraphs 1 through 56 above are incorporated by reference as if fully set forth herein.

58. The Due Process Clause of the Fourteenth Amendment requires that the nature and duration of an individual's involuntary confinement bear a reasonable relation to the purpose for which the individual is committed.

59. Once an individual is found unable to aid and assist in his own defense, the only lawful purpose for his confinement is to treat his mental illness so as to restore him to competency.

60. An individual found unable to aid and assist in his criminal defense has a constitutional right to such individualized treatment as will give him a realistic opportunity to be restored to competency.

61. County jails in the State of Alabama do not have the capacity to provide the competency restoration treatment required by the United States Constitution.

62. The Alabama county jails in which Plaintiffs Demontray Hunter, Russell Senn, and Travis Parks are incarcerated do not provide Plaintiffs mental health treatment designed to or

13

capable of restoring Plaintiffs to competency to participate in the criminal proceedings against them.

63. Defendant Perdue, by and through the Alabama Department of Mental Health and Mental Retardation, has failed to provide Plaintiffs Demontray Hunter, Russell Senn, and Travis Parks the competency restoration therapy and treatment for which Plaintiffs were committed to the custody of the Department.

64. Acting under color of state law, Defendant Purdue's administration of the Department of Mental Health, specifically, its policies, procedures, and practices in regard to the Department of Mental Health's provision or arrangement for the provision of competency restoration treatment has denied Plaintiff Demontray Hunter's, Russell Senn's, and Travis Parks's due process pursuant to the Fourteenth Amendment to the United States Constitution.

65. Unless enjoined by this Court from continuing to do so, Defendant Perdue will continue to violate and cause the violation of the constitutional rights of Plaintiffs Demontray Hunter, Russell Senn, and Travis Parks to receive mental health treatment designed to restore them to competency.

## COUNT 2
### Violation of the Americans with Disabilities Act
### 42 U.S.C. § 12132 *et seq.*

66. The allegations in Paragraphs 1 through 56 above are incorporated by reference as if fully set forth herein.

67. Plaintiffs Demontray Hunter, Russell Senn, and Travis Parks are qualified disabled persons as defined in the Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq.*

68. Defendant Perdue, in his direction, supervision, and control of the Alabama Department of Mental Health and Mental Retardation, specifically, the Department's policies,

procedures, and practices regarding the provision of mental health treatment designed to restore Plaintiffs to competency, has failed to provide or cause to be provided through the Department of Mental Health reasonable accommodation of the Plaintiffs' disabilities.

69. Unless enjoined by this Court, Defendant Perdue, in his direction, supervision, and control of the Department of Mental Health, will continue to violate and cause the violation of the rights of the Plaintiffs under the Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq.*

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant them the following relief:

A. A declaration that Defendant Perdue is denying Plaintiffs Demontray Hunter, Russell Senn, and Travis Parks due process under the Fourteenth Amendment to the United States Constitution;

B. A declaration that Defendant Perdue is violating Plaintiffs Demontray Hunter's, Russell Senn's, and Travis Parks's rights to reasonable accommodation under the Americans with Disabilities Act;

C. The issuance of permanent injunction restraining Defendant Purdue, in his direction, supervision, and control of the Department of Mental Health, from denying Plaintiffs Demontray Hunter, Russell Senn, and Travis Parks due process, specifically, from denying Plaintiffs appropriate and adequate competency restoration treatment;

D. The issuance of a permanent injunction restraining Defendant Perdue, in his direction, supervision, and control of the Department of Mental Health, from denying Plaintiffs Demontray Hunter, Russell Senn, and Travis Parks reasonable accommodation of their disabilities;

E. An award of Plaintiffs' attorneys' fees and costs; and

F. Such other and further relief as the Court may deem just and proper.

Dated: September 30, 2016

Respectfully submitted,

*/s/ M. Geron Gadd*
M. Geron Gadd (ASB-0601-J98S)
ALABAMA DISABILITIES ADVOCACY PROGRAM
400 South Union Street, Suite 280
Montgomery, Alabama 36104
Telephone: (334) 240-0994
Facsimile: (334) 240-0996
Email: mggadd@adap.ua.edu

J. Patrick Hackney (ASB-6971-H51J)
William Van Der Pol, Jr. (ASB-2112-114F)
ALABAMA DISABILITIES ADVOCACY PROGRAM
500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
Telephone: (205) 348-4928
Facsimile: (205) 348-3909
Email: jphackney@adap.ua.edu
       wvanderpoljr@adap.ua.edu

*/s/ Henry F. (Hank) Sherrod III (with permission)*
Henry F. (Hank) Sherrod III (ASB-1200-D63H)
HENRY F. SHERROD III, P.C.
119 South Court Street
P. O. Box 606
Florence, Alabama 35631-0606
Telephone: (256) 764-4141
Facsimile: (877) 684-0802
Email: hank@alcivilrights.com

*/s/ Randall C. Marshall / Randall C. Marshall (with permission)*
Randall C. Marshall (ASB-3023-A56M)
ACLU OF ALABAMA FOUNDATION
P.O. Box 6179
Montgomery, AL 36106-0179
Telephone: (334) 420-1741
Facsimile: (334) 269-5666
Email: rmarshall@aclualabama.org

*Attorneys for Plaintiffs*

16