UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DEMONTRAY HUNTER, by and through his next friend, Rena Hunter; RUSSELL D. SENN, by and through his next friend, Irene Senn; TRAVIS S. PARKS, by and through his next friend, Catherine Young; VANDARIUS S. DARNELL, by and through his next friend, Bambi Darnell; FRANK WHITE, JR., by and through his next friend, Linda White; MARCUS JACKSON, by and through his next friend Michael P. Hanle; TIMOTHY D. MOUNT, by and through his next friend, Dorothy Sullivan; HENRY P. MCGHEE, by and through his next friend, Barbara Hardy, individually and on behalf of all others similarly situated; and the ALABAMA DISABILITIES ADVOCACY PROGRAM, | CASE NO. 2:16-cv-00798-MHT-CSC<br><br>CLASS ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF |
|      Plaintiffs, | |
| v. | |
| JAMES V. PERDUE, in his official capacity as Commissioner of the Alabama Department of Mental Health, | |
|     Defendant. | |

**FIRST AMENDED COMPLAINT**

## I.    NATURE OF THE ACTION

1.    In this civil action, Plaintiffs Demontray Hunter, Russell S. Senn, Travis S. Parks, Vandarius S. Darnell, Frank White, Jr., Marcus Jackson, Timothy D. Mount and Henry P. McGhee, individually and on behalf of all others similarly situated, together with the Alabama Disabilities Advocacy Program, challenge the Alabama Department of Mental Health's ("ADMH") continuing failure to timely provide court-ordered inpatient mental evaluations used

to determine competency to stand trial and competency restoration treatment (together, "Competency Services") to persons committed to its custody for that purpose in violation of federal law.

2.      In Alabama, individuals with mental illness and/or intellectual disabilities who have been charged with criminal offenses but who are suspected of being incompetent or have been deemed incompetent to stand trial are committed to the custody of ADMH, which is charged under state law with providing them Competency Services. Individuals awaiting Competency services in Alabama wait between six and eight months for transfer from county jails to a state psychiatric hospital for Competency Services. This protracted waiting period results from the limited capacity of the two psychiatric hospitals in which ADMH provides Competency Services, Taylor Hardin Secure Medical Facility ("Taylor Hardin") and Bryce Hospital ("Bryce"). The waiting list for admission into Taylor Hardin has, in recent months, had nearly 60 individuals awaiting admission for inpatient psychiatric services. While that list includes persons awaiting evaluations, competency restoration treatment, and psychiatric treatment following an adjudication of not guilty by reason of insanity and referral from the Alabama Department of Corrections, individuals awaiting mental evaluations and competency restoration treatment wait alongside others to gain admission into Taylor Hardin for court-ordered services. The waiting list for admission into Bryce includes persons seeking intensive inpatient psychiatric services as the result of civil commitments and other referrals, and as such persons awaiting Competency Services at Bryce likewise await admission for unduly long periods of time.

3.      While awaiting admission into Taylor Hardin and Bryce for Competency Services, individuals suspected of being incompetent and those found incompetent to stand trial languish in county jails that are, without exception, woefully ill-equipped to care for individuals with mental illness and intellectual disabilities.  These individuals are among the most vulnerable members of their communities.  While none of the individuals awaiting Competency Services has been convicted of a crime, their experiences in jail are punishing.  Individuals with severe mental illness often struggle to adjust to a penal environment and are often placed in segregation when, due to their mental illness, they are unable to conform to the rules and procedures of the county jails.  Others are placed in protective custody to minimize the risk of victimization.  In both instances, isolation frequently exacerbates mental illness and leads to decompensation.  Even when individuals awaiting Competency Services are not segregated, the necessarily punitive environment of a jail precludes them from obtaining the individual psychiatric care, therapy, or educational measures that they need.  After long waits in jails without individualized, intensive mental health care, incompetent defendants frequently become more difficult to restore to competency.  Even where restoring an individual to competency remains possible, it can take longer and require more intensive interventions.

4.      ADMH may not, consistent with established constitutional standards, continue to warehouse individuals awaiting court-ordered Competency Services in county jails.  ADMH's failure to timely provide Competency Services to the individual Plaintiffs and putative class members violates their right to due process under the Fourteenth Amendment to the United States Constitution.  This class action seeks declaratory and injunctive relief, preliminarily and permanently thereafter, to remedy the irreparable harm suffered by the individual Plaintiffs and putative class members as a result of the violation of their rights under federal law.

## II.    JURISDICTION AND VENUE

5.    This is a civil action authorized by 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights, privileges, and immunities guaranteed by federal law.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331, because this action arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343(a)(4), because this action seeks to redress the deprivation of the civil rights of the individual Plaintiffs and the Plaintiff class and to secure equitable or other relief for the violation of those rights.

6.    This Court has jurisdiction over this action for declaratory relief pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.  Injunctive relief is authorized by 28 U.S.C. § 2202, 42 U.S.C. § 1983, and Rule 65 of the Federal Rules of Civil Procedure.

7.    Venue is proper in this District and Division under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred within this District and Division.  Defendant Perdue performs his official duties on behalf of the State of Alabama within the Middle District, thus making venue proper therein.

## III.    PARTIES

### A.    Individual Plaintiffs

8.    Plaintiff DEMONTRAY HUNTER is a twenty-eight-year-old U.S. citizen who resides in Jefferson County, Alabama who has been charged with attempted murder.  Mr. Hunter has been found incompetent to stand trial and committed to the custody of ADMH to receive competency restoration therapy and treatment.

9.    Mr. Hunter's current mental state limits his ability to protect his legal interests.  A next friend is, therefore, necessary to represent his interests.  Mr. Hunter maintains a close relationship with his mother, Rena Hunter, who has advocated for Mr. Hunter's receipt of mental

health treatment since he witnessed the murder of his father at age thirteen. Rena Hunter has volunteered to serve as Mr. Hunter's next friend.

10.     Plaintiff RUSSELL D. SENN is a fifty-six-year-old U.S. citizen and veteran residing in Pike County, Alabama who has been charged with murder. Mr. Senn has been found incompetent to stand trial and has been committed to the custody of ADMH to receive competency restoration therapy and treatment.

11.     Mr. Senn's current mental state limits his ability to protect his legal interests. A next friend is, therefore, necessary to represent his interests. Mr. Senn maintains a close relationship with his mother, Irene Senn, who has been an advocate for his receipt of mental health treatment for many years. Irene Senn has volunteered to serve as Mr. Senn's next friend.

12.     Plaintiff TRAVIS S. PARKS is a thirty-seven-year-old U.S. citizen residing in Houston County, Alabama who has been charged with third degree burglary. Mr. Parks has been deemed incompetent to stand trial and has been committed to the custody of ADMH for competency restoration therapy and treatment.

13.     Mr. Parks's current mental state limits his ability to protect his legal interests. A next friend is, therefore, necessary to represent his interests. Mr. Parks maintains a close relationship with his mother, Catherine Young, who has been an active advocate for Mr. Parks's receipt of mental health treatment for many years. Catherine Young has volunteered to serve as Mr. Parks's next friend.

14.     Plaintiff VANDARIUS S. DARNELL is a thirty-five-year-old U.S. citizen residing in Walker County, Alabama who has been charged with attempted murder. Mr. Darnell has been found incompetent to stand trial and has been committed to the custody of ADMH for competency restoration therapy and treatment.

15.    Mr. Darnell's current mental state limits his ability to protect his legal interests.  A next friend is, therefore, necessary to represent his interests.  Mr. Darnell maintains a close relationship with his sister-in-law, Bambi Darnell, who actively advocates for Mr. Darnell's receipt of mental health care.  Bambi Darnell has volunteered to serve as Mr. Darnell's next friend in this action.

16.    Plaintiff FRANK WHITE, JR. is a forty-year-old U.S. citizen residing in Talladega County, Alabama who has been charged with making a terroristic threat.  Mr. White has been found incompetent to stand trial and has been committed to the custody of ADMH to receive competency restoration therapy and treatment.

17.    Mr. White's current mental state limits his ability to protect his legal interests.  A next friend is, therefore, necessary to represent his interests.  Mr. White maintains a close relationship with his aunt, Linda White, who has advocated for his receipt of mental health care for a number of years and at one point served as Mr. White's legal guardian.  Linda White has volunteered to serve as Mr. White's next friend in this action.

18.    Plaintiff MARCUS JACKSON is a twenty-eight-year-old U.S. citizen residing in Jefferson County, Alabama who has been charged with breaking and entering a vehicle and burglary.  Mr. Jackson has been found incompetent to stand trial and has been committed to the custody of ADMH to receive competency restoration therapy and treatment.

19.    Mr. Jackson's current mental state limits his ability to protect his legal interests.  A next friend is, therefore, necessary to represent his interests.  Mr. Jackson maintains some relationship with his parents, but feels that he has disappointed them and does not want to impose upon them the burden of prosecuting this lawsuit.  Michael Hanle, an experienced criminal

defense attorney based in Birmingham, Alabama has volunteered to serve as Mr. Jackson's next friend in this action.

20.     Plaintiff TIMOTHY D. MOUNT is a twenty-eight-year old U.S. citizen residing in Montgomery County, Alabama who has been charged with first degree kidnapping and attempted sexual abuse of a child.  Mr. Darnell has been found incompetent to stand trial and has been committed to the custody of ADMH for competency restoration treatment.

21.     Mr. Mount's mental state limits his ability to protect his legal interests.  A next friend is, therefore, necessary to represent his interests.  Mr. Mount maintains an extremely close relationship with his aunt, Dorothy Sullivan, with whom he resides, who was awarded temporary legal custody of Mr. Mount in response to a Department of Human Resources placement in 2005, and who continues to advocate for his needs in Individual and Family Support Council Service Plan meetings and elsewhere.  Mrs. Sullivan has volunteered to serve as Mr. Mount's next friend in this action.

22.     Plaintiff HENRY P. MCGHEE is a twenty-five-year-old U.S. citizen residing in Tuscaloosa County, Alabama who has been charged with murder and theft of property.  The Circuit Court of Tuscaloosa County has determined that there are reasonable grounds to suspect that Mr. McGhee is incompetent to stand trial and has ordered that Mr. McGhee be provided an inpatient mental evaluation by ADMH.

23.     Mr. McGhee's current mental state limits his ability to protect his legal interests.  A next friend is, therefore, necessary to represent his interests.  Mr. McGhee maintains a close relationship with his grandmother, Barbara Hardy, who has provided him care and support and advocated for his interests in other context.  Ms. Hardy has volunteered to serve as Mr. McGhee's next friend in this action.

### B.  Associational Plaintiff

24.    Plaintiff ALABAMA DISABILITIES ADVOCACY PROGRAM ("ADAP") is Alabama's designated protection and advocacy organization under the Protection and Advocacy for Persons with Mental Illness Act of 1986 (the "PAIMI Act"), 42 U.S.C. §§ 10801 *et seq*., and the Developmental Disabilities Assistance and Bill of Rights Act of 2000 (the "PADD Act"), 42 U.S.C. § 15041 *et seq*.  *See Doe v. Stincer*, 175 F. 3d 879, 883 (11th Cir. 1999); *Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Center*, 97 F. 3d 492, 495 (11th Cir. 1996), *aff'g* 894 F. Supp. 424, 426-27 (M.D. Ala. 1995) (Thompson, J.); *Dunn v. Dunn*, Case No. 2:14-cv-00601-MHT-TFM, 2016 U.S. Dist. LEXIS 166251 (Nov. 25, 2016); *Alabama Disabilities Advocacy Program v. SafetyNet Youthcare, Inc*., 65 F. Supp. 3d 1312, 1321-22 (S.D. Ala. 2014), on reconsideration in another part, 2015 U.S. Dist. LEXIS 16343 (S.D. Ala. Feb. 22, 2015); *Alabama Disabilities Advocacy Program v. Wood*, 584 F. Supp. 2d 1314, 1315 (M.D. Ala. 2008).

25.    ADAP is authorized to pursue legal remedies involving system-wide change on behalf of identifiable groups of similarly situated individuals with mental illness, including individuals awaiting inpatient competency evaluations and those awaiting competency restoration treatment in Alabama county jails, pursuant to the PAIMI Act. 42 U.S.C. § 10801 *et seq*.  ADAP is likewise authorized by the PADD Act and its implementing regulations to protect people with developmental disabilities, including intellectual disabilities, from abuse and neglect, including by means of litigation and other forms of advocacy to remedy abuse and/or neglect or other rights violations.  *See* 45 42 U.S.C. §§ 15041 *et seq*.; C.F.R. § 1386.21; 45 C.F.R. § 1386.24.

26.    ADAP is pursuing this action to protect and advocate for the rights and interests of persons with mental illness and/or intellectual disabilities who have been criminally charged

and are awaiting inpatient Competency Services in Alabama county jails.  Each of these individuals has standing to assert claims against Commissioner Perdue under the Fourteenth Amendment to the U.S. Constitution for timely Competency Services in an appropriate setting.

27.     Each individual with mental illness and/or intellectual disability awaiting Competency Services in an Alabama county jail faces imminent serious harms, including, among others: deterioration of their respective mental condition while incarcerated without individualized treatment; the deterioration of their behavioral functioning and/or ability to safely navigate their surroundings; the risk that competency restoration will be more difficult, if not impossible, as a result of the intensification of mental illness while incarcerated without individualized psychiatric care; and indefinite incarceration under the punitive conditions of county jails despite the fact that they have not been convicted of a crime and, in most instances, their cases have been continued pending their receipt of Competency Services.

28.     Through this action, ADAP seeks to fulfill one of its central organizational mandates: to advocate for institutionalized persons with disabilities.

29.     In this action, ADAP asserts the due process claims of its constituents with mental illness and intellectual disabilities who have been criminally charged, suspected of being incompetent and committed to ADMH custody for inpatient mental evaluations or found incompetent and committed to ADMH custody for competency restoration treatment, and are still awaiting these Competency Services in county jails.  Insofar as ADAP's claims are largely coextensive with those of the named Plaintiffs and putative class members, ADAP's and the named Plaintiffs' factual allegations are jointly set forth below.

**C.  Defendant Perdue**

30.     Defendant JAMES V. PERDUE is the Commissioner of the Alabama Department of Mental Health.  Commissioner Perdue is sued in his official capacity as Commissioner of ADMH.

31.     As ADMH Commissioner, Defendant Perdue is charged, under Alabama law, with directing, supervising, and controlling ADMH's provision of mental health care to persons with severe mental illness throughout Alabama.  Ala. Code § 22-50-2 (1975); Ala. Admin. Code §§ 580-1-1-.01 (commissioners and divisions of department), 580-1-1-.03 (persons served by the Department of Mental Health), 580-1-1-.04 (agency head), 580-1-1-.06 (authority of commissioner), 580-1-1-.08 (agency is under direction, supervision, and control of commissioner).

32.     Commissioner Perdue is likewise charged with directing, supervising, and controlling ADMH's provision of services to persons with intellectual disabilities throughout the state.  Ala. Code § 22-50-2 (1975); Ala. Admin. Code §§ 580-1-1-.01 (commissioners and divisions of department), 580-1-1-.03 (persons served by the Department of Mental Health), 580-1-1-.04 (agency head), 580-1-1-.06 (authority of commissioner), 580-1-1-.08 (agency is under direction, supervision, and control of commissioner).

33.     ADMH is the sole state agency in the State of Alabama designated to administer or supervise the provision of inpatient competency evaluations and restorative treatment pursuant to Alabama Rules of Criminal Procedure 11.3 and 11.6, respectively.

34.     Commissioner Perdue has the authority and power to devise and implement the policies, procedures, and practices necessary to ensure that persons committed to the custody of

ADMH for Competency Services by courts of competent jurisdiction throughout the State of Alabama timely receive those services in an appropriate institution.

35.     Defendant Perdue, by and through ADMH, utilizes federal and state funds in providing services in a way that he is obligated to ensure compliance with state and federal constitutional and statutory protections for individuals who are involuntarily detained in order to receive mental health services.

## IV.     CLASS ALLEGATIONS

36.     Pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, Plaintiffs Demontray Hunter, Russell Senn, Travis Parks, Vandarius Darnell, Frank White, Marcus Jackson, Timothy Mount, and Henry McGhee (hereinafter, the "Named Plaintiffs"), bring this action on behalf of themselves and all other persons (the "Plaintiff Class") who have been, or will be in the future, charged with a crime in the State of Alabama, suspected of being incompetent and committed to the custody of ADMH for an inpatient mental evaluation or found incompetent to stand trial and committed to the custody of ADMH for competency restoration therapy and treatment, and detained in an Alabama county jail while awaiting the court-ordered mental evaluation or competency restoration treatment.

37.     The Plaintiff Class is so numerous that joinder of all members in this action is impracticable.

38.     In addition to the class members currently held in Alabama county jails, the class consists of an unknown number of future criminal defendants who will be committed to the custody of ADMH for an inpatient Competency Services.

39.     The exact number of inmates currently in the class is not known to the Named Plaintiffs with certainty.  On information and belief, the number of existing class members fluctuates monthly, but is believed to consist of approximately 36 individuals.

40.     The number of current class members in county jails can be determined through appropriate discovery.

41.     The number of future class members who will await Competency Services in county jails is not presently determinable, but it is capable of determination by concrete, fixed rules.

42.     Absent class members lack the knowledge, as well as the financial and other resources, to maintain individual actions and/or to remedy systemic due process violations on their own.

43.     The Named Plaintiffs' claims are typical of the claims of the Plaintiff Class in that they have been, or will be, suspected or determined to be incompetent to stand trial; have been or will be committed to the custody of ADMH in order to receive an inpatient mental evaluation or competency restoration treatment; and are awaiting or will await an inpatient competency evaluation or restorative treatment in an Alabama county jail.

44.     The Named Plaintiffs and all members of the Plaintiff Class have suffered, or will suffer in the future, similar harms arising from Defendant Perdue's actions and inactions, by and through ADMH, with regard to the prompt provision of timely Competency Services to criminal defendants in Alabama.

45.     There are questions of law common to the Plaintiff Class, including, *inter alia*:

a.     Whether Defendant Perdue's failure to admit individuals with mental illness and/or intellectual disabilities into Taylor Hardin and Bryce for Competency Services

within a reasonable period of time violates the Fourteenth Amendment to the United States Constitution;

    b.  Whether the Named Plaintiffs and other members of the Plaintiff Class are entitled to the declaratory and injunctive relief requested herein;

    c.  Whether the Named Plaintiffs and other members of the Plaintiff Class are entitled to an award of reasonable attorneys' fees and costs of this suit.

  46.  There are also questions of fact common to the Plaintiff Class, including, *inter alia*:  Whether Defendant Perdue, by and through ADMH, has failed to provide Competency Services to the Named Plaintiffs and other class members within a reasonable period of time.

  47.  The Named Plaintiffs fairly and adequately represent the interests of all class members.

  48.  The Named Plaintiffs have a clearly defined controversy with Defendant Perdue which dictates that they will fully and vigorously prosecute this action.  At stake for these Named Plaintiffs is their timely receipt of the inpatient competency evaluations or competency restoration treatment that will determine whether, and when, they can proceed to trial.  The interests of the Named Plaintiffs and the Plaintiff Class are identical.

  49.  The Named Plaintiffs are represented by attorneys experienced in federal class action litigation and disability law.

  50.  The Named Plaintiffs seek relief that will inure to the benefit of the Plaintiff Class as a whole.

  51.  The Named Plaintiffs seek certification of a class pursuant to Rule 23(b)(2) on the grounds that Defendant Perdue's creation and implementation of ADMH's policies, practices, and procedures for the provision of Competency Services to criminal defendants in Alabama, and

his administration of the ADMH-operated psychiatric hospitals in which criminal defendants receive Competency Services, fails to timely provide the Named Plaintiffs and the Plaintiff Class Competency Services in violation of the Due Process Clause of the Fourteenth Amendment, thereby making declaratory and injunctive relief appropriate with respect to the Plaintiff Class as a whole.

52.     The injuries asserted by the Named Plaintiffs in this action are capable of repetition while evading review.

53.     The injuries asserted by the Named Plaintiffs in this action are also transitory harms for which obtaining judicial review is difficult.

54.     There is a continuing and substantial public interest in these matters, justifying declaratory and injunctive relief in favor of the Class Plaintiffs and the Plaintiff Class.

55.     A class action is the best available method for adjudication of these legal issues because individual litigation of these claims would be impracticable, and individual litigation would be unduly burdensome to the courts.  Furthermore, this action may be maintained as a class action because questions of law and fact common to the class predominate over the questions affecting only individual class members, and individual litigation would increase the likelihood of inconsistent or contradictory judgments.  A class action presents fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

## V.   FACTUAL ALLEGATIONS

### A.   Defendant Perdue, By and Through ADMH, Must Provide Individuals Found Incompetent to Stand Trial Timely Competency Services in an Appropriate Setting.

56.   Alabama Rule of Criminal Procedure 11 governs circuit courts' commitment of a criminal defendant to ADMH custody for Competency Services.

57.   Rule 11.3(b) authorizes the court to order that a defendant be examined in a state institution and to commit the defendant to ADMH "for a reasonable period of time necessary to conduct the examination."  Ala. R. Crim. P. 11.3(b).  Rule 11.3(b) expressly prohibits a court from committing a defendant for inpatient evaluation "for a time longer than that reasonably necessary to conduct the examination."

58.   Rule 11.6 specifies the procedure for the restoration of an incapacitated defendant's competency, both where there is a likelihood that the defendant will be restored to competency within a reasonable period of time and where there is not.  Where the court holds the prescribed competency hearing and finds that the defendant is incompetent but that *there is a substantial probability* that the defendant will become competent within a reasonable period of time, if the court *also* finds that the defendant's being a large poses a threat of substantial harm to the defendant or others, that the defendant is mentally ill and absent treatment will continue to deteriorate, and the defendant is unable to make a rational decision whether treatment is desirable, the court "shall order the defendant committed to the custody of [ADMH] *for therapy and treatment, in an institution suitable to receive such persons*, for a period not to exceed six months or until the defendant's earlier restoration to competency[.]"  Ala. R. Crim. P. 11.6(c)(3)(i) (emphasis added).

59.     Where a court holds the prescribed competency hearing and finds that the defendant is incompetent to stand trial and there is *no substantial probability* that the defendant will become competent within a reasonable period of time, if the court also finds that the defendant's "being at large poses a [] threat of substantial harm to the defendant or others," that the "defendant is mentally ill or has a mental defect," absent treatment the defendant will continue to deteriorate, and is "unable to make a rational and informed decision as to whether treatment is desirable," the court "shall order the defendant committed to the custody of [ADMH]  for a period not to exceed six months or until the defendant's earlier restoration to competency."  Ala. R. Crim. P. 11.6(c)(2)(1).  Where the court later finds that, "as a result of an ongoing supervised regimen of medical treatment or therapy, the risk of harm threatened by the defendant's being at large has been sufficiently minimized," the court "shall order the defendant released on conditions" that are "necessary to ensure the defendant continues to receive treatment."  Ala. R. Crim. P. 11.6(c)(2)(i), 11.6(d)(4).

60.     Where a court finds a defendant incompetent to stand trial and that the defendant's *being at large does not pose a risk of substantial harm* to the defendant or others, if the defendant is *not likely to become competent* within a reasonable period of time, the court *shall dismiss the charges against the defendant* without prejudice and *release* the defendant. *See* Ala. R. Crim. P. 11.6(c)(2)(iii) (emphasis added). If the defendant *is likely* to become competent within a reasonable period of time, the court *shall release the defendant upon conditions* necessary to ensure the defendant's receipt of therapy and treatment design to restore the defendant's competency.  *See* Ala. R. Crim. P. 11.6(c)(3)(ii) (emphasis added).

61.     When a defendant has been deemed incompetent and committed to ADMH custody based on the threat of harm the defendant's being at large poses to the defendant or others,

and, after providing intensive treatment to the defendant, "it is the opinion of treating clinicians that the defendant . . . no longer poses a threat of harm," ADMH shall file a notice of release from commitment with the court.  Ala. R. Crim. P. 11.6(d)(2).  The court then must hold a hearing on whether the risk of harm has been minimized such that the defendant may be released from an inpatient facility on appropriate conditions. Ala. R. Crim. P. 11.6(g).

62.     Rule 11.6 also provides for periodic review of the defendant's condition following the commitment to determine whether continued inpatient treatment is necessary or the defendant can be released to outpatient treatment under appropriate conditions.  Ala. R. Crim. P. 11.6(d), (g).  The commitment of an incompetent defendant for restorative treatment shall not exceed six months pursuant to an original order; that order may be renewed for no more than one year.  Ala. R. Crim. P. 11.6(d)(1).  Alabama Rule of Procedure 11.6 requires any person responsible for the therapy and treatment of an incapacitated defendant subject to commitment to report on the defendant's status no less frequently than every ninety-one days.  Ala. R. Crim. P. 11.6(f).

63.     The Named Plaintiffs – who are suspected of being incompetent or have been found incompetent to stand trial and have not, therefore, been convicted of a crime – have liberty interests in being free from incarceration.  *Jackson v. Indiana*, 406 U.S. 715 (1972); *Bell v. Wolfish*, 441 U.S. 520 (1979); *Youngberg v. Romeo*, 457 U.S. 307 (1982).

64.     The Named Plaintiffs, who are suspected of being incompetent or have been found incompetent to stand trial, also have liberty interests in receiving the mental evaluations and competency restoration treatment ordered by the circuit courts in their respective criminal cases. *See, e.g., Jackson,* 406 U.S. 715; *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1120-21 (9th Circuit 2003); *Trueblood v. Wash. Dep't of Soc. & Health Servs.*, 101 F. Supp. 1010, 1020 (W.D. Wash. Apr. 2, 2015).

65.     The Due Process Clause of the Fourteenth Amendment protects those committed to ADMH custody for Competency Services from indefinite detention in jails without necessary, individualized psychiatric services.

> [A] person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain capacity in the foreseeable future.  If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant.  Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued confinement must be justified by progress toward that goal. . . . Due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed.

*Jackson*, 406 U.S. at 738.

66.     Defendant Perdue has a duty to ensure that persons committed to ADMH's custody for purposes of competency restoration therapy and treatment do not languish, for unnecessarily protracted periods, in jails where the minimal care afforded them bears little relationship to the purposes of their detention and the duration of that confinement bears no relationship to their progress towards competency.

**B.     Defendant Perdue Is Not Timely Providing Competency Services to Individuals, Including the Named Plaintiffs, Ordered to Receive Them.**

67.     Notwithstanding Defendant Perdue's duty to timely provide, by and through ADMH, Competency Services to individuals committed to ADMH custody for that purpose, these individuals commonly wait between six and eight months before being transferred to Taylor Hardin or Bryce for inpatient care. Defendant Perdue recently acknowledged as much:  "If you want to put a gun in the hands of the federal government and put a bullet in it, we're doing it." Amy Yurkanin, *Long Waits as Gridlock Grips Alabama Mental Health System*, AL.COM (Aug.

17,                              2015,                              2:21                              PM),

http://www.al.com/news/birmingham/index.ssf/2016/08/mental_illness_part_2.html.

68.    ADMH fails to timely provide Competency Services to criminal defendants because demand for those services exceeds ADMH's capacity to provide them through the psychiatric hospitals it operates.

69.    ADMH operates three psychiatric hospitals, Taylor Hardin, Bryce, and the Mary Starke Harper Center (a geriatric psychiatric hospital).

70.    ADMH only provides Competency Services in Taylor Hardin and Bryce.

71.    ADMH does not provide Competency Services in or through another placement.

72.    Taylor Hardin is ADMH's only forensic facility, and its capacity is 115.  Taylor Hardin only serves male patients.

73.    ADMH maintains a waiting list for admission into Taylor Hardin for inpatient psychiatric services, which is updated weekly.

74.    On information and belief, the number of persons on the waiting list for admission into Taylor Hardin has varied, throughout 2016, from 45 to 52 persons, approximately 70% of whom are awaiting Competency Services.

75.    The waiting list for admission into Taylor Hardin includes, among others:  (1) persons who have been criminally charged and are awaiting inpatient mental evaluations; (2) persons who have been criminally charged, found incompetent to stand trial, and are awaiting competency restoration treatment; (3) persons who have been criminally charged, adjudicated not guilty by reason of insanity, and are awaiting intensive psychiatric treatment; and (4) persons who have been criminally charged, convicted, and reached the end of their term of imprisonment, and

require inpatient psychiatric treatment (often transferring directly from an Alabama Department of Corrections facility).

76.     The waiting list for admission into Taylor Hardin is ordered by the date of Taylor Hardin officials' receipt of each person's referral for services, without regard to the type of services sought, criticality or acuity, or priority.  As a result, persons awaiting Competency Services may comprise only a portion of the total number of persons on the waiting list, but their total *wait time* is determined by their position on the wait list as a whole (subject to any out of order admissions).

77.     Each individual's wait time for admission into Taylor Hardin is also subject to "out of order" admissions, namely the admission of persons not following the strict ordering of the waiting list.

78.     Officials at Taylor Hardin do not sort the waiting list by the seriousness of the offenses charged, nor is the waiting list (and with it admissions) sorted by the potential punishment faced by persons awaiting inpatient services.  Officials at Taylor Hardin likewise do not triage or sort by the acuity of the mental illness and the current manifestations thereof of persons on the waiting list (as such, they do not admit those with more urgent needs ahead of those who are comparatively stable).

79.     ADMH also provides Competency Services to patients of Bryce.  Bryce has a capacity of 268, and serves both men and women.  All females awaiting Competency Services in jails must wait for admission into Bryce.

80.     Officials at Bryce maintain a waiting list for admission that, in recent months, has included up to 60 persons.

81.     The waiting list for admission into Bryce includes not only those committed to ADMH custody for Competency Services but also includes persons who have been civilly committed and others requiring intensive inpatient treatment.

**C.     Alabama's County Jails Do Not and Cannot Provide Competency Services.**

82.     Federal courts have repeatedly recognized that county jails are poorly equipped to provide appropriate mental health care to individuals requiring competency restoration treatment. *See, e.g.*, *Oregon Advocacy Center v. Mink*, 322 F. 3d 1101, 1121-22 (9th Cir. 2003); *Lynch v. Baxley*, 744 F. 2d 1452 (11th Cir. 1984) (civil committees held in county jails); *Disability Law Center v. Utah*, Case No. 2:15-cv-00645-RJS, 2016 U.S. Dist. LEXIS 47420, *29-31 (D. Utah Apr. 7, 2016); *Trueblood, et al. v. Washington State Department of Social and Health Services, et al.*, 101 F. Supp. 3d 1010 (W.D. Wash. 2015); *Advocacy Ctr. for the Elderly & Disabled v. La. Dep't of Health & Hosps.*, 731 F. Supp. 2d 603, 612-18 (E.D. La. 2010); *Terry ex rel. Terry v. Hill*, 232 F. sup. 2d 934 (E.D. Ark. 2002).

83.     Alabama's legal officials have similarly recognized that jails are poor settings for persons with severe mental illness.  *See* Atty. Gen. Op. 87-00018 (Oct. 16, 1986), *available at* http://www.ago.state.al.us/opinions/pdf/8700018.pdf.

84.     Alabama's county jails are, as the Tuscaloosa County sheriff described them, "the worst place for someone with a mental illness."  E. FULLER TORREY, M.D., ET AL., THE TREATMENT OF PERSONS WITH MENTAL ILLNESS IN PRISONS AND JAILS: A STATE SURVEY            27            (2014),            *available            at* http://www.treatmentadvocacycenter.org/storage/documents/treatment-behind-bars/treatment-behind-bars.pdf.

85.     At most, Alabama's county jails provide or arrange for the provision of minimal mental health care for persons with mental illness and intellectual disabilities. They do not provide care that would give them a realistic opportunity to become competent to stand trial.

86.     The minimal mental health care provided in Alabama's county jails is designed to stabilize rather than treat inmates' mental illness and is commonly limited to psychotropic medications managed by a medical doctor rather than a psychiatrist.  In counties with smaller inmate populations, jails rarely employ a full-time physician, instead relying on contract clinical staff who visit at certain intervals.

87.     Alabama's county jails do not employ the range of clinicians employed by psychiatric hospitals for the provision of Competency Services. Only in larger metropolitan areas with larger inmate populations do inmates even have their medications managed by a psychiatrist.

88.     Treating professionals in county jails do not utilize the full array of pharmacological options in their treatment of mentally ill inmates. Rather, these professionals, with few exceptions, utilize low-cost drugs on an approved list of the contractor that employs them (i.e., Southern Health Partners, Quality Correctional Health Care, and Advanced Correctional Healthcare).  Treating professionals in county jails do not use the complicated pharmacological cocktails needed to restore mentally ill inmates to competency. Moreover, except in rare circumstances, county jails do not forcibly medicate inmates who refuse to take prescribed medications in jail.

89.     Alabama's county jails do not provide the therapeutic environment often necessary to address severe, and complicated, mental illnesses.  Even where inmates with mental illness and/or intellectual disability are housed in clustered cellblocks, they do not receive psychotherapy

or other services that would promote a therapeutic environment conducive to Competency Services.

90.     Individuals with mental illness and/or intellectual disabilities often engage in disruptive or problematic behaviors in the jail setting, including conflicts with other inmates, that provoke disciplinary responses by jail officials.  Such disciplinary measures often include segregation.

91.     These punitive responses to the behavioral manifestations of jail inmates' mental illness, including isolation, can exacerbate individuals' mental illness.

92.     Jails often respond to the suicidal ideation and/or suicide attempts of inmates with isolation and observation by correctional officers.  Emergency care for inmates in crisis is often provided, in the first instance, by jail officials who may limited mental health training.

93.     Jails may place individuals with mental illness and/or intellectual disabilities in isolation for safety purposes, particularly where they are a threat to themselves or others or pose a risk to the safety of other inmates, but isolation can lead to the deterioration of the mental condition of mentally ill and/or intellectually disabled inmates.

94.     Alabama county jails rarely provide therapy or individualized services to persons with intellectual disabilities.  Even where such therapy is provided, it is not intended to restore the competency of inmates who have been found incompetent.

**D.     Defendant Perdue Has Failed to Ensure the Timely Provision of  Competency Services to the Named Plaintiffs.**

**i.     Plaintiff Demontray Hunter**

95.     Mr. Hunter began exhibiting symptoms of mental illness after he witnessed his brother kill his father at age thirteen. During his incarceration for his present offense, Mr. Hunter was provisionally diagnosed with schizophrenia paranoid type with active psychosis.

23

96.     Mr. Hunter was arrested on May 27, 2015, and charged with attempted murder after allegedly shooting his brother.  Mr. Hunter was incarcerated in the Jefferson County Jail from the time of his arrest until December 7, 2016, at which time he was transferred to Taylor Hardin.

97.     A Jefferson County circuit judge found Mr. Hunter incompetent to stand trial on April 14, 2016.  The court found that there was a substantial probability that Mr. Hunter could be restored to competency within a reasonable period of time and entered an order committing Mr. Hunter to the custody of the Alabama Department of Mental Health for "such treatment as is required for [Mr. Hunter] to attain competency or minimize or abate the risk of harm threatened by [Mr. Hunter's] being at large" on April 14, 2016.

98.     The Jefferson County circuit judge's April 14, 2016 order generally continued further criminal proceedings against Mr. Hunter until such time as the court determines that Mr. Hunter has been restored to competency to participate in the criminal proceedings against him.

99.     Mr. Hunter was on the waiting list for admission into Taylor Hardin for competency restoration care and treatment.  Mr. Hunter was transferred from the Jefferson County Jail to Taylor Hardin over two months after this action was originally filed.

100.     Mr. Hunter did not take prescribed medication regularly in the Jefferson County Jail, nor did he receive any form of intensive mental health treatment, including psychotherapy, designed to restore him to competency to participate in the criminal proceedings against him.

101.     As a result of his mental illness and his inability to receive appropriate mental health care in the Jefferson County Jail, Mr. Hunter exhibited behaviors that have resulted in his being placed in segregation approximately three times.  He has also been housed with other inmates with mental illness in clustered cellblocks.

24

102.    As a result of Mr. Hunter's inability to receive intensive mental health treatment in the Jefferson County Jail, his mental health regressed.   Mr. Hunter experienced auditory hallucinations and/or delusional thinking, nervousness, paranoia, and insomnia.

### ii.    Plaintiff Russell Senn

103.    Mr. Senn has an extensive history of mental illness, and has been diagnosed with schizoaffective disorder, bipolar type, among others.   He has a history of psychiatric institutionalization and outpatient treatment with the Department of Veteran's Affairs.  Mr. Senn has struggled with suicidal ideation, as well as compliance with medications.

104.    Mr. Senn was arrested on April 26, 2013, and charged with murder after allegedly shooting his sister following an extended period of sleep deprivation.

105.    A Pike County circuit judge found Mr. Senn incompetent to stand trial on February 5, 2016.  The court found that there was a substantial probability that Mr. Senn could be restored to competency within a reasonable period of time and entered an order committing Mr. Senn to the custody of the Department of Mental Health for "such treatment as is required for [Mr. Senn] to attain competency or minimize or abate the risk of harm threatened by [Mr. Senn's] being at large" on February 5, 2016.

106.    The Pike County circuit judge's February 5, 2016 order generally continued further criminal proceedings against Mr. Senn until such time as the court determines that Mr. Senn has been restored to competency to participate in the criminal proceedings against him.

107.    Mr. Senn was on the waiting list for admission into Taylor Hardin for competency restoration care and treatment from February 9, 2016 until the last week of October 2016, at which time he was transferred to Taylor Hardin.

108.    While incarcerated at the Pike County Jail, clinicians at the East Alabama Mental Health Center prepared an outpatient treatment plan for Mr. Senn on March 8, 2016, specifically noting "problems" of psychosis and mood disorder, as well as insomnia. The "treatment goals" in Mr. Senn's March 8, 2016 treatment plan do not include competency restoration. Mr. Senn's clinical records reflect that, on June 25, 2016, he was found to be making insufficient progress toward his treatment goals and that he had not been "seen" since his intake appointment on March 8, 2016. While the services specified in Mr. Senn's March 8, 2016 treatment plan include medication management, Mr. Senn does not take prescribed medication in the Pike County Jail.

109.    As a result of Mr. Senn's inability to receive intensive mental health treatment while incarcerated in the Pike County Jail, his mental health regressed. Mr. Senn suffered from insomnia and anxiety, as well as the symptoms of his diagnosed illnesses, throughout the period of time he was incarcerated in the Pike County Jail awaiting competency restoration treatment.

### iii.    Plaintiff Travis Parks

110.    Mr. Parks has an extensive history of mental illness and has been diagnosed with chronic paranoid schizophrenia with acute exacerbation. He has required extensive in-patient and out-patient mental health treatment throughout the past decade, which has included not only significant pharmacological treatment and management, but also extensive home- and community-based services. Mr. Parks has also struggled with taking medication regularly. Mr. Parks has experienced suicidal ideation and attempted to commit suicide in the past.

111.    Mr. Parks was arrested on September 14, 2014, and charged with third degree burglary.

112.    A Houston County circuit judge found Mr. Parks incompetent to stand trial, and entered an order committing him to the custody of the Department of Mental Health for

26

competency restoration care and treatment on January 21, 2016.  The court entered another order committing Mr. Parks to Taylor Hardin Secure Medical Facility on August 29, 2016.  As of the date of this filing, Mr. Parks remains incarcerated at the Houston County Jail.

113.    Mr. Parks was on the waiting list for admission into Taylor Hardin for competency restoration care and treatment from January 25, 2016 until he was transferred to Taylor Hardin approximately two-and-a-half weeks after this action was originally filed.

114.    Mr. Parks received some medication management in the Houston County Jail.  Mr. Parks did not receive intensive mental health treatment, including psychotherapy, designed to restore his competency to participate in the criminal proceedings against him.

115.    As a result of his severe mental illness and his inability to receive intensive mental health treatment in the Houston County Jail, Mr. Parks exhibited problematic behavior while incarcerated that resulted in his being placed in segregation and losing his visitation privileges.

116.    As a result of Mr. Parks's inability to receive intensive mental health treatment in the Houston County Jail, his mental health regressed.   Mr. Parks experienced auditory hallucinations, paranoia, mania, anxiety levels that prevented him from eating, and adverse side effects from his medications.

### iv.    Plaintiff Vandarius S. Darnell

117.    Plaintiff Vandarius Darnell has an extensive history of mental illness necessitating both outpatient treatment and psychiatric hospitalizations. Mr. Darnell has been diagnosed with catatonic schizophrenia, bipolar disorder, schizoaffective disorder, with significant mania, among other conditions.

27

118.    Mr. Darnell was arrested on April 12, 2013, and charged with attempted murder and first degree assault.  Mr. Darnell has been incarcerated in the Walker County Jail since his arrest.

119.    A Walker County circuit judge found Mr. Darnell incompetent to stand trial on August 9, 2016.  The court found that there was a substantial probability that Mr. Darnell could be restored to competency within a reasonable period of time and entered an order committing Mr. Darnell to the custody of ADMH on August 9, 2016.

120.    Mr. Darnell is on the waiting list for admission into Taylor Hardin for competency restoration care and treatment.  As of the date of this filing, Mr. Darnell remains incarcerated at the Walker County Jail.

121.    Mr. Darnell has been prescribed medication in the Walker County Jail, but not two of the significant medications that he took regularly prior to his arrest and incarceration. Mr. Darnell has not always taken his prescribed medication while in the Walker County Jail.  When not taking his medications, he experiences mania, paranoia, delusions, auditory and visual hallucinations, and does not sleep.   Mr. Darnell does not receive any form of intensive mental health treatment, including psychotherapy, designed to restore him to competency to participate in the criminal proceedings against him in the Walker County Jail.

122.    As a result of his mental illness and his inability to receive intensive mental health care in the Walker County Jail, Mr. Darnell has engaged in behavior, including altercations with other inmates, that has prompted his placement in segregation on several occasions.

v.      **Plaintiff Frank White, Jr.**

123.    Plaintiff Frank White, Jr. began exhibiting symptoms of mental illness in his late teens.  He has been diagnosed with schizophrenia, fetal alcohol syndrome, and an intellectual disability.  Mr. White required extensive outpatient services and several hospitalizations.

124.    Mr. White was arrested on July 20, 2015, and charged with making a terrorist threat and first degree criminal mischief.  Mr. White has been incarcerated in the Talladega County Jail since his arrest.

125.    A Talladega County circuit judge found Mr. White incompetent to stand trial on August 19, 2016.  The court found that there was a substantial probability that Mr. White could be restored to competency within a reasonable period of time and entered an order committing Mr. White to the custody of ADMH for "such treatment as is required for [Mr. White] to attain competency or minimize or abate the risk of harm threatened by [Mr. White's] being at large" on August 19, 2016.

126.    The Talladega County circuit judge's August 19, 2016 order generally continued further criminal proceedings against Mr. White until such time as the court determines that Mr. White has been restored to competency to participate in the criminal proceedings against him.

127.    Mr. White is on the waiting list for admission into Taylor Hardin for competency restoration care and treatment.  As of the date of this filing, Mr. White remains incarcerated at the Talladega County Jail.

128.    Mr. White has generally takes his prescribed medication in the Talladega County Jail, but does he receive any form of intensive mental health treatment, including psychotherapy, designed to restore him to competency to participate in the criminal proceedings against him.

129.    As a result of his mental illness and his inability to receive intensive mental health care in the Talladega County Jail, Mr. White has exhibited behaviors, including conflicts with other inmates, that have resulted in his being placed in protective custody at the Talladega County Jail.

### vi.    Plaintiff Marcus Jackson

130.    Plaintiff Marcus Jackson has a history of significant mental illness. He has been diagnosed with bipolar disorder, schizoaffective disorder, and narcolepsy and required outpatient mental health treatment for extended periods of time prior to his arrest.  Mr. Jackson required extensive outpatient treatment prior to his arrest.

131.    Mr. Jackson was arrested on January 8, 2016 and charged with breaking and entering a vehicle and first degree burglary.  Mr. Jackson has been incarcerated in the Jefferson County Jail since his arrest.

132.    A Jefferson County circuit judge found Mr. Jackson incompetent to stand trial on July 19, 2016.  The court found that there was a substantial probability that Mr. Jackson could be restored to competency within a reasonable period of time and entered an order committing Mr. Jackson to the custody of ADMH for "such treatment as is required for [Mr. Jackson] to attain competency or minimize or abate the risk of harm threatened by [Mr. Jackson] being at large" on July 19, 2016.

133.    The Jefferson County circuit judge's July 19, 2016 order generally continued further criminal proceedings against Mr. Jackson until such time as the court determines that Mr. Jackson has been restored to competency to participate in the criminal proceedings against him.

134.     Mr. Jackson is on the waiting list for admission into Taylor Hardin for competency restoration care and treatment.  As of the date of this filing, Mr. Jackson remains incarcerated at the Jefferson County Jail.

135.     Mr. Jackson takes prescribed medication regularly in the Jefferson County Jail, but does he receive any form of intensive mental health treatment, including psychotherapy, designed to restore him to competency to participate in the criminal proceedings against him.

136.     Mr. Jackson has been placed in isolation on at least one occasion after he reported suicidal thoughts to jail officials.  He was physically attacked and injured by another inmate, and since that encounter, Mr. Jackson has been housed in a cell block with other persons with mental illness.

137.     Mr. Jackson is fearful of others and has difficulty in social exchanges, including encounters with other inmates.

### vii.     Plaintiff Timothy Mount

138.     Plaintiff Timothy Mount developed an intellectual disability after being involved in an automobile accident when he was nine months old.  Mr. Mount received special education services throughout his childhood and youth and has continued to receive some disability-related services since he reached adulthood.  Mr. Mount also has been diagnosed with depression, seizure disorder, and cerebral palsy.

139.     Mr. Mount was arrested on February 18, 2016 and charged first degree kidnapping and attempted sexual abuse of a child.  Mr. Mount was released on bond from February 19, 2016 through July 8, 2016, the date of his competency hearing.  Mr. Mount has been incarcerated in the Montgomery County Jail since that time.

140.     A Montgomery County circuit judge found Mr. Mount incompetent to stand trial on July 8, 2016.  The court found that there was no substantial probability that Mr. Mount could be restored to competency within a reasonable period of time and entered an order committing Mr. Mount to the custody of ADMH for "such treatment as is required for [Mr. Mount] to attain competency or minimize or abate the risk of harm threatened by [Mr. Mount] being at large" on July 8, 2016.

141.     The Montgomery County circuit judge's July 19, 2016 order generally continued further criminal proceedings against Mr. Mount until such time as the court determines that Mr. Mount has been restored to competency to participate in the criminal proceedings against him.

142.     Mr. Mount is on the waiting list for admission into Taylor Hardin for competency restoration care and treatment.  As of the date of this filing, Mr. Mount remains incarcerated at the Montgomery County Jail.

143.     Mr. Mount has spent at least a portion of his time in isolation and, on information and belief, is currently in solitary confinement.  He does not recall meeting with any clinician in the Montgomery County Jail.

### viii.     Plaintiff Henry McGhee

144.     Mr. McGhee was arrested on April 20, 2015 and charged with murder and theft of property.  Mr. McGhee has been incarcerated in the Tuscaloosa County Jail since his arrest.

145.     The Tuscaloosa County Circuit Court order a mental examination of Mr. McGhee on September 25, 2015.  A forensic evaluation was filed with the court on June 21, 2016.

146.     Further evaluation was ordered on June 27, 2016.  A second evaluation was filed on June 22, 2016.

147.    Thereafter the Tuscaloosa County Circuit Court ordered further inpatient evaluation, and committed Mr. McGhee to ADMH's custody for that purpose.

148.    Mr. McGhee is on the waiting list for admission into Taylor Hardin for an inpatient mental evaluation.

149.    Mr. McGhee has been on suicide watch several times during his incarceration in the Tuscaloosa County Jail, and has tried to hurt himself on several occasions.

150.    Mr. McGhee has also been placed in segregation on several occasions during his incarceration in the Tuscaloosa County Jail.

151.    Mr. McGhee has spent approximately four of the nine months he has been incarcerated in the Tuscaloosa County Jail on suicide watch or in segregation.

152.    Mr. McGhee becomes confused easily and experiences paranoia. Both his confusion and his paranoia have worsened during the time that he has been incarcerated in the Tuscaloosa County Jail.

## VI.    LEGAL CLAIM

### COUNT I
### Violation of the Fourteenth Amendment of the United States Constitution
### 42 U.S.C. § 1983

153.    The allegations in Paragraphs 1 through 152 above are incorporated by reference as if fully set forth herein.

154.    The Due Process Clause of the Fourteenth Amendment requires that the nature and duration of an individual's involuntary confinement for inpatient Competency Services bear a reasonable relation to the purpose of that confinement.

155.    Once an individual is suspected of being incompetent to stand trial and committed to the custody of ADMH for purposes of an inpatient mental evaluation, the only lawful purpose for his or her continued confinement is to receive that evaluation.

156.   Once an individual is found incompetent to stand trial and committed to the custody of ADMH for competency restoration treatment, the only lawful purpose for his or her continued confinement is the provision of competency restoration treatment.

157.   An individual suspected of being incompetent to stand trial and committed to the custody of ADMH for an inpatient mental evaluation has a right not to be incarcerated absent a lawful conviction.

158.   An individual found incompetent to stand trial and committed to the custody of ADMH for restorative treatment has a constitutional right not to be incarcerated absent a lawful conviction.

159.   An individual suspected of being incompetent to stand trial and committed to the custody of ADMH for an inpatient mental evaluation has a constitutional right to receive that evaluation so that his or her competency, or lack thereof, can be timely established.

160.   An individual found incompetent to stand trial has a constitutional right to timely receive such individualized treatment as will give him or her a realistic opportunity to be restored to competency.

161.   County jails in the State of Alabama do not have the capacity to provide the inpatient mental evaluations or competency restoration treatment for which persons are committed to ADMH's custody under Alabama Rules of Criminal Procedure 11.3 and 11.6.

162.   The Alabama county jails in which Plaintiffs Demontray Hunter, Russell Senn, and Travis Parks were incarcerated did not provide them mental health treatment designed to or capable of restoring their competency to participate in their respective criminal proceedings.

163.   The Alabama county jails in which Plaintiffs Vandarius Darnell, Frank White, Jr., Marcus Jackson, and Timothy Mount are incarcerated do not provide Plaintiffs mental health

treatment designed to or capable of restoring Plaintiffs to competency to participate in their respective criminal proceedings.

164.   The Alabama county jail in which Plaintiff Henry McGhee is incarcerated has not, and cannot, provide him with an inpatient mental evaluation upon which the circuit court may determine his competency to stand trial in the criminal proceedings against him.

165.   Defendant Perdue, by and through ADMH, has failed to provide Plaintiffs Demontray Hunter, Russell Senn, Travis Parks, Vandarius Darnell, Frank White, Jr., Marcus Jackson, and Timothy Mount the competency restoration therapy and treatment for which they were committed to the custody of ADMH.

166.   Defendant Perdue, by and through ADMH, has failed to provide Plaintiff Henry McGhee the court-ordered mental health evaluation for which the circuit court committed him to the custody of ADMH.

167.   Defendant Perdue, by and through ADMH, and acting under color of state law, has failed to timely provide competency restoration treatment to Plaintiffs Demontray Hunter, Russell Senn, Travis Parks, Vandarius Darnell, Frank White, and Timothy Mount, and all others similarly situated, in violation of the Fourteenth Amendment to the United States Constitution.

168.   Defendant Perdue, by and through ADMH, and acting under color of state law, has failed to provide timely inpatient mental evaluations to Plaintiff Henry McGhee, and all others similarly situated, in violation of the Fourteenth Amendment to the United States Constitution.

169.   Unless enjoined by this Court from continuing to do so, Defendant Perdue, by and through ADMH, will continue to violate and cause the violation of the constitutional rights of Plaintiffs Demontray Hunter, Russell Senn, Travis Parks, Vandarius Darnell, Frank White,

Marcus Jackson, and Timothy Mount, and all others similarly situated, to timely receive mental health treatment designed to restore them to competency.

170.   Unless enjoined by this Court from continuing to do so, Defendant Perdue, by and through ADMH, will continue to violate and cause the violation of the constitutional rights of Plaintiff Henry McGhee, and all others similarly situated, to timely receive the court-ordered inpatient mental evaluations necessary to determine his competency to stand trial.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Demontray Hunter, Russell Senn, Travis Parks, Vandarius Darnell, Frank White, Timothy Mount, and Henry McGhee respectfully request that the Court grant them the following relief:

A.     Certify this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.     Issue a declaratory judgment that Defendant Perdue, by and through ADMH, has denied Named Plaintiffs Demontray Hunter, Russell Senn, Travis Parks, Vandarius Darnell, Frank White, Marcus Jackson, Timothy Mount, and Henry McGhee, and all present class members, due process under the Fourteenth Amendment to the United States Constitution by failing to provide them timely Competency Services in an appropriate therapeutic setting;

C.     Issue a preliminary and permanent injunction restraining Defendant Purdue, in his direction, supervision, and control of ADMH, from denying Named Plaintiffs Demontray Hunter, Russell Senn, Travis Parks, Vandarius Darnell, Frank White, Jr., Marcus Jackson, Timothy Mount and Henry McGhee, and all other present and future class members, their due process right to timely, appropriate and adequate Competency Services in an appropriate therapeutic environment;

D.      Require Defendant Perdue to provide sufficient information on a quarterly basis to allow the Named Plaintiffs and the Court to monitor compliance with the Court's injunction and with the requirements of due process relative to the provision of timely Competency Services to present and future class members in Alabama;

E.      Award Plaintiffs their attorneys' fees and costs; and

F.      Grant Plaintiffs such other and further relief as the Court may deem just and proper.

Dated:  December 23, 2016          Respectfully submitted,

/s/ M. Geron Gadd _____
M. Geron Gadd (ASB-0601-J98S)
ALABAMA DISABILITIES ADVOCACY PROGRAM
400 South Union Street, Suite 280
Montgomery, Alabama 36104
Telephone:  (334) 240-0994
Facsimile:   (334) 240-0996
Email:  mggadd@adap.ua.edu

J. Patrick Hackney (ASB-6971-H51J)
William Van Der Pol, Jr. (ASB-2112-114F)
Lonnie J. Williams (ASB-2866-I35W)
ALABAMA DISABILITIES ADVOCACY PROGRAM
500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
Telephone:  (205) 348-4928
Facsimile:   (205) 348-3909
Email:  jphackney@adap.ua.edu
            wvanderpoljr@adap.ua.edu
            lwilliams@adap.ua.edu

/s/ Henry F. (Hank) Sherrod_____
Henry F. (Hank) Sherrod III (ASB-1200-D63H)
HENRY F. SHERROD III, P.C.
119 South Court Street
P. O. Box 606
Florence, Alabama 35631-0606
Telephone:  (256) 764-4141
Facsimile:   (877) 684-0802

Email:  hank@alcivilrights.com

/s/ Randall C. Marshal _____
Randall C. Marshall (ASB-3023-A56M)
ACLU OF ALABAMA FOUNDATION
P.O. Box 6179
Montgomery, AL 36106-0179
Telephone:  (334) 420-1741
Facsimile:   (334) 269-5666
Email:  rmarshall@aclualabama.org

*Attorneys for Named Plaintiffs Demontray Hunter, Russell Senn, Travis Parks, Vandarius Darnell, Frank White, Jr., Marcus Jackson, Timothy Mount, and Henry McGhee*

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that I have caused a copy of the foregoing to be served

on the individuals named below by filing with the Clerk of Court using the EC/CMF system which

will automatically send notification by electronic mail to same, this 23rd day of December, 2016.

M. Geron Gadd
Alabama Disabilities Advocacy Program
400 South Union Street, Suite 280
Montgomery, Alabama 36104
mggadd@adap.ua.edu

J. Patrick Hackney
William Van Der Pol, Jr.
Lonnie Williams
Alabama Disabilities Advocacy Program
500 Martha Parham West
Box 870395
Tuscaloosa, AL 35487-0395
jphackney@adap.ua.edu
wvanderpoljr@adap.ua.edu
lwilliams@adap.ua.edu

Henry F. (Hank) Sherrod III
Henry F. Sherrod III, P.C.
119 South Court Street
Florence, AL 35630
hank@alcivilrights.com

Randall C. Marshall
ACLU of Alabama Foundation
P.O. Box 6179
Montgomery, AL 36106-0179
rmarshall@aclualabama.org

Thomas B. Klinner
Edward C. Hixson
Ashley L. Nichols
Nancy S. Jones
Alabama Department of Mental Health
RSA Union Building
100 North Union Street
Montgomery, Alabama 36104
Tommy.Klinner@mh.alabama.gov
Eddie.Hixson@mh.alabama.gov
Ashley.Nichols@mh.alabama.gov
Nancy.Jones@mh.alabma.gov

/s/ M. Geron Gadd
M. Geron Gadd (ASB-0602-J98S)
Attorney for Plaintiffs