UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DEMONTRAY HUNTER, by and through his next friend, Rena Hunter; RUSSELL D. SENN, by and through his next friend, Irene Senn; TRAVIS S. PARKS, by and through his next friend, Catherine Young; VANDARIUS S. DARNELL, by and through his next friend, Bambi Darnell; FRANK WHITE, JR., by and through his next friend, Linda White; MARCUS JACKSON, by and through his next friend Michael P. Hanle; TIMOTHY D. MOUNT, by and through his next friend, Dorothy Sullivan; HENRY P. MCGHEE, by and through his next friend, Barbara Hardy, individually and on behalf of all others similarly situated; and the ALABAMA DISABILITIES ADVOCACY PROGRAM, | CASE NO. 2:16-cv-00798-MHT-CSC CLASS ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF (WO) |
| Plaintiffs, | |
| v. | |
| LYNN BESHEAR, in her official capacity as Commissioner of the Alabama Department of Mental Health, | |
| Defendant. | |

## CONSENT DECREE

## I.     INTRODUCTION

1.     On September 30, 2016, three of the individually-named Plaintiffs filed the above-styled action (the "Lawsuit") against Defendant James V. Perdue, in his official capacity as Commissioner of the Alabama Department of Mental Health ("the ADMH Commissioner"), challenging the AMDH Commissioner's failure to comply with the Due Process Clause of the Fourteenth Amendment to the United States Constitution with respect to his alleged failure to

provide court-ordered Mental Evaluations and Competency Restoration Treatment to Plaintiffs. Commissioner Lynn Beshear was substituted as Defendant in July 2017.

2.  On December 23, 2016, the eight individually-named Plaintiffs and Plaintiff Alabama Disabilities Advocacy Program ("ADAP") (collectively, "Plaintiffs"), filed their First Amended Complaint against the ADMH Commissioner in his official capacity challenging his alleged failure to comply with the Due Process Clause of the Fourteenth Amendment to the United States Constitution with respect to his provision of court-ordered Inpatient Mental Evaluations and Competency Restoration Treatment to the individually-named Plaintiffs and the putative class of similarly situated persons represented by the individually-named Plaintiffs, and Plaintiff ADAP's constituents (whose claims it is asserting as a Plaintiff in this action).

3.  The individually-named Plaintiffs, on behalf of themselves and all others similarly situated, Plaintiff ADAP, and the ADMH Commissioner engaged in mediation designed to resolve the claims asserted in the Lawsuit. The Parties believe that they have reached a resolution of the claims asserted in the Lawsuit and that, in order to avoid protracted, costly and uncertain litigation, it is in their respective best interests to resolve the issues to be tried in the Lawsuit.

4.  Accordingly, the Parties, by and through their respective counsel, jointly stipulate and agree to the following provisions to resolve the Lawsuit.

## II.  PARTIES, PURPOSE, AND INTENT

1.  Plaintiffs are suing Defendant Beshear in her official capacity as Commissioner of ADMH, the state agency charged under Alabama law and by relevant state circuit court orders with the provision of Outpatient and Inpatient Mental Evaluations to those suspected of being Incompetent to Stand Trial and Competency Restoration Treatment to persons found Incompetent to Stand Trial in Alabama.

2.    The individually-named Plaintiffs and putative class members in the Lawsuit have been or are currently, and may in the future be incarcerated in an Alabama city or county jail awaiting receipt of court-ordered Outpatient Mental Evaluations, Inpatient Mental Evaluations, or Competency Restoration Treatment to be provided by or on behalf of the ADMH Commissioner.

3.    Plaintiff ADAP is the duly authorized disabilities protection and advocacy agency in the State of Alabama under the nation's federally-funded protection and advocacy system. *Cf. Doe v. Stincer*, 175 F. 3d 879, 883 (11th Cir. 1999); *Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Center*, 97 F. 3d 492, 495 (11th Cir. 1996), *aff'g* 894 F. Supp. 424, 426-27 (M.D. Ala. 1995); *Dunn v. Dunn*, Case No. 2:14-cv-00601-MHT-TFM, 2016 U.S. Dist. LEXIS 166251 (Nov. 25, 2016); *Alabama Disabilities Advocacy Program v. SafetyNet Youthcare, Inc.*, 65 F. Supp. 3d 1312, 1321-22 (S.D. Ala. 2014), *on reconsideration in another part*, 2015 U.S. Dist. LEXIS 16343 (S.D. Ala. Feb. 22, 2015); *Alabama Disabilities Advocacy Program v. Wood*, 584 F. Supp. 2d 1314, 1315 (M.D. Ala. 2008).

4.    The individually-named Plaintiffs, the Class, as defined herein, and Plaintiff ADAP are collectively referred to herein as "Plaintiffs."

5.    The Plaintiffs and Defendant Beshear are collectively referred to herein as the "Parties."

6.    The purposes of this Settlement Agreement (the "Agreement") are to (1) specify certain administrative and procedural changes to the provision of Outpatient Mental Evaluations, Inpatient Mental Evaluations and Competency Restoration Treatment by the ADMH Commissioner to ensure compliance with constitutional requirements for same; (2) to outline a plan for the implementation of such changes; and (3) to settle and resolve all claims that were or were required to have been asserted in the Lawsuit.

7. The Parties stipulate that nothing in this Agreement will be used for any purpose outside of the above-captioned action or against the ADMH Commissioner in any other litigation that has been or may be filed against him. Nothing in this Agreement will be construed to require the ADMH Commissioner to do more than what is specified in the Agreement or otherwise required by the United States Constitution, federal law, or Alabama law including, but not limited to, Rule 11 of the Alabama Rules of Criminal Procedure, with respect to the provision of court-ordered Mental Evaluations and Competency Restoration Treatment to persons charged with a criminal offense in Alabama.

8. Nothing in this Agreement shall be construed as an admission of liability by the ADMH Commissioner. To the contrary, the ADMH Commissioner denies every material allegation of the Complaint, as amended, as specifically set forth in his Answers to the Complaint and First Amended Complaint.

9. The Parties believe that this Agreement is fair, reasonable, and adequate to protect the interests of all Parties concerning the issues addressed herein. The Parties jointly file this Agreement with the Court and ask the Court to issue an order approving this Agreement as final. The Parties believe that compliance with this Agreement by the ADMH Commissioner will meet the ADMH Commissioner's obligations under United States Constitution with respect to the timelines of mental evaluations and competency restoration treatment. In the event that this Agreement is not approved by the Court such that it settles and resolves, on a class basis and, with respect to Plaintiff ADAP, all claims asserted in the Lawsuit, the Parties retain all of their pre-settlement litigation rights and defenses, including the individually-named Plaintiffs' right to seek class certification and Plaintiff ADAP's right to seek a ruling certifying its standing for all purposes relevant to the litigation of the Lawsuit and all defenses of the Commissioner, including mootness

of the Plaintiffs' claims, standing of each Plaintiff, objections to certification of any class and others. Additionally, the Parties shall return to the status quo ante in the Lawsuit as if the Parties had not entered into this Agreement. Any discussions, offers, or negotiations associated with this Agreement will not be discoverable or offered into evidence or used in the Lawsuit or any other action or proceeding for any purpose, without prejudice to the individually-named Plaintiffs' right to seek class certification and Defendant Beshear's right to oppose class certification. In such event, all Parties will stand in the same position as if the Agreement had not been negotiated, made or filed with the Court.

## III. STIPULATION REGARDING CLASS ACTION FOR PURPOSES OF SETTLEMENT

1.  For purposes of defining the class of persons intended to benefit from the Parties' Agreement, the ADMH Commissioner stipulates to the class of persons under Fed. R. Civ. P. 23(b)(2) to whom the administrative, structural, and procedural changes specified in Section VI below apply as follows:

    a.  All persons who have been, or will be during the period that this Agreement remains in effect, charged with a crime, within the meaning of Rule 1.4(b) of the Alabama Rules of Criminal Procedure, in a court of competent jurisdiction in the State of Alabama, and detained in an Alabama city or county jail or Alabama Department of Corrections facility while awaiting a court-ordered Mental Evaluation or court-ordered Competency Restoration Treatment;

        i.  For whom a Circuit Court has determined that reasonable grounds exist for a mental examination into the person's competency to stand trial under Rule 11 of the Alabama Rules of Criminal Procedure and committed the person to the custody of ADMH under Rule 11.3 of the Alabama Rules of Criminal Procedure by court order for an inpatient evaluation, whether or not the court's order references any provision of law in so ordering; or

ii.     Who is found incompetent to stand trial under Rule 11 of the Alabama Rules of Criminal Procedure and committed to the custody of ADMH under Rule 11.6 of the Alabama Rules of Criminal Procedure by court order for Competency Restoration Therapy, whether or not the court's order references any provision of law in so ordering.

## IV.     STIPULATION REGARDING STANDING FOR PURPOSES OF SETTLEMENT

1.     For purposes of this Agreement only, the ADMH Commissioner does not contest that Plaintiff ADAP has standing in the Lawsuit to assert due process claims on behalf of persons within the State of Alabama with a mental illness and/or intellectual disability who have been charged with a criminal offense, ordered to receive an Outpatient Mental Evaluation, Inpatient Mental Evaluation, or Competency Restoration Treatment, and who await the provision of that treatment in an Alabama city or county jail or an Alabama Department of Corrections facility.

## V.     DEFINITIONS

1.     "ADMH Commissioner" means Defendant Lynn Beshear, acting in his official capacity as Commissioner of the Alabama Department of Mental Health, together with his successors, in his administration and supervision of the Alabama Department of Mental Health.

2.     "Agreement" means this Settlement Agreement and any eventual Consent Decree entered by the Court that results, refers, or relates to the terms and conditions of this Settlement Agreement.

3.     "Alabama Department of Mental Health" or "ADMH" means the state agency charged with providing Outpatient Mental Evaluations, Inpatient Mental Evaluations, and Competency Restoration Treatment to the persons defined in Sections III and IV above pursuant to relevant Alabama circuit court orders, Alabama Rule of Criminal Procedure 11, and, generally, Alabama Code Section 22-50-2.

4.     "Calendar Days" means all days, except where the last day of any relevant time period falls on a federal holiday observed by the United States District Court for the Middle District of Alabama, and then the next day that is not a Sunday.

5.     "Competency Restoration Treatment" means psychiatric therapy, treatment, medication, and/or education designed to restore a criminal defendant found incompetent to stand trial to competency as defined in Alabama Rule of Criminal Procedure 11.1, that is ordered by an Alabama circuit court pursuant to Alabama Rule of Criminal Procedure 11.6 or other applicable legal provision.

6.     "Final Approval" means approval of this Settlement Agreement by the Court by a final and appealable order.

7.     "Hospital Forensic Bed" means a duly licensed and certified bed in a state psychiatric hospital or contracted bed in an inpatient hospital or hospital-like setting. These beds may be provided through a contract between ADMH and a third-party provider, such as a Community Mental Health Center or designated Mental Health Center as provided by Ala. Code §§ 15-16-61(5), 22-51-1, *et seq*., 22-56-5 and 22-52-90(1).

8.     "Community Forensic Bed" means a duly licensed and certified bed in a community setting with up to sixteen (16) beds where the community service is managed and delivered by ADMH or by a community mental health provider through a contract with ADMH. A Community Forensic Bed may not be located on the grounds of any existing state hospital.

9.     "Incarcerated Person" means a person who has been arrested and charged with a criminal offense in a court of competent jurisdiction in Alabama who is incarcerated in an Alabama city or county jail or an Alabama Department of Corrections facility.

10.     "Incompetent to Stand Trial" means a finding by an Alabama Circuit Court or other court of competent jurisdiction that the individual found incompetent is unable to assist in the preparation of his or her defense as defined in Alabama Rule of Criminal Procedure 11.1 or comparable statute.

11.     "Inpatient Mental Evaluation" means a mental evaluation conducted within a state psychiatric hospital or comparable hospital-like facility into which the person being evaluated has been admitted for that purpose, and that is conducted by competent and adequately trained clinical personnel, including at a Community Mental Health Center.

12.     "Licensure and Certification Standards" means those standards for the construction and operation of facilities that provide mental health care to persons in the State of Alabama which are set forth in the Alabama Administrative Code Section 580, *et seq*. or designated mental health facility by ADMH.

13.     "Outpatient Mental Evaluation" means a mental evaluation conducted within the confines of a city or county jail or an Alabama Department of Corrections facility or within a therapeutic setting not requiring the admission and retention of the person being evaluated, and that is conducted by competent and adequately trained clinical personnel, in accordance with applicable professional standards.

14.     "Registered Sex Offender" means an individual convicted of an offense, which under Alabama law requires his or her registration in the Sex Offender Registry.  An individual charged with an offense that, if convicted, would be required to register as a sex offender is not a Registered Sex Offender for purposes of this Agreement.

15.      "Substantial Compliance" means adhering to any plans or methods implemented by the ADMH Commissioner so as to comply with the terms of this Agreement.  Isolated, acute,

non-substantive or immaterial deviations from the terms of this Agreement or from any plans or methods implemented by the ADMH Commissioner so as to comply with the terms of this Agreement will not prevent a finding of Substantial Compliance, provided that the ADMH Commissioner can demonstrate that he has: (A) implemented a system or systems (i) for assuring compliance, and (ii) for taking corrective measures in response to instances of non-compliance; and (B) instituted policies, practices, and resources that are capable of durable and sustained compliance.  For purposes of the termination of this Agreement as provided in Section X below, however, Substantial Compliance requires that the ADMH Commissioner provide court-ordered Outpatient and Inpatient Mental Evaluations and Competency Restoration Treatment within the time frames specified in Sections VI.1.A through VI.1.E based on an average monthly compliance rate defined below in Section VI.

## VI.    SUBSTANTIVE PROVISIONS

1.  **Timely Provision of Court-Ordered Mental Evaluations and Competency Restoration Treatment**.  The ADMH Commissioner, by and through ADMH, will provide court-ordered Mental Evaluations and Competency Restoration Treatment within the time periods specified in Subsections VI.1.A through VI.1.E below.

A.    Outpatient Mental Evaluations of Incarcerated Persons**.**

i.        By twelve (12) months after Final Approval of this Agreement, Outpatient Mental Evaluations of persons who are incarcerated at the time that a court orders that they be evaluated shall be conducted within forty-five (45) calendar days of the date of ADMH's receipt of the order for such evaluation by the circuit court issuing such order, subject to the protocol for the ADMH Commissioner's obtaining such order set forth in Appendix A.  The clinician performing such Outpatient Mental Evaluation shall submit a report containing the

findings of any such evaluation to the relevant circuit court within forty-five (45) calendar days of conducting such Outpatient Mental Evaluation.

ii.　　　　By twenty-four (24) months after Final Approval of this Agreement, Outpatient Mental Evaluations of persons who are incarcerated at the time that a court orders that they be evaluated shall be conducted within thirty (30) calendar days of the date ADMH's of receipt of the order for such evaluation by the circuit court issuing such order, subject to the protocol for the ADMH Commissioner's obtaining such order set forth in Appendix A.  The clinician performing such Outpatient Mental Evaluation shall submit a report containing the findings of any such evaluation to the relevant circuit court within thirty (30) calendar days of conducting such Outpatient Mental Evaluation.

B.　　　Inpatient Mental Evaluations of Incarcerated Persons.

i.　　　By twelve (12) months after Final Approval of this Agreement, Inpatient Mental Evaluations of persons who are incarcerated at the time that a court orders that they be evaluated shall be conducted within forty-five (45) calendar days of the date of receipt of the order for such evaluation by the circuit court issuing such order, subject to the protocol for the ADMH Commissioner's obtaining such order set forth in Appendix A.  The clinician performing such Inpatient Mental Evaluation shall submit a report containing the findings of any such evaluation to the relevant circuit court within forty-five (45) calendar days of conducting such Inpatient Mental Evaluation.

ii.　　　By twenty-four (24) months after Final Approval of this Agreement, Inpatient Mental Evaluations of persons who are incarcerated at the time that a court orders that they be evaluated shall be conducted within thirty (30) calendar days of the date of receipt of the order for such evaluation by the circuit court issuing such order, subject to the protocol for the

ADMH Commissioner's obtaining such order set forth in Appendix A. The clinician performing such Inpatient Mental Evaluation shall submit a report containing the findings of any such evaluation to the relevant circuit court within thirty (30) calendar days of conducting such Inpatient Mental Evaluation.

C. <u>Competency Restoration Therapy and Treatment for Incarcerated Persons</u>.

i.    By twelve (12) months after Final Approval of this Agreement, persons who are incarcerated at the time that they are found Incompetent to Stand Trial and committed to the custody of ADMH for Competency Restoration Treatment shall be admitted into an institution suitable for the provision of Competency Restoration Treatment within forty-five (45) calendar days of the date of the receipt of the order committing them to the custody of ADMH for restorative treatment, subject to the protocol for the ADMH Commissioner's obtaining such order set forth in Appendix A.

ii.    By twenty-four (24) months after Final Approval of this Agreement, persons who are incarcerated at the time that they are found incompetent to stand trial and committed to the custody of ADMH for Competency Restoration Treatment shall be admitted into an institution suitable for the provision of Competency Restoration Treatment within thirty (30) calendar days of the date of receipt of the order committing them to the custody of ADMH for restorative treatment, subject to the protocol for the ADMH Commissioner's obtaining such order set forth in Appendix A.

D. <u>Incarcerated Persons to be Evaluated and Treated According to Date of Order Receipt in the Absence of Exigent Circumstances</u>.

i.    Incarcerated persons whom ADMH has been ordered to evaluate or treat shall be provided services based on the date of receipt of any court order, subject to the protocol for the ADMH Commissioner's obtaining such order set forth in Appendix A.

11

ii.     The ADMH Commissioner may not satisfy the time periods specified in Subsections B and C above by prioritizing, for purposes of admission into a state forensic hospital, persons who have been found Incompetent to Stand Trial and ordered to receive Competency Restoration Treatment over persons who have been found not guilty by reason of insanity and ordered to receive inpatient psychiatric services.  The Parties acknowledge that in exceptional circumstances the ADMH Commissioner may need to "skip" persons found not guilty by reason of insanity ("NGRI") to provide services to a person awaiting a court-ordered Inpatient Mental Evaluation or Competency Restoration Treatment.  The Parties acknowledge that each "skip" affects the Commissioner's monthly compliance rate. The Parties agree that the procedure in Subsection VI.1.E.iv below applies to individuals found NGRI who are "skipped" in favor of the ADMH Commissioner's provision of services to a person found Incompetent to Stand Trial, even though persons found NGRI ordinarily do not count in the calculation of the monthly compliance rate.  Where a person found NGRI is "skipped" to provide services to a person deemed Incompetent to Stand Trial, the ADMH Commissioner shall have sixty (60) days to provide services to the "skipped" individual; if at the end of 60 days the ADMH Commissioner has not yet begun providing services to the person skipped, that person shall be included in the calculation of the average monthly compliance rate beginning on Day 61.

iii.     The ADMH Commissioner may provide services to persons ordered to receive a Mental Evaluation or Competency Restoration Treatment outside of the order dictated by the date the ADMH Commissioner receives their respective court order, specifically, by providing services to particular individual earlier than would be dictated by the date of ADMH's receipt of the court order for their evaluation or treatment (i.e., "line jumping") or, where a demonstrable and compelling obstacle to providing services to a particular individual on the date

that would be dictated by date of the ADMH Commissioner's receipt of the court order for their evaluation or treatment requires the ADMH Commissioner to provide services later than that date (i.e., "skipping"), subject to the provisions set forth in Subsection E, and the calculation of Substantial Compliance with respect to persons provided court-ordered Mental Evaluations or Competency Restoration Treatment out of order shall be made in accordance with the provisions of Subsection E.

        E. <u>Substantial Compliance with Timelines for Incarcerated Persons</u>.

        i. By twelve (12) months after Final Approval of this Agreement, for persons incarcerated in the State of Alabama, the Substantial Compliance standard means that the ADMH Commissioner is in Substantial Compliance if, for each month, the average time period for the ADMH Commissioner's provision of Outpatient Mental Evaluations, Inpatient Mental Evaluations, and Competency Restoration Treatment does not exceed the applicable timeline by 20%, counting only whole days. Thus, the ADMH Commissioner is in Substantial Compliance for each deadline as follows: 30 days (36 days), 45 days (54 days), 60 days (72 days), and 90 days (108 days).

        ii. By twenty-four (24) months after Final Approval of this Agreement, for persons incarcerated in the State of Alabama, the Substantial Compliance standard means that the ADMH Commissioner is in Substantial Compliance if, for each month, the average time period for the ADMH Commissioner's provision of Outpatient Mental Evaluations, Inpatient Mental Evaluations, and Competency Restoration Treatment does not exceed the applicable timeline by 12%, counting only whole days. Thus, the ADMH Commissioner is in Substantial Compliance for each deadline as follows: 30 days (34 days), 45 days (50 days), 60 days (67 days), and 90 days (101 days).

iii.     If the ADMH Commissioner provides an Outpatient Mental Evaluation, Inpatient Mental Evaluation, or Competency Restoration Treatment to an individual prior to the date that would otherwise be dictated by the date that the ADMH Commissioner receives the court order directing same, the ADMH Commissioner's provision of services to that individual (i.e., the "line jumper") shall not be included in the calculation of the ADMH Commissioner's monthly average for purposes of calculating Substantial Compliance.

iv.     If the ADMH Commissioner fails to provide an Outpatient Mental Evaluation, Inpatient Mental Evaluation, or Competency Restoration Treatment to an individual or individuals in a jail or an Alabama Department of Corrections facility when he or she reaches the first position on the waiting list for services ordered by the date of the ADMH Commissioner's receipt of the relevant order for same, based on a demonstrable and compelling obstacle to the provision of the ordered evaluation or treatment at that time, and instead, "skips" that person, that individual will not be counted for the purpose of calculating Substantial Compliance for a period of up to sixty (60) calendar days beyond the date of the skip.  If the ADMH Commissioner "skips" an individual or individuals ordered to receive a Mental Evaluation or Competency Restoration Treatment, the ADMH Commissioner shall notify Plaintiffs' counsel, in writing, within ten (10) days of a "skip" that it has "skipped" that individual or individuals and describe the obstacle to the ADMH Commissioner's provision of the court-ordered service at the time that individual or for those individuals that reached the first position on the waiting list.  If, upon receipt of the ADMH Commissioner's written explanation of a particular "skip," Plaintiffs' counsel disputes the existence of a demonstrable and compelling basis for the "skip," Plaintiffs' counsel may challenge the exclusion of the "skipped" person(s) from the calculation of the monthly compliance rate in accordance with the dispute resolution procedures in Section VIII of this Agreement.  Not less

than five (5) days prior to the end of the sixty (60) day grace period, the ADMH Commissioner shall advise Plaintiffs' counsel, in writing, of (1) the reason(s) why the skipped individual or individuals has or have not yet been provided the court-ordered Mental Evaluation or Competency Restoration Treatment, and (2) any reason(s) why that person or persons should not be included in the calculation of the ADMH Commissioner's monthly compliance rate beginning on day sixty-one (61). Upon Plaintiffs' counsel's receipt of the ADMH Commissioner's written explanation of the continued deferral of the provision of the court-ordered evaluation or treatment to the "skipped" individual, the Parties shall meet and confer in good faith to resolve the issue of whether good grounds exist to justify the continued exclusion of the "skipped" individual from the calculation of the ADMH Commissioner's monthly compliance rate. In the event that the Parties agree that the skipped individual(s) should not be counted in the ADMH Commissioner's monthly compliance rate, the ADMH Commissioner shall provide periodic updates regarding the status of the skipped individual(s) on a timeline agreed upon by the Parties. In the event that the Parties are unable, after good faith discussions, to resolve the issue of whether the skipped individual(s) should be included in the ADMH Commissioner's monthly compliance rate, they shall submit the matter for resolution by the Court in accordance with the dispute resolution procedures set forth in Section VIII of this Agreement. If the ADMH Commissioner fails to provide Plaintiffs' counsel the written notice regarding any "skipped" individual(s) as specified above, that individual shall be included in the calculation of the ADMH Commissioner's monthly compliance rate on day sixty-one (61), and for purposes of this calculation, day 61 shall be treated as one day past the applicable deadline with subsequent days being the corresponding number of days past the deadline (i.e., day 62 is two days past the deadline, day 63 is three days past the deadline, and so on until the person or persons is or are provided the relevant court-ordered service).

v. Substantial Compliance will be determined on a monthly basis by the ADMH Commissioner in a monthly spreadsheet(s) and this spreadsheet should be provided to ADAP by the fifteenth calendar day of the month following the period covered by the monthly report. ADAP may request additional documentation necessary to the interpretation and verification of the spreadsheet data.

vi. If, after their review of the ADMH Commissioner's monthly spreadsheet(s), Plaintiffs assert or contend that the ADMH Commissioner is not in Substantial Compliance with this Agreement, Plaintiffs must articulate, in detail and in writing, the basis or bases for their assertions or contentions. The writing detailing Plaintiffs' assertions or contentions of non-compliance, and the factual basis or bases for the same, must be delivered to the ADMH Commissioner within fourteen (14) calendar days of Plaintiffs' review of the monthly spreadsheet(s).

F. Stipulation of Parties Regarding Calculation of Applicable Times

i. Upon approval of the proposed Settlement Agreement, the Defendant shall have 12 months to come into Substantial Compliance, as defined by Section V.15, with the timeframes set forth in Sections VI.A.i, VI.B.i, VI.C.i, and shall have 24 months to come into Substantial Compliance, as defined in Section V.15, with the timeframes set forth in Section VI.A.ii, VI.B.ii, and VI.C.ii. Pursuant to Section VII, the Monitor will begin monitoring in the fourth month following approval and will calculate the ADMH Commissioner's monthly compliance rate, in months 4-12, based upon the applicable 45 day timeframe, and then in months 13-24, based on the applicable 30 day timeframe.

ii.     The method of calculating the ADMH Commissioner's average monthly compliance rate pursuant to Section V.15, excluding "jumpers" pursuant to Section VI.D.iii or Section VI.E.iii, will be as follows:

a.   Outpatient mental evaluations. For each individual evaluated, the ADMH Commissioner will calculate the number of days between the date that the ADMH Commissioner received the order and the date that the outpatient mental evaluation was conducted. Then add together the total number of days and divide by the total number of persons evaluated on an outpatient basis.

b.          Submission of reports of outpatient mental evaluations. For each report submitted, the ADMH Commissioner will calculate the number of days between the date that the evaluation was conducted and the date that the report regarding the evaluation was submitted to the circuit court. Then add together the total number of days and divide by the number of reports submitted to circuit courts.

c.   Inpatient mental evaluations. For each individual admitted for an inpatient evaluation, the ADMH Commissioner will calculate the number of days between the date that the ADMH Commissioner received the order and the date the inpatient evaluation was conducted. Then the ADMH Commissioner will add together the total number of days and divide by the number of inpatient evaluations conducted.

d.   Submission of reports of inpatient mental evaluations. For each report submitted, the ADMH Commissioner will calculate the number of days between the date that the evaluation was conducted and the date that the report regarding the evaluation was submitted to the circuit court. Then add together the total number of days and divide by the number of reports submitted to circuit courts.

e. Competency restoration treatment. For each individual admitted for competency restoration treatment, the ADMH Commissioner will calculate the number of days between the date that the ADMH Commissioner received the order and the date that the individual was admitted for competency restoration treatment. Then the ADMH Commissioner will add together the total number of days and divide by the number of persons admitted for competency restoration treatment.

f. The calculation for "skippers," shall be made pursuant to Section VI.E.iv.

g. Once the ADMH Commissioner calculates the average monthly rate of providing mental evaluations and competency restoration treatment, Substantial Compliance will be determined by whether the rate exceeds the relevant timeframes in Sections VI.A, VI.B, and VI.C.

h. Provisions for emergency treatment of class members are set forth in Section XV below.

2. **Increase in Capacity to Timely Provide Court-Ordered Mental Evaluations and Competency Restoration Treatment**.

A. Hospital Forensic Beds. The ADMH Commissioner, by and through ADMH and/or its contractors and/other lawful providers, will add and operate, consistent with existing licensure and certification standards, hospital forensic beds for the provision of court-ordered Inpatient Mental Evaluations and Competency Restoration Treatment as follows:

i. Twenty-four (24) hospital forensic beds will be added and operational by twelve (12) months after Final Approval of this Agreement.

ii. Not fewer than twenty-five (25) additional hospital forensic beds will be added and operational by twenty-four (24) months after Final Approval of this Agreement.

iii.     If the ADMH Commissioner determines that he or she can sustain Substantial Compliance as defined in Section VI.1.E with fewer operational Hospital Forensic Beds, the ADMH Commissioner may cease operating those beds that are not necessary to sustain the ADMH Commissioner's Substantial Compliance with the terms of this Agreement.

B.     <u>Community Forensic Beds</u>.  The ADMH Commissioner, by and through ADMH and/or its contractors and/or other lawful providers, will operate, or arrange for the operation of, fifty-two (52) community forensic beds consistent with existing licensure and certification standards, in group homes of no greater than 16 beds distributed throughout the state.

i.     Twenty (20) community forensic beds shall be added and operational by twelve (12) months after Final Approval of this Agreement.

ii.     A minimum of five (5) of the Community Forensic Beds added and operationalized by twelve (12) months after Final Approval of this Agreement shall be located where a Registered Sex Offender may be housed, and these 5 beds shall be used only to house Registered Sex Offenders unless there are fewer than 5 Registered Sex Offenders in need of a community forensic placement. These beds should be integrated within the beds associated with the preceding paragraph.

iii.     Thirty-two (32) additional community forensic beds will be added and operational by twenty-four (24) months after Final Approval of this Agreement.

3.     **Training to Relevant State Personnel**.  The ADMH Commissioner, by and through ADMH, will offer initial and periodic training concerning the provisions of Alabama law and requirements of the Fourteenth Amendment to the United States Constitution with regard to persons ordered to receive Outpatient Mental Evaluations, Inpatient Mental Evaluations, and Competency Restoration Treatment to Alabama state circuit court personnel, county sheriffs, and

members of the Alabama State Bar regarding the procedures for the ADMH Commissioner's provision of Outpatient Mental Evaluations, Inpatient Mental Evaluations, and Competency Restoration Treatment to criminal defendants.

A.    Court Personnel and Sheriffs.  By twelve (12) months after Final Approval of this Agreement, the ADMH Commissioner, by and through ADMH, shall offer training to the circuit court personnel and sheriffs for each of Alabama's 67 counties regarding its obligation to provide timely Mental Evaluations and Competency Restoration Treatment to persons ordered to receive same in Alabama and the cooperation needed from court personnel and sheriffs in order for the ADMH Commissioner to meet the timelines specified in Sections VI.1.A through VI.1.E above.

B.    Attorneys Representing Persons Affected by ADMH-Connected Orders. By twelve (12) months after Final Approval of this Agreement, the ADMH Commissioner shall distribute to each Alabama circuit court a publication, whose content is mutually agreed upon by the ADMH Commissioner and the undersigned counsel for Plaintiffs, for dissemination to attorneys representing persons ordered to receive Outpatient Mental Evaluations, Inpatient Mental Evaluations, or Competency Restoration Treatment.

C. Members of the Alabama Bar.

i.    By twelve (12) months after Final Approval of this Agreement, the ADMH Commissioner shall distribute a letter or email to all members of the Alabama State Bar enclosing the publication specified in Section VI.3.B. above, to ensure that all attorneys representing persons ordered to receive Outpatient Mental Evaluations, Inpatient Mental Evaluations, and Competency Restoration Treatment are aware of the relevant time periods for the provision of same.  ADMH shall also make reasonable efforts to have the publication (or its substance) distributed to the

criminal defense bar and prosecutors through electronic mail listservs (i.e., Alabama Criminal Defense Lawyers).

ii. Beginning in calendar year 2017, and continuing for two years thereafter, the ADMH Commissioner shall offer annual training to members of the Alabama State Bar regarding the timelines governing the provision of court-ordered Outpatient Mental Evaluations, Inpatient Mental Evaluations, and Competency Restoration Treatment and its duty to comply with the same.

## VII. MONITORING

1. The Parties agree that monitoring of the ADMH Commissioner's compliance, by and through ADMH, with the terms of this Agreement is necessary and that ADAP will serve as the monitor.

2. ADAP shall perform the monitoring provided for in this Agreement in accordance with the protocol set forth in Appendix B hereto.

3. The Parties agree that monitoring of the ADMH Commissioner's compliance, by and through ADMH, will be conducted by ADAP who will be recognized as the monitor in this case. ADAP will ensure that any monitoring activities undertaken by ADAP pursuant to its statutory access authority during the term of this Agreement (and any extension thereof) are separated from its monitoring activities under this Agreement, and shall not seek reimbursement under this Agreement for any monitoring activities undertaken pursuant to its statutory access authority. ADMH will allow ADAP, during its monitoring role, to have access to facilities, documents, staff, procedures, logs, records, and other similar information sources in order to ensure compliance. ADAP will further have access to persons in ADMH-operated facilities or facilities operated by ADMH-contractors who are ADAP's clients, persons who are members of

the certified class, or persons otherwise referred to in this Settlement Agreement.  ADAP agrees to provide reasonable notice to ADMH facilities or staff before seeking said access in order to minimize disruptions to normal ADMH facility operations.  ADAP will have its normal access to other persons in ADMH custody not involved in this Lawsuit under authority granted them by federal law as the protection and advocacy agency in Alabama.  Nothing in this Settlement Agreement is intended to expand or restrict ADAP's existing access under federal law. ADAP will not charge monitoring fees for persons not covered by the terms of this Agreement.  ADMH will assist to the extent possible if necessary to facilitate ADAP's reasonable access to persons held in the physical custody of county jails and resolve any challenges to ADAP's access to persons held in the physical custody of county jails.  ADAP understands and agrees that access to county jails is not within the control of the Defendant or ADMH.  The inability of ADAP to access persons held in county jail will not constitute a breach of this Agreement by ADMH.

4.      ADAP agrees to be bound by any Protective or Court Orders entered in this case to protect the confidentiality of inmate records and sensitive security information.

5.      ADAP will prepare a written report on ADMH's efforts to meet the requirements of this Agreement and any plan to effectuate the terms of this Agreement at least quarterly. Each report will indicate all areas in which the ADMH Commissioner is, or is not, in Substantial Compliance.  Such report will be provided to ADMH and all counsel of record.  If ADAP believes that the ADMH Commissioner is not in Substantial Compliance with the terms and provisions of this Agreement and/or any plan to effectuate its terms, ADAP will provide written recommendations for actions that it believes necessary to achieve Substantial Compliance with the terms of the provision or provisions.  The ADMH Commissioner, by and through ADMH, will investigate the allegations and respond in writing with its comments, objections, or remedial action

plan(s) through its counsel within thirty (30) calendar days after receipt of the notification. The Parties will meet and confer in good faith to attempt to address deficiencies identified by ADAP.

6.      In the event that Plaintiffs' counsel or the monitor discovers an exigent issue involving non-compliance, Plaintiffs' counsel or the monitor shall notify counsel for the ADMH Commissioner of same, in a writing designating the issue as exigent, without having to provide a complete report as to all areas in which the ADMH Commissioner is, or is not, in Substantial Compliance as specified in Section VII.5 above within ten (10) calendar days of the monitor's discovery of such exigent issue.  The ADMH Commissioner, by and through ADMH, will investigate the allegations and respond in writing with its comments, objections, or remedial action plan(s) through its counsel within fourteen (14) calendar days after receipt of the notification. The Parties will meet and confer in good faith to attempt to address deficiencies identified by ADAP.

7.      Monitoring will continue for a period that begins ninety (90) days after Final Approval of this Agreement and runs through the termination of the Agreement and the Court's jurisdiction over same, subject to the provisions of Section X below.  The monitor shall not begin calculating the ADMH Commissioner's monthly compliance rate for ninety (90) days following Final Approval of this Agreement.

## VIII.  DISPUTE RESOLUTION PROCESS

1.      During the implementation and monitoring periods of this Agreement (*see* Sections VI and VII, above), if Plaintiffs' counsel or the monitor believe that ADMH is not complying with some aspect of the Agreement, they will notify counsel for the Defendant ADMH Commissioner, as described in Sections VII.5 and VII.6 above.   Defendant ADMH Commissioner, by and through ADMH, will respond as specified in Sections VII.5 and VII.6

above.  Thereafter the Parties will meet and confer in good faith to resolve the issue as specified in Section VII.5 and VII.6 above.

2.       In the event that the Parties are unable to resolve any issue(s) after attempting to do so in good faith, they shall submit their dispute to the magistrate judge assigned to the case or to the district court in the event no magistrate judge is assigned. Both parties shall have the right to appeal any magistrate judge's decision to the district court for review.

3.       The award of any attorneys' fees to Plaintiffs in connection with any motion filed after engagement in the Dispute Resolution Process shall be governed by the provisions of Section XIII.5.

## IX.     RESERVATION OF JURISDICTION AND ENFORCEMENT

1.       The Parties consent to the reservation and exercise of jurisdiction by the Court over disputes between the Parties and among the Parties arising out of this Agreement.

2.       The Court will retain jurisdiction to enforce the terms of this Agreement, upon Final Approval, until the Agreement is terminated.

3.       This Agreement may be enforced only by the Parties hereto and those intended to receive the Mental Evaluations and Competency Restoration Treatment provided for herein as specified in Sections III and IV above.  Nothing contained in this Agreement is intended or will be construed to evidence an intention to confer any right or remedy upon any person other than the persons specified in this Section.

## X.     TERMINATION

1.       The Parties agree that the term of this Agreement shall be three (3) years from the date of Final Approval by the Court, subject to the provisions below.

2.      If Plaintiffs believe that the ADMH Commissioner has not achieved Substantial Compliance with the timelines for the provision of Outpatient Mental Evaluations, Inpatient Mental Evaluations, and Competency Restoration Treatment specified in Section VI.1.E above for at least the nine consecutive (9) months preceding the end date of the Agreement, Plaintiffs shall file a motion to extend jurisdiction and monitoring with the Court at least four (4) months prior to the end date of the Agreement.  Upon the filing of a motion to extend jurisdiction and monitoring, the determination of whether the ADMH Commissioner has achieved Substantial Compliance as defined in Section VI.1.E shall be made by the Court after an evidentiary hearing.  If the Court finds that the ADMH Commissioner has not achieved Substantial Compliance as defined in Section VI.1.E for at least the nine consecutive (9) months preceding the hearing on the extension of its jurisdiction and monitoring, the Court may retain jurisdiction for a period of time determined by the Court to ensure the ADMH Commissioner achieves Substantial Compliance.  If the Court determines that ADMH has achieved Substantial Compliance as defined in Section VI.1.E, the Court may terminate jurisdiction and monitoring on the end date of the Agreement.  If the ADMH Commissioner has not achieved Substantial Compliance as defined in Section VI.1.E, the ADMH Commissioner may, at any time following the end of the three (3) year term, petition the Court for termination of the Agreement and the Court's jurisdiction based on the status of the law at the time of such petition.  In the event that the ADMH Commissioner seeks to terminate the Agreement and the Court's jurisdiction, the ADMH Commissioner shall bear the burden of proof to demonstrate that termination is appropriate and Plaintiffs shall have the right to respond to same prior to any determination by the Court that any such termination sought by the ADMH Commissioner is appropriate.

3.      Three months prior to the end of the term of the Agreement, if the Parties agree that the ADMH Commissioner has not achieved Substantial Compliance, the Parties may agree in writing to extend the term of the Agreement for a specified period, and by joint motion, seek the Court's approval of their agreed-upon extension without an evidentiary hearing to determine compliance.  During the extension period agreed upon by the Parties, the terms of the Agreement shall remain fully in effect and the parties will jointly request that the Court retain jurisdiction over the above-styled action.

4.      If the term of Agreement is extended pursuant to Subsection X.2 above, Plaintiffs may seek additional extensions of the term of this Agreement by demonstrating that  the ADMH Commissioner cannot demonstrate Substantial Compliance with the timelines for the provision of Outpatient Mental Evaluations, Inpatient Mental Evaluations, and Competency Restoration Treatment specified in Section VI.1 above for at least nine (9) consecutive months preceding any scheduled expiration or termination of the Agreement.

5.      If the term of the Agreement is extended pursuant to Subsection X.2 above, the Court may order an additional term of monitoring commensurate with the period of time that the Court's jurisdiction is extended.  If the monitoring period is extended, ADAP shall remain the monitor, and the hourly rate for additional monitoring and the total amount billable for such additional monitoring shall be the rates specified in Section XIII below, unless the Court determines that lower hourly rates and a lower annual cap is appropriate.

## XI.      AMENDMENTS

1.      By mutual agreement, the Parties may change terms of this Agreement, including but not limited to the timelines for taking specific actions, provided that such modifications are memorialized  in writing, signed by the Parties or through their counsel, and approved by the Court.

## XII. FUNDING

1.      The Parties acknowledge that implementation of the terms of this Agreement and any plan necessary to effectuate its terms are subject to the availability and receipt of appropriated funds.

2.      The Parties further acknowledge that additional funding and the cooperation of third parties is necessary to the ADMH Commissioner's full performance in accordance with the terms of this Agreement, and that the lack of funding or third party cooperation does not preclude the Court from entering an Order to achieve compliance with this Agreement, and with other applicable law, provided that the ADMH Commissioner reserves the right to assert that the lack of funding and/or third party cooperation should be taken into account in any remedial order.

3.      The ADMH Commissioner and ADAP agree to make all possible good faith efforts to seek all necessary funding to implement the terms of this Agreement, except that ADAP shall not be required to lobby in contravention of the federal prohibition on lobbying efforts by ADAP. In the event that the Parties are unable to agree as to whether there is sufficient funding to implement this Agreement, the Parties will meet and confer, and if necessary, consult with the Court.  In the event that the Parties remain unable to agree, either party may seek the assistance of the Court.

4.      The Parties stipulate that Section XII's provisions serve neither as a condition precedent to performance nor a basis for excusing the Parties' performance obligations under the Settlement Agreement. Section XII.1's acknowledgement that "implementation . . .[is] subject to the availability and receipt of appropriated funds" does not create a condition precedent to implementation, but acknowledges instead the practical reality that the ADMH Commissioner, in her administration of ADMH, is subject to an annual legislative appropriation process. Section

XII.2's acknowledgement that "additional funding and the cooperation of third parties is necessary to the ADMH Commissioner's full performance in accordance with the terms of the Agreement" likewise does not function as a condition precedent to the ADMH Commissioner's performance nor excuse her nonperformance, as made explicit in the further acknowledgement that "lack of funding or third party cooperation does not preclude the Court from entering an Order to achieve compliance with this Agreement.

## XIII.  ATTORNEYS' FEES AND EXPENSES

1.      The ADMH Commissioner, by and through ADMH, agrees to pay attorneys' fees and associated costs to Plaintiffs' counsel in the amount of $275,000 for services rendered through March 13, 2017.  From March 14, 2017, until Final Approval of this Agreement by the Court, the ADMH Commissioner, by and through ADMH, agrees to pay attorneys' fees to Plaintiffs' counsel in the amount of $275 per hour plus reasonable expenses.  This payment shall be made to Henry F. Sherrod, III, P.C.  The Plaintiffs' counsel shall be paid one-half (1/2) of said attorneys' fees within sixty (60) days of Final Approval of this Agreement by the Court.  The balance shall be paid within sixty (60) days of the beginning of the 2019 Fiscal Year.

2.      Plaintiffs' counsel agree that they will not seek nor petition the Court for an award of attorneys' fees and expenses for monitoring services greater than the following amounts.  For purposes of describing the periods hereinafter, the time commences 90 days following the execution and Final Approval of this settlement by the Court. The fees amounts for monitoring services will be capped at, and shall not exceed, a total of the following amounts:

A.      Year One (which runs from the date that monitoring begins): $48,000.00.

B.      Year Two (which runs from the date that monitoring begins): $48,000.00.

C.      Year Three (which runs from the date that monitoring begins): $48,000.00.

D.     Additional periods of monitoring due to extension of the Agreement:  $48,000 annually, unless a lower amount is Ordered by the Court or agreed to by the Parties.

3.     Plaintiffs' counsel will provide itemized hours expended with detailed time entries to the ADMH Commissioner, in writing, on a quarterly basis.

4.     The ADMH Commissioner, by and through ADMH, agrees to pay an hourly rate of $195.00 for services rendered by attorneys and $65.00 per hour for paralegals, law clerks, and members of ADAP's monitoring unit in the monitoring process. The Parties will meet and confer and attempt to agree upon payment for monitoring services rendered.  In the event that the Parties are unable to agree upon the reasonable number of hours expended, either party may seek the assistance of the Court if the Parties remain unable to agree.

5.     The annual caps and hourly rates described herein do not apply to (a) Plaintiffs' motions to enforce the terms of this Agreement, and (b) Plaintiffs' opposition to any motions filed by the ADMH Commissioner arising out of this Agreement.  No fees and expenses will be awarded to Plaintiffs' counsel for such motions or oppositions unless the Court finds: (a) that the motion or opposition was necessary to enforce the terms of the Agreement; and (b) that Plaintiffs attempted to resolve the matter and or narrow the issues as much as possible by meeting and conferring with the ADMH Commissioner, taking full opportunity of recourse to the mediation process before presenting the issues to the Court.

## XIV.   ADDITIONAL PROVISIONS

1.     The ADMH Commissioner waives the right to contest the enforceability of this Agreement by persons who have been charged with a crime in Alabama and ordered to receive an Outpatient Mental Evaluation as provided in Section VI.1.A. The Plaintiffs waive the right to contest, following Final Approval of the Agreement, the Constitutionality of this Agreement, any

of its terms, and the validity of this Agreement. Any person who is not part of settlement class who attempts to enforce this Agreement shall be deemed to be bound by this Agreement.

2.    This Agreement constitutes the entire agreement between the Parties as to all claims contained herein. This Agreement supersedes all prior agreements, whether written, oral, or implied. Each party represents that it has full legal authority to enter into and execute this Agreement.

3.    This Agreement completely resolves all claims in this Lawsuit that were brought or were required to have been brought in this Lawsuit with regard to the settlement class or any other beneficiary of this Agreement.

4.    Unless expressly identified in this Agreement, the Parties do not intend for this Agreement to confer any benefit on any third party.

5.    This Agreement may not be altered or amended, except in writing signed by all Parties or their representatives or by a Court order.

6.    Nothing in this Agreement shall be construed to require the ADMH Commissioner or ADMH to disobey or violate any order of any court or any state or federal law in any way, subject to the Supremacy Clause of the United States Constitution.

7.    This Agreement will be binding on all successors, employees, agents, and all others working on behalf of Plaintiffs and Defendant Lynn Beshear.

## XV.    IDENTIFICATION AND EMERGENCY TREATMENT OF CLASS MEMBERS

1.    **Identification and Emergency Treatment of Class Members.** The Parties will implement the following process for identifying and treating class members who need emergency treatment prior to their admission into a facility operated by the Alabama Department of Mental Health ("ADMH"):

a.    ***Notice to Relevant Persons***.  The Parties, during the term of the proposed Settlement Agreement, and ADMH thereafter, will work with officials of the Alabama State Bar, with whom they have already begun conferring, to disseminate, on an annual basis, notice to members of the Alabama State Bar, which substantially comports with Appendix C hereto. The notice will be disseminated in a manner agreed to in cooperation with the Alabama State Bar, or alternatively, the Alabama Administrative Office of Courts, which may include publication. During the term of the proposed Settlement Agreement, the Parties, and ADMH thereafter, will also disseminate a notice to the circuit court judge in each Alabama county, on an annual basis, designating the ADMH official responsible for initiating the process of identifying and arranging emergency treatment for persons awaiting inpatient mental evaluations and/or competency restoration treatment prior to their admission into a facility operated by ADMH for that purpose, which will substantially comport with Appendix D hereto.

b.    ***Procedure for Identifying Class Members in Need of Emergency Treatment.***  The ADMH Commissioner shall designate, annually, an ADMH official (the "ADMH Designee") to receive notice from current and future class members' criminal defense counsel and/or Alabama circuit court judges that a class member needs emergency treatment.  Upon receipt of any such notice by the ADMH Designee, the ADMH Designee will provide notice of his or her receipt of notice to the Monitor, the Alabama Disabilities Advocacy Program ("ADAP"), within forty-eight (48) hours of receiving same during the term of the Settlement Agreement (ECF No. 60-1).  Notification of the Monitor for this purpose may be made to the same individual designated according to Section III.1 of Appendix B (Monitoring Protocol) of the Settlement Agreement. Upon receiving notice from criminal defense counsel and/or an Alabama circuit court judge (or an agent acting on behalf of an Alabama circuit court judge) that an incarcerated criminal defendant

needs emergency psychiatric treatment, the ADMH Designee will first confirm that the individual is a class member to whom the ADMH Commissioner has a duty to provide care. If the individual concerning whom the ADMH Designee receives notice of a need for emergency treatment is not a class member, the Monitor shall transmit the notice to the Alabama Disabilities Advocacy Program operating as the State's protection and advocacy agency for prospective advocacy. If the individual concerning whom the ADMH Designee receives notice of a need for emergency treatment is a class member, the ADMH Designee will arrange for a clinical professional to visit the class member in person to conduct an assessment of the class member's need for emergency treatment within four (4) business days of the ADMH Designee's receipt of notice of the need for emergency treatment. If, in the clinical professional's judgment, the class member needs emergency treatment, the ADMH Commissioner shall arrange for the provision of emergency treatment to the class member or the class member's early admission into an ADMH operated facility for purposes of receiving the court-ordered inpatient mental evaluation or competency restoration treatment (*i.e.*, a "line jump" pursuant to Section VI.D.iii of the proposed Settlement Agreement) within seven calendar days of the clinical professional's in-person visit with the class member. The ADMH Designee will advise the Monitor of the clinical professional's determination whether the class member needs emergency treatment and any arrangements for such treatment within forty-eight (48) hours of the professional's in-person visit with the class member during the term of the Settlement Agreement. If after the ADMH Designee receives notice from a class member's defense counsel or a circuit court judge the Sheriff of the county and/or officials of the jail or Alabama Department of Corrections Facility in which the class member is incarcerated refuses ADMH officials, the ADMH-designated clinical professional, or the Monitor access to the class member, then within twenty-four (24) hours of the denial of access the ADMH

Designee will notify the Monitor of same and all Parties will meet and confer as to the appropriate motion to be filed with the Circuit Court for access to the class member. In the event of a dispute between the ADMH officials evaluating the class member for emergency treatment or a potential "line jump" and the Monitor concerning the need for same, the Monitor shall submit the dispute for formal resolution in accordance with the provisions for dispute resolution in Section VIII of the proposed Settlement Agreement.

c. ***Procedure for Responding to Class Members Who May Be Suicidal.*** Upon receipt of notice by the ADMH Designee that an incarcerated criminal defendant needs emergency treatment because he or she is believed to be suicidal, the ADMH Designee shall forward notice of same to the Monitor within twenty-four (24) hours of receipt, unless such notice is received on a Saturday or Sunday, in which case the ADMH Designee shall have until close of business the following Monday to forward the notice to the Monitor. Upon receipt of such notice, if the individual identified in the notice is a class member, the Monitor shall immediately notify the Sheriff of the county and officials of the jail or ADOC facility in which the individual is incarcerated that the individual is believed to be at risk of suicide. If the individual identified in the notice is not a class member, the Monitor shall transmit the notice to the State's protection and advocacy agency for prospective advocacy.

## XVI.   EFFECT OF SETTLEMENT AGREEMENT ON FEMALE CLASS MEMBERS

1. All provisions of the Settlement Agreement apply with equal force to male and female class members, including all timeframes for the provision of court-ordered inpatient mental evaluations and competency restoration treatment, Settlement Agreement, Section VI.1.A, VI.1.B, and VI.1.C, training to relevant state personnel, Settlement Agreement, Section VI.3, and monitoring, Settlement Agreement, Section VII, Appendix B (Monitoring protocol including

documents provided for monitoring include waiting lists for Taylor Hardin Secure Medical Facility and Bryce Hospital). The provisions of the Settlement Agreement related to the addition of forensic hospital and community beds likewise apply with equal force to female and male members of the settlement class, as the additional capacity required by the Settlement Agreement must be allocated so as to ensure that the timeframes for provision of court-ordered services to female class members are achieved.

2. As of August 7, 2017, there were no female class members on the waiting list for admission to Bryce Hospital for court-ordered inpatient mental evaluations or competency restoration treatment. The total number of female class members who have been ordered to receive an inpatient mental evaluation, and who awaited admission to Bryce Hospital for some period of time, since January 1, 2017 is 9. The total number of female class members who have been found incompetent to stand trial and ordered to receive competency restoration treatment, and who awaited admission to Bryce Hospital for some period of time, since January 1, 2017 is 8. The average number of days following ADMH's receipt of a circuit court order directing its provision of an inpatient mental evaluation or competency restoration treatment to a female class member has been 7 days, with the longest wait since January 1, 2017 being 10 days.

Dated, this the 25th day of January, 2018.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE