UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DEMONTRAY HUNTER, by and through his next friend, Rena Hunter; RUSSELL D. SENN, by and through his next friend, Irene Senn; TRAVIS S. PARKS, by and through his next friend, Catherine Young; VANDARIUS S. DARNELL, by and through his next friend, Bambi Darnell; FRANK WHITE, JR., by and through his next friend, Linda White; MARCUS JACKSON, by and through his next friend Michael P. Hanle; TIMOTHY D. MOUNT, by and through his next friend, Dorothy Sullivan; HENRY P. MCGHEE, by and through his next friend, Barbara Hardy, individually and on behalf of all others similarly situated; and the ALABAMA DISABILITIES ADVOCACY PROGRAM, | CASE NO. 2:16-cv-00798-MHT-CSC |
| Plaintiffs, | CLASS ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF |
| v. | |
| LYNN T. BESHEAR, in her official capacity as Commissioner of the Alabama Department of Mental Health, | |
| Defendant. | |

## JOINT REPORT ON STATUS OF COMPLIANCE WITH CONSENT DECREE

The named Plaintiffs as class representatives, the Alabama Disabilities Advocacy Program, and Lynn T. Beshear, Commissioner of the Alabama Department of Mental Health, jointly submit this report on the status of compliance with the Consent Decree entered in this action on January 25, 2018. *See* Order Directing Status Report, ECF No. 95; Consent Decree, ECF No. 94.   The Parties respectfully request a status conference with the Court to address the matters set forth in Section II below.

I.      **JOINT REPORT ON COMPLIANCE WITH TERMS OF CONSENT DECREE**

A.      **Timelines for Provision of Court-Ordered Psychiatric Services**

The Consent Decree mandates that the ADMH Commissioner provide outpatient mental evaluations (and ensure the submission of reports regarding same to the relevant circuit court), inpatient mental evaluations (together with submission of relevant reports), and competency restoration treatment to class members within 45 days of the ADMH Commissioner's receipt of a court order for same by 12 months following its entry. ECF No. 94, 19-20, 25.  The Consent Decree further provides that substantial compliance with this 12 month benchmark requires that the average time period for the provision of court-ordered psychiatric services and the submission of reports regarding same not exceed 54 days (i.e., the average time period does not exceed 20% of the 45 day time period).  *Id*. at 20-1, 25.[1]

**Defendant's Response to I.A (Timelines for Provisions of Court-Ordered Psychiatric Services)**

The Defendant does not refute the statements made by Plaintiffs as class representatives in Section I.A.

---

[1] For purposes of clarity, this Joint Status Report on Compliance simplifies the compliance measures applicable to each performance requirement included in the Consent Decree to provide the Court an overview of the status of compliance at 12 months following entry of the Consent Decree.  Each of the compliance measures are thoroughly described in Section II of each of the Reports of the Monitor filed under seal as Exhibits A (Report of the Monitor for Monitoring Period April 25 2018 - July 31, 2018), B (Report of the Monitor for Monitoring Period August 1, 2018 – October 31, 2018), and C (Report of the Monitor for Monitoring Period November 1, 2018 – January 31, 2019).  Due to the sensitive content of the material included in the monitoring reports, the Parties were granted leave to file them under seal. *See* ECF No. 113.

### 1.    Outpatient Mental Evaluations of Incarcerated Persons

The ADMH Commissioner's average time periods for the provision of outpatient mental evaluations during the first 12 months following entry of the Consent Decree are set forth below. *See* Exhibits A, at 10; Exhibit B, at 10; Exhibit C, at 10.[2]

| | |
|---|---|
| April 25 – April 30, 2018 | 294.5 days |
| May 1 – May 31, 2018 | 35 days |
| June 1 – June 30, 2018 | 280.46 days |
| July 1 – July 31, 2018 | 252.05 days |
| August 1 – August 31, 2018 | 209.17 days |
| September 1 – September 30, 2018 | 135.83 days |
| October 1 – October 31, 2018 | 136.61 days |
| November 1 – November 30, 2018 | 248.20 days |
| December 1 – December 31, 2018 | 163.51 days |
| January 1 – January 24, 2019 | 224.93 days |

The average time periods for the submission of reports regarding the provision of outpatient mental evaluations to relevant circuit courts are set forth below.  *See* Exhibits A, at 11; Exhibit B, at 12; Exhibit C, at 10.

| | |
|---|---|
| April 25 – April 30, 2018 | No reports submitted |
| May 1 – May 31, 2018 | 39.33 days |
| June 1 – June 30, 2018 | 55.50 days |
| July 1 – July 31, 2018 | 25.52 days |

---

[2] Pursuant to the Consent Decree, compliance monitoring began in the fourth month following entry of the Consent Decree.  *See* ECF No. 94, at 23 (Section VII.7).

| | |
|---|---|
| August 1 – August 31, 2018 | 27.46 days |
| September 1 – September 30, 2018 | 27.87 days |
| October 1 – October 31, 2018 | 48.51 days |
| November 1 – November 30, 2018 | 19.50 days |
| December 1 – December 31, 2018 | 29.13 days |
| January 1 – January 24, 2019 | 40.93 days |

The average time periods for the provision of outpatient mental evaluations do not satisfy the 54 day standard for substantial compliance for the first 12 months following entry of the Consent Decree, nor do the average time periods for the submission of reports for outpatient mental evaluations.

**Defendant's Response to I.A.1. (Outpatient Mental Evaluations of Incarcerated Person)**

The Defendant refutes the statements made in the last paragraph that states the Defendant has not met the 54 day standard concerning the time period for submissions of outpatient mental evaluations. The Consent Decree does not require the connection between the days of report for an outpatient evaluation and the days of submission of the evaluation report to the Court. The Defendant has substantially complied with this request.

**2.     Inpatient Mental Evaluations of Incarcerated Persons**

The ADMH Commissioner's average time periods for the provision of inpatient mental evaluations during the first 12 months following entry of the Consent Decree are set forth below. *See* Exhibits A, at 11; Exhibit B, at 12; Exhibit C, at 10.

| | |
|---|---|
| April 25 – April 30, 2018 | No inpatient evaluations conducted |
| May 1 – May 31, 2018 | 229.33 days |

4

| | |
|---|---|
| June 1 – June 30, 2018 | 311.67 days |
| July 1 – July 31, 2018 | 349.17 days |
| August 1 – August 31, 2018 | 386.67 days |
| September 1 – September 30, 2018 | 318 days |
| October 1 – October 31, 2018 | 377.5 days |
| November 1 – November 30, 2018 | 385.25 days |
| December 1 – December 31, 2018 | 356.8 days |
| January 1 – January 24, 2019 | No inpatient evaluations conducted |

The average time periods for the submission of reports regarding the provision of inpatient mental evaluations to relevant circuit courts are set forth below. *See* Exhibits A, at 11-12; Exhibit B, at 12; Exhibit C, at 11.

| | |
|---|---|
| April 25 – April 30, 2018 | 8.67 days |
| May 1 – May 31, 2018 | 14.5 days |
| June 1 – June 30, 2018 | 25.83 days |
| July 1 – July 31, 2018 | 5.5 days |
| August 1 – August 31, 2018 | 25.4 days |
| September 1 – September 30, 2018 | 7.67 days |
| October 1 – October 31, 2018 | 8.29 days |
| November 1 – November 30, 2018 | 29.5 days |
| December 1 – December 31, 2018 | 22.67 days |
| January 1 – January 24, 2019 | 0 days |

The average time periods for the provision of inpatient mental evaluations do not satisfy the 54-day standard for substantial compliance for the first 12 months following entry of the Consent Decree, nor do the average time periods for the submission of reports for inpatient mental evaluations because the underlying evaluations were submitted out of order.

**Defendant's Response to I.A.2 (Inpatient Mental Evaluations of Incarcerated Persons)**

The Defendant agrees that the average time periods do not satisfy the substantial compliance standard at this time.

### 3.    Competency Restoration Treatment of Incarcerated Persons

The ADMH Commissioner's average time period for the admission of males ordered to receive competency restoration treatment into Taylor Hardin Secure Medical Facility ("Taylor Hardin") and the admission of females into Bryce Hospital during the first 12 months following entry of the Consent Decree, respectively, are set forth below. *See* Exhibits A, at 12; Exhibit B, at 12-13; Exhibit C, at 11.

**Admission of Males into Taylor Hardin**

| April 25 – April 30, 2018 | No admissions into Taylor Hardin for CRT |
|---|---|
| May 1 – May 31, 2018 | 216.67 days |
| June 1 – June 30, 2018 | 233 days |
| July 1 – July 31, 2018 | 237 days |
| August 1 – August 31, 2018 | 276.67 days |
| September 1 – September 30, 2018 | 302 days |
| October 1 – October 31, 2018 | 302 days |
| November 1 – November 30, 2018 | 251.4 days |
| December 1 – December 31, 2018 | 324 days |

| January 1 – January 24, 2019 | 229.33 days |
|---|---|

**Admission of Males into Hillcrest Hospital[3]**

| January 1 – January 24, 2019 | 327 days |
|---|---|

**Admission of Females into Bryce Hospital**

| April 25 – April 30, 2018 | No admissions |
|---|---|
| May 1 – May 31, 2018 | 4.5 days |
| June 1 – June 30, 2018 | 142 days |
| July 1 – July 31, 2018 | No admissions |
| August 1 – August 31, 2018 | No admissions |
| September 1 – September 30, 2018 | No admissions |
| October 1 – October 31, 2018 | No admissions |
| November 1 – November 30, 2018 | No admissions |
| December 1 – December 31, 2018 | No admissions |
| January 1 – January 24, 2019 | No admissions |

The average time periods for the admission of males into Taylor Hardin for competency restoration treatment do not satisfy the 54-day standard for substantial compliance for the first 12 months following entry of the Consent Decree. The average time periods for admission of females into Bryce Hospital for the month of May 2018 does satisfy the 54-day substantial compliance measure, but the average time period for admission of females into Bryce Hospital for the month of June 2018 does not satisfy the 54-day substantial compliance measure.

---

[3] Beds at Hillcrest Hospital did not come online until January 2019 and as such there were no admissions to that facility until the last month of the most recent Monitoring Period.

**Defendant's Response to I.A.3 (Competency Restoration Treatment of Incarcerated Persons)**

The Defendant agrees with the above statements.

### 4.    Evaluations and Treatment of Incarcerated Females

The average time periods for the evaluation of females ordered to receive mental evaluations is incorporated into the time periods reported in Section 3 above.  The average time periods for the treatment of females falls within the 54-day substantial compliance measure specified by the Consent Decree.  *See* Section 3 above.

**Defendant's Response to I.A.4 (Evaluations and Treatment of Incarcerated Females)**

The Defendant agrees with Plaintiffs' contention that the Defendant has substantially complied with the time frame to evaluate females under the Consent Decree.

### 5.    Order of Evaluation and Treatment of Incarcerated Persons

In the ADMH Commissioner's effort to address the backlog of ordered mental evaluations and inpatient admissions for competency restoration treatment, a number of individuals have been evaluated and admitted outside of the order specified by Section VI.1.D of the Consent Decree.  ECF No. 94 at 11-13.  The number of out-of-order evaluations and admissions had declined since the initial monitoring period (Months 4 through 6).  However, several otherwise timely-provided psychiatric services fail to constitute substantial compliance given that they were performed out-of-order.  *See* Exhibits A, at 10-12, 15-16; Exhibit B, at 11-13, 16-17; Exhibit C, at 9-12, 14-15.

**Defendant's Response to I.A.5 (Order of Evaluation and Treatment of Incarcerated Persons**

The Defendant agrees that a "small" number of inpatient individuals awaiting evaluation were taken out of order, but only in exigent circumstances.

### B.    Operationalization of Hospital and Community Forensic Beds

### 1.     Hospital Forensic Beds

The Consent Decree requires the ADMH Commissioner to add and operate, consistent with existing licensure and certification standards, 24 hospital forensic beds by 12 months following entry of the Consent Decree, ECF No. 94 at 27-28 (Section VI.2.A.i), and not fewer than 25 additional beds by 24 months following entry of the Consent Decree. *Id*. at 28 (Section VI.2.A.ii.).

The ADMH Commissioner added and operationalized 25 new hospital forensic beds at Taylor Hardin Secure Medical Facility in July 2017.  *See* Exhibit A, at 9.

**Defendant's Response to I.B.1 (Hospital Forensic Beds)**

The ADMH Commissioner agrees with the Plaintiff that 25 hospital forensic beds were added before or within the 12 month period following the entry of the Consent Decree. These beds were added to the existing beds at Taylor Hardin Secure Medical Facility.

### 2.     Community Forensic Beds

The Consent Decree requires the ADMH Commissioner, by and through ADMH and/or its contractors and/or other lawful providers, to add and operate, consistent with existing licensure and certification standards, 52 forensic beds in group homes of no greater than 16 beds.  ECF No. 94. at 18-19.  New Community Forensic Beds may not be operated on the grounds of any existing state hospital.  *Id*. at 7 (definition of Community Forensic Bed).  By 12 months following entry of the Consent Decree, the ADMH Commissioner must add and operate 20 community forensic beds.  *Id*. at 19 (Section VI.2.B.i.).  A minimum of 5 of these 2 community beds must be located where a Registered Sex Offender may be housed.  *Id*.  (Section VI.2.B.ii)  The 5 new community forensic beds set aside for Registered Sex Offenders may only be used to serve Registered Sex Offenders unless there are fewer than 5 Registered Sex Offenders in need of a community placement.  *Id*.

No community forensic beds were added or operationalized during Monitoring Period April

25, 2018 – July 31, 2018, nor were any community forensic beds added or operationalized during Monitoring Period August 1, 2018 – October 31, 2018.   However, during Monitoring Period November 1, 2018 – January 31, 2019, the ADMH Commissioner added 32 community forensic beds between two 16-bed forensic group homes contracted through East Alabama Mental Health and Northwest Alabama Mental Health, respectively.  *See* Exhibits A, at 12; Exhibit B, at 14, 17; Exhibit C, at 9, 15.

> **Defendants' Response to I.B.2 (Community Forensic Beds)**

> The Defendant agrees with the statements made by the Plaintiffs above.

> **C.    Training to Relevant State Personnel**

> > **1. Court Personnel and Sheriffs**

Within 12 months of its entry, the Consent Decree required the ADMH Commissioner to offer training to the circuit court personnel and sheriffs for each of Alabama's 67 counties regarding ADMH's obligation to provide timely Mental Evaluations and Competency Restoration Treatment to persons ordered to receive same and the cooperation needed from court personnel and sheriffs in order for the ADMH Commissioner to meet the timeframes for service provision in the Consent Decree.  ECF No. 94, at 20 (Section VI.3.A).   The ADMH Commissioner substantially complied with this training obligation by offering training to court personnel and sheriffs in each of Alabama's 67 counties and actually providing training to all indicating a willingness to receive same by 12 months following entry of the Consent Decree.

The ADMH Commissioner provided training to state-wide conferences of judges in June 2017, and July 2017.  ADMH officials also provided training to judges in Montgomery County in October 2017, in Jefferson County in December 2017, and to the Alabama Office of the Courts' Judges' Conference in July 2018.  Further, as of Monitoring Period April 25, 2018 – July 31, 2018,

the ADMH Commissioner had also offered to provide training to a statewide organization of Alabama sheriffs, and was working with the sheriff's association to coordinate same.

The ADMH Commissioner provided training to attorneys in Madison County during August 2018.  In October 2018, the ADMH Commissioner provided training to judges in Montgomery County.  The ADMH Commissioner has achieved Substantial Compliance with the obligation to offer training to Alabama court personnel.  The ADMH Commissioner also offered training to the Montgomery County Sheriff in August 2018.  It is the understanding of the Monitor that ADMH officials are still working with a statewide organization of Alabama sheriffs to plan and hold a training, as discussed in the previous Monitoring Report.  The ADMH Commissioner's offer and efforts to provide the training constitutes Substantial Compliance with the Consent Decree.

The ADMH Commissioner provided training to circuit judges in Jefferson County during November 2018. In December 2018, the ADMH Commissioner provided training to attorneys in Montgomery County and to judges in St. Clair County. The ADMH Commissioner has achieved Substantial Compliance with the obligation to offer training to Alabama court personnel.  The ADMH Commissioner also offered training to the Montgomery County Sheriff in January 2019. *See* Exhibits A, at 9; Exhibit B, at 10; Exhibit C, at 9.

**Defendant's Response to I.C.1 (Court Personnel and Sheriffs)**

The ADMH Commissioner agrees that she complied with the above paragraph and the Defendant substantially complied with all training required during the first 12 months of the Consent Decree.

**2.  Attorneys Representing Persons Affected by ADMH-Connected Orders**

By 12 months following entry of the Consent Decree, the ADMH Commissioner shall distribute to each Alabama circuit court a publication (the "Section VI.3.B Publication"), mutually

11

agreed upon between the ADMH Commissioner and Plaintiffs' Counsel, for dissemination to attorneys representing persons ordered to receive Outpatient Mental Evaluations, Inpatient Mental Evaluations, and Competency Restoration Treatment.  ECF No. 94 at 20 (Section VI.3.B).  For purposes of determining the ADMH Commissioner's Substantial Compliance with the training requirement applicable to attorneys representing persons affected by ADMH-connected orders, the ADMH Commissioner will be found to have substantially complied with this training obligation by (1) developing the Section VI.3.B Publication, (2) obtaining Plaintiffs' counsel's agreement to same, (3) and disseminating the Section VI.3.B. Publication to each of Alabama's circuit courts for distribution to relevant attorneys in that circuit.

On March 5, 2018, the ADMH Commissioner disseminated, through the Administrative Office of the Courts, the Notice of Entry of Consent Decree jointly drafted by the Parties and approved by the Court, to all judges and circuit clerks in Alabama's Circuit and District Courts with instructions to post the Notice of Entry of Consent Decree for public viewing for three years and to maintain copies of same for reference for the same period.  The ADMH Commissioner has substantially complied with the requirement to inform defense counsel for persons affected by ADMH-connected orders.

### Defendant's Response to I.C.2 (Attorneys Representing Persons Affected by ADMH-Connected Orders)

The ADMH Commissioner agrees that she has substantially complied with all requirements under the Consent Decree by publication or notice to all attorneys representing persons affected by ADMH Connected Orders.

### 3.  Members of the Alabama State Bar

The Consent Decree requires the ADMH Commissioner, within 12 months of entry of the Consent Decree, to distribute a letter or email to all members of the Alabama State Bar enclosing

the publication defined in Section VI.3.B.  The Consent Decree further requires the ADMH Commissioner to make reasonable efforts to disseminate the specified publication to members of the criminal defense bar through electronic mail and listservs.  Beginning in calendar year 2017, and for two years thereafter, the ADMH Commissioner must also offer annual training to members of the Alabama State Bar regarding the timelines for the provision of Outpatient Mental Evaluations, Inpatient Mental Evaluations, and Competency Restoration Treatment specified by the Consent Decree and the ADMH Commissioner's duty to comply with same.  As described more fully in Section I.E. below, a copy of the Notice of Entry of Consent Decree, the Final Settlement Approval Order, and the Consent Decree is disseminated to members of the Alabama Criminal Defense Lawyers Association monthly through its listserv.

Both Parties communicated with representatives of the Alabama State Bar to explore means of disseminating the information appropriate for the Section VI.3.B publication broadly to members of the state bar.  After extended discussions, the state bar agreed to include material relevant to the Consent Decree, including the Notice of Entry of Consent Decree, the document jointly drafted by the Parties and approved by the Court, and a copy of the Consent Decree in The Scoop, a publication sent to all members of the Alabama State Bar.  The relevant notice was disseminated in The Scoop to all members of the Alabama State Bar on October 18, 2018.  The ADMH Commissioner has substantially complied with her obligation to provide information concerning the Consent Decree to members of the Alabama State Bar.

### Defendant's Response to I.C.3 (<u>Members of the Alabama State Bar</u>)

The ADMH Commissioner agrees with Plaintiffs that she has substantially complied with the above paragraph by disseminating proper notice to all members of the Alabama State Bar during 2018.

D.    **Reporting and Admissions Pursuant to Emergency Treatment Protocol**

During the initial 12 months following entry of the Consent Decree, 23 people believed to be suicidal or otherwise in need of emergency treatment were referred for evaluation pursuant to the Emergency Treatment Protocol (the "ETP") set forth in Section XV of the Consent Decree. ECF No. 94, at 30-33; *see also* Exhibits A, at 10; Exhibit B, at 10, 13; Exhibit C, at 11-12.  Each of the people referred pursuant to the ETP were provided an in-person evaluation by a clinician, and 9 of the persons evaluated were admitted into Taylor Hardin for expedited treatment.[4]  The remaining 14 persons referred for evaluation were determined not to require emergency treatment, although in several instances arrangements were made to provide pharmacological or other appropriate mental health interventions in the jail setting.

During Monitoring Period April 25, 2018 – July 31, 2018, the ADMH Commissioner regularly provided the Monitor with notice of class members' referral for evaluation under the ETP. Further, for the seven (7) class members referred for evaluation during that Monitoring Period, the ADMH Designee arranged for their evaluation within the four-business-day timeframe dictated by the Consent Decree, and for the four (4) individuals deemed in need of emergency treatment, such treatment was arranged within seven (7) days of the evaluation.  However, in terms of data submission, ADMH officials were significantly less rigorous in providing the Monitor with timely reports of the bases upon which clinicians determined that the three (3) class members not referred for emergency treatment did not warrant same.  *See* Exhibit A, at 9-10, 12.

---

[4] At present, however, the Monitor has insufficient information to determine whether four of the men referred for evaluation under the ETP during the current monitoring period (November 1, 2018 – January 31, 2019) to determine whether they were timely evaluated and/or admitted, as appropriate.

During Monitoring Period August 1, 2018 – November 30, 2018, the ADMH Commissioner timely provided notice of four (4) male class members' referral for evaluation under the ETP. However, ADMH officials failed to timely provide notice of the bases on which clinicians determined that those class members either did or did not warrant emergency treatment. Further, at least one class member was not evaluated until six (6) days after the ADMH Designee was contacted about his condition, which does not comply with the four (4) business day timeframe specified in the Consent Decree. That particular class member was then not admitted to Taylor Hardin until roughly two-and-a-half weeks after his evaluation—well outside of the seven (7) day timeframe specified by the Consent Decree. Additionally, the information with which ADMH officials provided the Monitor was so limited that the Monitor was unable to determine whether other individuals needing emergency treatment were provided with same within the specified timeframes. And finally, even where ADMH officials timely identified and evaluated individuals who potentially were in need of emergency treatment, they failed to notify the Monitor of their determinations regarding same within the 48-hour timeframe for doing so. *See* Exhibit B at 10, 13.

During Monitoring Period November 1, 2018 – January 31, 2019, ADMH officials continued to, for the most part, timely provide the Monitor with notice of the referral of class members for evaluation, but still failed to timely notify the Monitor of the bases upon which clinicians determined that class members did not warrant emergency treatment. Further, although eight (8) individuals were referred for evaluation during the Monitoring Period, the Monitor only received timely notice regarding five (5) of them. Additionally, only two (2) of those individuals were verifiably evaluated within the four-business-day timeframe dictated by the Consent Decree. Finally, although ADMH officials provided the Monitor with the results of four (4) of the evaluations, the results were provided for all but one of the evaluations well outside of the 48-hour

timeframe for provision of notice.  Additionally, although two (2) of the individuals evaluated were found to be in need of emergency treatment, ADMH officials did not notify the Monitor of those individuals' admission to Taylor Hardin Secure Medical Facility.  *See* Exhibit C, at 11-12.

The Parties have worked with the Alabama State Bar, the Administrative Office of the Courts, and the Alabama Criminal Defense Lawyers Association to regularly disseminate Notice of the Consent Decree, which includes directions for invoking the ETP, the Final Settlement Approval Order (ECF No. 93), and the Consent Decree to circuit courts and members of the criminal defense bar regularly throughout the first 12 months following entry of the Consent Decree.  Class counsel has been contacted by criminal defense attorneys serving as counsel to class members on several occasions regarding the operation of the ETP and, on at least one occasion, that attorney referred a class member for evaluation under the ETP.  The Parties believe that state courts and the criminal defense bar are generally familiar with the ETP and have invoked the ETP where warranted.  The Parties are unaware of any suicide attempts by class members during the initial 12 months following entry of the Consent Decree.

### Defendants' Response to I.D. (Reporting and Admissions Pursuant to Emergency Treatment Protocol)

The Defendant agrees to some extent that all time periods were not strictly adhered to in the course of administering the Emergency Treatment Protocol.  This was due to the realities of having to pass information back and forth with third parties such as the Community Mental Health Centers, their evaluators, and jail personnel.  However, the Defendant would point out that all persons requesting services under the ETP were properly evaluated and given priority admission to Taylor Hardin where indicated clinically.  Priority admission to Taylor Hardin was not always available immediately.  While the class member may have been approved for emergency admission clinically and moved to the front of the waiting list, a bed still has to be available at Taylor Hardin to admit

16

them.  Sometimes the next available bed took longer than seven days, but they were admitted on an expedited basis to the best of Taylor Hardin's ability.

The Defendant agrees that a written basis was not always provided for a clinician's determination under the ETP.  The Defendant would point out that a written report was not required under the Consent Decree.  However, the Defendant has attempted to provide said reports once class counsel began requesting them and when the Defendant had in fact received them.  The Defendant has not always received these reports in a timely manner from evaluators but is making efforts to make sure they are consistently provided.

The Defendant asserts that the ETP has been successful at identifying mental health emergencies in the county jails and moving those affected out the jail setting in an efficient manner. The process has also prevented unnecessary line jumping.  The Defendant agrees that the parties are not aware of any suicide attempts or deaths to class members since the entry of the Consent Decree.  The Defendant believes that the ETP has been a significant contributing factor.

### E.    Ongoing Notice to Class Members and Defense Bar

Class counsel has mailed a copy of the court-approved Notice of Entry of Consent Decree, the Court's Final Settlement Approval Order, and the Consent Decree (collectively, the "Notice Packet") to class members and their defense counsel of record twice monthly during the first 12 months following entry of the Consent Decree.  Class counsel has likewise coordinated with the Alabama Criminal Defense Lawyers Association ("ACDLA") to have a copy of the Notice of Entry of Consent Decree, the Final Settlement Approval Order, and the Consent Decree disseminated to the members of the ACDLA listserv on a monthly basis during this period.  Class counsel has communicated with class members who have contacted counsel upon receiving the Notice Packet

regarding the terms of the Consent Decree, as well as with defense counsel who have likewise contacted class counsel following receipt of the Notice Packet.

**Defendants' Response to I.E. (Ongoing Notice to Class Members and Defense Bar)**

The Defendant agrees with the statements made by Plaintiffs in the above paragraph.

## II.   PARTIES' RESPONSE TO NONCOMPLIANCE

### A.   Plaintiffs' Intention to Move for a Finding of Contempt

Given the degree of the ADMH Commissioner's noncompliance with the time periods specified in the Consent Decree for the provision of court-ordered psychiatric services to class members during the first 12 months following its entry, class counsel intends to move the Court for entry of an order finding the ADMH Commissioner in contempt of the Consent Decree. Class counsel has met and conferred with counsel for the ADMH Commissioner regarding the status of the ADMH Commissioner's compliance with the terms of the Consent Decree, barriers faced by the Alabama Department of Mental Health (the "Department") in its efforts to comply with the Consent Decree, and potential remedial measures that might redress current areas of noncompliance. Despite class counsel's grave concerns regarding the ADMH Commissioner's noncompliance, and their desire for a clear remedial plan and expanded reporting of data regarding compliance and the implementation of potential remedial measures, class counsel is willing to entertain a remedial plan formulated by the ADMH Commissioner in the first instance. Class counsel's interest is in the development and implementation of a remedial plan that will materially advance the ADMH Commissioner's compliance with the Consent Decree. As such, class counsel's forthcoming motion for entry of an order of contempt will not seek the imposition of fines for contempt but the development of a remedial plan and the ADMH Commissioner's obtaining needed assistance in devising that remedial plan through a consultant.

**Defendant's Response to II.A. (Plaintiffs' Intention to Move for a Finding of Contempt)**

The ADMH Commissioner must agree that the Department is in noncompliance with certain time periods specified in the Consent Decree for court-ordered psychiatric services to class members during the first 12 months following entry of the Consent Decree. The ADMH Commissioner agrees that class counsel has met and conferred with counsel for the Commissioner concerning barriers faced by the Department in its efforts to comply with the Consent Decree. The ADMH Commissioner does not agree that it is the proper time for class counsel to move for contempt of the Consent Decree by the Commissioner.

The ADMH Commissioner contends that the proper procedure to address noncompliance is to follow the guidelines set-out in Section VII. (Dispute Resolution Process) of the Consent Decree.

"1.     During the implementation and monitoring periods of this Agreement (*see* Sections VI and VII, above), if Plaintiffs' counsel or the monitor believe that ADMH is not complying with some aspect of the Agreement, they will notify counsel for the Defendant ADMH Commissioner, as described in Sections VII.5 and VII.6 above. Defendant ADMH Commissioner, by and though ADMH, will respond as specified in Sections VII.5 and VII.6 above. Thereafter the Parties will meet and confer in good faith to resolve the issue as specified in Section VII.5 and VII.6 above.

2.     In the event that the Parties are unable to resolve any issue(s) after attempting to do so in good faith, they shall submit their dispute to the magistrate judge assigned to the case or to the district court in the event no magistrate judge is assigned. Both parties shall have the right to appeal and magistrate judge's decision to the district court for review."

19

The ADMH Commissioner believes that the parties should, at this 12 month period of the Consent Decree, follow these procedures that would resolve the issues raised by class counsel quicker and save valuable funds needed to implement all aspects of the Consent Decree.

### B.    Defendants' Remedial Planning

The ADMH Commissioner is not at this time prepared to offer class counsel a remedial plan, although through the dispute resolution process does not object to providing such a plan. Class counsel is aware of the many barriers the Commissioner has faced in meeting certain time deadlines but progress is being made in all areas. All parties are proud of the fact that the Court required an emergency protocol that has essentially worked and may have saved lives, as no deaths or suicides occurred during the first year of the implementation of the Consent Decree.

### C.    Request for Status Conference

Class counsel respectfully requests that the court schedule a status conference with the Parties to address a briefing schedule for Plaintiffs' motion for a finding of contempt and the dispute resolution procedures incorporated into the Consent Decree.

### Defendant's Response to II.C. (Request for Status Conference)

The ADMH Commissioner does not object to the court scheduling a status conference but objects to a briefing schedule for a filing of contempt. The Defendant desires that the court consider the dispute resolutions procedure set-out in the Consent Decree, if it deems necessary.

Dated: January 25, 2019               Respectfully submitted,

/s/ M. Geron Gadd
M. Geron Gadd (ASB-0601-J98S)
ALABAMA DISABILITIES ADVOCACY PROGRAM
400 South Union Street, Suite 280
Montgomery, AL 36104
Telephone:  (334) 240-0994
Facsimile:   (334) 240-0996
Email:  mggadd@adap.ua.edu

William Van Der Pol, Jr. (ASB-2112-114F)
Lonnie J. Williams (ASB-2866-I35W)
Shandra N. Monterastelli (ASB-1016-N00Q)
ALABAMA DISABILITIES ADVOCACY PROGRAM
500 Martha Parham West
Box 870395
Tuscaloosa, AL 35487-0395
Telephone:  (205) 348-4928
Facsimile:   (205) 348-3909
Email:  wvanderpoljr@adap.ua.edu
         lwilliams@adap.ua.edu
         smonterastelli@adap.ua.edu

*Attorneys for Plaintiffs Demontray Hunter, Russell D. Senn,
and Travis S. Parks, Vandarius S. Darnell, Frank White, Jr.,
Marcus Jackson, Timothy D. Mount, and Henry P. McGhee
and Plaintiff Alabama Disabilities Advocacy Program*

Henry F. (Hank) Sherrod III (ASB-1200-D63H)
HENRY F. SHERROD III, P.C.
119 South Court Street
Florence, AL 35630
Telephone:  (256) 764-4141
Facsimile:   (877) 864-0802
Email:  hank@alcivilrights.com

Randall C. Marshall (ASB-3023-A56M)
ACLU OF ALABAMA FOUNDATION
P.O. Box 6179
Montgomery, AL 36106-0179
Telephone:  (334) 420-1741
Facsimile:   (334) 269-5666
rmarshall@aclualabama.org

*Attorneys for Plaintiffs Demontray Hunter, Russell D. Senn,
and Travis S. Parks, Vandarius S. Darnell, Frank White, Jr.,
Marcus Jackson, Timothy D. Mount, and Henry P. McGhee*

/s/ Thomas B. Klinner_____
Thomas B. Klinner
Edward C. Hixon
Ashley L. Nichols
Nancy S. Jones
ALABAMA DEPARTMENT OF MENTAL HEALTH
RSA Union Building

21

100 North Union Street
Montgomery, Alabama 36104
Tommy.Klinner@mh.alabama.gov
Eddie.Hixon@mh.alabama.gov
Ashley.Nichols@mh.alabama.gov
Nancy.Jones@mh.alabma.gov

*Attorneys for Defendant Lynn T. Beshear*

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I have caused a true and correct copy of the foregoing to be served on the counsel of record listed below by filing same with the Clerk of Court via the CM/ECF system this 25th day of January, 2019.

| | |
|---|---|
| M. Geron Gadd<br>Alabama Disabilities Advocacy Program<br>400 South Union Street, Suite 280<br>Montgomery, Alabama 36104<br>mggadd@adap.ua.edu<br><br>William Van Der Pol, Jr.<br>Lonnie Williams<br>Shandra N. Monterastelli<br>Alabama Disabilities Advocacy Program<br>500 Martha Parham West<br>Box 870395<br>Tuscaloosa, AL 35487-0395<br>wvanderpoljr@adap.ua.edu<br>lwilliams@adap.ua.edu<br>smonterastelli@adap.ua.edu | Thomas B. Klinner<br>Edward C. Hixon<br>Ashley L. Nichols<br>Nancy S. Jones<br>Alabama Department of Mental Health<br>RSA Union Building<br>100 North Union Street<br>Montgomery, Alabama 36104<br>Tommy.Klinner@mh.alabama.gov<br>Eddie.Hixon@mh.alabama.gov<br>Ashley.Nichols@mh.alabama.gov<br>Nancy.Jones@mh.alabma.gov |
| Henry F. (Hank) Sherrod III<br>Henry F. Sherrod III, P.C.<br>119 South Court Street<br>Florence, AL 35630<br>hank@alcivilrights.com | |
| Randall C. Marshall<br>ACLU of Alabama Foundation<br>P.O. Box 6179<br>Montgomery, AL 36106-0179<br>rmarshall@aclualabama.org | |

/s/ M. Geron Gadd
M. Geron Gadd (ASB-0602-J98S)
Counsel for Plaintiffs