UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DEMONTRAY HUNTER, by and through his next friend, Rena Hunter; RUSSELL D. SENN, by and through his next friend, Irene Senn; TRAVIS S. PARKS, by and through his next friend, Catherine Young; VANDARIUS S. DARNELL, by and through his next friend, Bambi Darnell; FRANK WHITE, JR., by and through his next friend, Linda White; MARCUS JACKSON, by and through his next friend Michael P. Hanle; TIMOTHY D. MOUNT, by and through his next friend, Dorothy Sullivan; HENRY P. MCGHEE, by and through his next friend, Barbara Hardy, individually and on behalf of all others similarly situated; and the ALABAMA DISABILITIES ADVOCACY PROGRAM, | CASE NO. 2:16-cv-00798-MHT CSC |
| Plaintiffs, | CLASS ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF |
| v. | |
| LYNN T. BESHEAR, in her official capacity as Commissioner of the Alabama Department of Mental Health, | |
| Defendant. | |

**JOINT STATUS REPORT ON NON-COMPLIANCE WITH CONSENT DECREE**

The named Plaintiffs as class representatives, the Alabama Disabilities Advocacy Program, and Lynn T. Beshear, Commissioner of the Alabama Department of Mental Health, hereinafter ADMH jointly submit this statement regarding current non-compliance with the Consent Decree pursuant to the Court's order on February 13, 2019. *See* Order Directing Filing of a Joint Status Report, ECF Nos. 120, 121.

1

The Parties' responses to the topics outlined in their February 14, 2019 Joint Statement on the Content of Status Report, ECF No. 121, are set forth below.  Given the importance of the topics enumerated in the Parties' February 14, 2019 Joint Statement, the discussion below adheres to the topical outline included in that document, with the topics denoted in bold below.

1.    **A detailed explanation of the reasons for the ADMH Commissioner's failure to achieve compliance with the timelines specified in the Consent Decree for the provision of (a) outpatient evaluations; (b) inpatient evaluations; and (c) admissions into Taylor Hardin for competency restoration treatment, including the following:**

      a.    **A detailed, concrete explanation of each of the barriers to compliance with the timelines for (i) outpatient mental evaluations, (ii) inpatient mental evaluations, and (iii) the provision of competency restoration treatment.**

            i.    **Outpatient mental evaluation barriers.**

              (a)    <u>ADMH Report</u>:  At the time of the filing of the lawsuit the Alabama Department of Mental Health (ADMH) had lost the two most prolific forensic evaluators due to unforeseen circumstances not controlled by ADMH. After preliminary approval by the Court, ADMH had to train additional staff to handle the volume of outpatient evaluations.   Each evaluation requires coordination with defense counsel and district attorney, collection of data and records, scanning of file contents, and transfer of files to the contracted entity. ADMH shifted the performance of evaluations to a contracted entity.  This was done to reduce ADMH's operating costs and administrative burden.   The result was developing a "from-scratch" system for administrative oversight, data sharing, HIPAA compliance, and tracking processes (software). Also, for clinical infrastructure, ADMH had to educate and assess to get additional clinical staff recruited, trained, Certified Forensic Evaluators (CFEs) certified, and set up to start providing these evaluations.

The first year additionally required building the administrative structure and clinical structure for the Forensic Outpatient Process. This meant determining how to shift the orders of

outpatient evaluations from Taylor Hardin to a contracted community contractor with ADMH Administrative oversight.  The lack of trained, willing CFEs in the State appears to have been corrected.  In 16 months, 16 CFEs have agreed to provide evaluation services through the contracted entity.  However, some of the 16 CFEs do not provide evaluations on a full-time basis. ADMH is improving this process and have recently retained the services of Tulane Medical School. Delays caused by third parties, such as defense counsel or district attorneys, was and is a large problem.  Currently, mental health records and case documents are clinically required by ADMH prior to evaluation.   These documents must be received by ADMH prior to transfer to the contracted entity for CFE assignment.  Delay of transfer results from inaction from defense counsel or district attorneys, and time lags in receiving mental health records from third-party providers. However, ADMH has recently transferred most of the files that have incomplete information to our Contractor for distribution. The pre-litigation backlog of outstanding evaluations was far out of compliance at the issuance of the Consent Decree.  While some progress has been made to stem the flow of new evaluations through judicial education, the number of evaluations completed each month are not adequate to address the backlog of evaluations.  Negotiations to gain access to evaluate some defendants have been generally cumbersome.  Third parties such as Alabama Dept. of Corrections, have required numerous meetings and written assurances in order for evaluations to take place within DOC walls. It is our belief that the problem has now been corrected.  ADMH receives a high volume of court orders for outpatient forensics evaluations spanning the sixty-seven (67) counties.  Judicial pressure and legal obligation to timely evaluate non-class members prohibits the ADMH from wholly focusing on class member evaluations.  CFEs are still equitably dividing their time between class member evaluations and non-class member evaluations.  While

class member evaluations are prioritized, a complete stay in non-class member evaluations will cause an insurmountable backlog and ultimately, legal exposure to ADMH.

(b) <u>Plaintiffs' Response</u>:  Plaintiffs respectfully submit that the more extensive material regarding class members' previous mental health diagnoses and treatment is not essential to the performance of a valid competency evaluation, but is instead germane to evaluations of class members' mental state at the time of the alleged offense ("MSO").  While Plaintiffs understand that many circuit courts order competency and MSO evaluations simultaneously, they are distinct evaluations that, for clinical reasons, are frequently not performed simultaneously.  Insofar as the collection of extensive historical diagnostic and treatment data is essential for a clinically valid MSO evaluation, the process of data collection for the purposes of the MSO evaluation should not delay the performance of a clinically valid competency evaluation. Plaintiffs recognize, however, that the ADMH Commissioner must address the problem of simultaneously ordered competency and MSO evaluations in order to achieve full compliance with the Consent Decree and relevant circuit court orders.

ii.      **Inpatient mental evaluation barriers.**

(a)   <u>ADMH Report</u>:  Upon issuance of the Consent Decree, there were approximately 70 individuals on the inpatient waitlist that had been on the waitlist greater than 45 days. Therefore, it was not possible to admit the individuals into the facility 45 days from the date of the order receipt as Taylor Hardin was already out of compliance.

ADMH added 25 additional forensic inpatient beds at THSMF in the first year of the settlement period consistent with the Consent Decree. ADMH is in substantial compliance with this requirement. ADMH has already contracted and opened an additional 16 forensic hospital like

beds in early 2019. This will alleviate wait days for inpatient evaluations. The results already indicate a reduction.

Professional and clinical staff remain difficult to recruit and all facilities have several unfilled vacancies.

Our new facilities director has already begun a national search for professional clinicians. TH treatment methodology is sometimes cumbersome and must be individualized per patient. A one-size-fits-all approach is not clinically appropriate in a hospital setting. Defendants admitted as patients to Taylor Hardin often require psychiatric stabilization before they can be adequately evaluated pursuant to a Court order. For example, it can take months sometimes to stabilize a severely mentally ill patient to the point where they can meaningfully participate in an evaluation of their mental state at the time of the offense (MSO). In such circumstances there is no way clinically to complete a valid MSO within the time periods specified by the Consent Decree.

TH must still admit non-class members, such as revocations and NGRI defendants for treatment.

(b) Plaintiffs' Response:   The ADMH Commissioner's explanation of barriers to timely inpatient mental evaluations relies heavily on the nature of the Taylor Hardin Secure Medical Facility's treatment methodology and the need to stabilize individuals prior to evaluation. Plaintiffs are concerned that despite the clinical need for individualized treatment and discharge planning, the treatment received by class members at Taylor Hardin is less individualized than the Parties would expect and that a formulaic approach to care contributes to delays in the treatment and discharge of class members, and creating a bottleneck that hinders the Department's efforts toward achieving compliance.

Moreover, Plaintiffs are concerned that the ADMH Commissioner is not adequately exploring alternatives to admission into Taylor Hardin for inpatient mental evaluations, such as other secure hospital-like settings in which evaluations can be performed, as a means of expediting inpatient evaluations. Plaintiffs are likewise concerned that the need for extended periods of time to stabilize an individual prior to evaluation is largely attributable to simultaneous competency and MSO evaluations, which are clinically complicated and result in undue delays inconsistent with the mandates of the Consent Decree.

> ### iii.   Barriers to the provision of competency restoration treatment.

(a) <u>ADMH Report</u>:  See reasons for inpatient evaluation barriers, re: admission delays, etc.

Additionally, competency restoration defendants must first be stabilized on medication (post-admission) and typically require clinical delays prior to competency restoration therapy.

Defendants are treated individually and not generally. Treatment plans may include longer periods of stabilization, medication maintenance and adjustments, and/or modification of treatment regimens based on individual response.

(b)  <u>Plaintiffs' Response</u>:  Plaintiffs are deeply concerned that the ADMH Commissioner's reliance on a one-size-fits-all solution to the provision of competency restoration treatment, namely admission into Taylor Hardin, will result in continued inability to achieve compliance. The reliance on admission into Taylor Hardin for the provision of competency restoration treatment is especially concerning given that class members who are deemed incompetent as a result of an intellectual disability will not be made competent by means of pharmacological interventions. Plaintiffs encourage Commissioner Beshear to work with a compliance consultant to explore the diversification of the forensic continuum of care through which competency restoration treatment is delivered in order to ensure that individualized care and

treatment is offered to class members based on their specific needs.  While the Plaintiffs concede that the following suggestion may indeed be a clinical determination, the Plaintiffs still respectfully submit that diversifying the forensic continuum of care to offer more individualized care and treatment to class members may be a critical part of any remedial plan designed to bring the Department into compliance.

      **b.**    **A detailed, concrete explanation of why each of the identified barriers yielded the degree of noncompliance that currently exists (i.e., why the identified barriers individually and together resulted in a rate of noncompliance that is nearly double the Year 1 benchmark).**

    (i) ADMH Report:

The delay in receiving and at times not receiving defense attorney information and/or information regarding previous treatment records and current treatment records causes a delay in transferring and assigning case files to available CFEs.

Without infrastructure already in place, building the infrastructure took time and effort that was necessary for a solid workforce and process.

The data process to track the required elements was Excel spreadsheets and a needed data infrastructure (obtaining software) was necessary to manage the data most effectively.

Without the needed information from the DA, Defense Attorney, treatment records, a forensic evaluation is based on limited to no information and reflects evaluations that may not be totally evidence based.

The length of the waiting list was extensive and set up a situation of being out of compliance from the onset.

    (ii) <u>Plaintiffs' Response</u>:  Plaintiffs lack sufficient information to assess whether the number of new evaluators, and the complement of full-time and part-time thereof, will suffice to reduce the extensive waiting times for both outpatient and inpatient evaluations.  Plaintiffs

respectfully submit that the ADMH Commissioner's engagement of a compliance consultant to conduct a systemic review of the evaluation and treatment process, and who can work with ADMH officials to assess current utilization levels, should materially advance the ADMH Commissioner's ability to hire sufficient evaluators to meet the demand for evaluations throughout the State of Alabama.  Given the limited information regarding compliance barriers available to Plaintiffs at this time, Plaintiffs reserve further comment on ADMH's noncompliance pending their review of the compliance consultant's preliminary report and remedial plan.  In addition, Plaintiffs remain concerned that the attribution of delays to the need to compile extensive material regarding class members' prior diagnostic and treatment history for purposes of MSO evaluations is unduly encumbering the performance of court-ordered psychiatric services mandated by the Consent Decree.

      c.      **Why the reported failure of class members' criminal defense attorneys to provide the ADMH Commissioner with information regarding class members' prior mental health treatment explains and/or excuses the ADMH Commissioner's noncompliance with the timelines for the provision of outpatient mental evaluations and/or inpatient mental evaluations.**

      (i)  <u>ADMH Report</u>:  The information requested from criminal defense attorneys is needed for CFE to ascertain the difficulty or inability of defendants to assist with their defense.  In addition, defense counsel has the responsibility of informing ADMH as to whether a defendant has previous treatment records which are needed for the CFEs review.  This information is needed in order for the CFE to render an opinion particularly as it related rendering an opinion for a MSO.

      While cursory evaluations may be completed without records to hasten the process, CFEs note that opinions may be different if records were timely provided prior to evaluation.  If records are produced after a cursory evaluation, then the CFE is obligated to review the records and complete an amended/supplemental evaluation. Clinically, ADMH does not presently support

degrading the value of an evaluation purely for purposes of speed, if a better quality (and more cost efficient) evaluation may be completed with records.

ADMH has utilized the process of education and training and is reaching out to all parties involved for training and education opportunities to try and improve this issue that ADMH has no control over.

(ii) <u>Plaintiffs' Response</u>:  Plaintiffs again respectfully submit that delays occasioned by the collection of extensive materials regarding class members' diagnostic and treatment history necessary for purposes of MSO evaluations are not valid explanations for delays in the provision of court-ordered psychiatric services covered by the Consent Decree.

**d.     Why the operation of sixteen community forensic beds will ensure that the ADMH Commissioner is able to achieve compliance with the Year 1 benchmark timelines for the provision of inpatient mental evaluations and competency restoration treatment.**

(i) <u>ADMH Report</u>:  For the provision of inpatient mental evaluation beds and competency restoration treatment, 25 beds were opened at Taylor Hardin. The next set of 25 beds that DMH is meeting is a Year 2 requirement and will be done in 2 programs with no more than 16 beds per facility. ADMH did meet a portion of the Year 2 Settlement agreement 1 year early with the opening of the JBS Hillcrest Forensic Secured facility. ADMH feels these type programs will assist with compliance as it provides 25 additional beds in the community that has a specific focus of inpatient mental evaluations and competency restoration. ADMH feels these programs will help decrease the waiting list of Taylor Hardin and will admit class members faster.

The Hillcrest beds will provide a diversionary path to non-class members waiting for admission to Taylor Hardin, such as NGRI revocations, allowing alternate placement of these defendants while allowing class members faster admission to Taylor Hardin.

In regard to the forensic group homes that were put in place as ordered in the settlement agreement, it is felt by ADMH that these programs assist with meeting compliance as it provides more forensic residential programs to step individuals down from Taylor Hardin who are NGRI and no longer in need of a hospital at the level of Taylor Hardin. This would allow for increased discharge resources that would assist in decreasing the Taylor Hardin Waiting List.

(ii) <u>Plaintiffs' Response</u>:  Plaintiffs again respectfully submit that the ADMH Commissioner is unlikely to achieve compliance with the Consent Decree without a more meaningful exploration of the development of the forensic continuum of care that would divert class members whose evaluations and/or competency restoration treatment could competently be provided outside of Taylor Hardin.  The ADMH Commissioner should explore the different clinical protocols for the restoration of class members with differing disabilities, i.e., intellectual disabilities versus mental illness, to ensure that the Department's resources are deployed in the most efficient manner possible.  Again, Plaintiffs respectfully submit that the exploration of same will likely be a critical part of any remedial plan.

**2.      What specific actions the ADMH Commissioner will take to achieve compliance with the Year 1 benchmark timelines specified in the Consent Decree for the provision of (a) outpatient evaluations; (b) inpatient evaluations; and (c) admissions into Taylor Hardin for competency restoration treatment within 90 days.**

**a.      Outpatient evaluations.**

(i) <u>ADMH Report</u>:  Increase Forensic Outpatient Services staff to three (3) FTEs to address the volume of court orders for forensic outpatient evaluations.

Outpatient Evaluations – increase workforce for administrative oversight and to complete the court ordered evaluations; implementation of centralized data system (software) for tracking all data elements needed to meet compliance.

Faster notification to the court of the failure of parties to submit requested information needed by the certified forensic examiner to support the CFEs opinion.

Request the Circuit Courts to require all information needed for the completion of an outpatient forensic evaluation to be submitted to the court at the time a motion is made for an outpatient forensic evaluation.

Request CFEs to complete outpatient forensic evaluations with information currently available within fourteen (14) days of receiving a court order with a note stating requested information was not provided within the timeframe in which it was requested.

Continue to petition the Circuit Courts for assistance in facilitating the outpatient evaluation process in regards to acquiring requested documents and/previous treatment records.

(ii)  Plaintiffs' Response:  Plaintiffs do not contest that the enumerated actions are necessary for the ADMH Commissioner to achieve compliance with the Consent Decree, but lack sufficient information to assess whether they are sufficient steps to achieve compliance within a reasonable period of time.  Plaintiffs reserve further comment until they have reviewed the compliance consultant's initial report regarding the barriers to the ADMH Commissioner's compliance with the Consent Decree.

> b.      **Inpatient Evaluations.**

(i)  ADMH Report:  Continued recruitment of qualified professional staff to increase output.

Defendants to see psychologist on day of admission and psychiatrist on 3rd day of admission, to allow for faster stabilization to start evaluation process and get a report to the Court faster to come into compliance.

Increase the number of risk assessments needed to release defendants to community providers, anticipated via contracted psychology staff.

11

Focus psychology staff on those defendants with court orders for evaluation, by priority and date ordered.

(ii) <u>Plaintiffs' Response</u>:  Plaintiffs do not contest that the enumerated actions are necessary for the ADMH Commissioner to achieve compliance with the Consent Decree, but lack sufficient information to assess whether they are sufficient steps to achieve compliance within a reasonable period of time.  Plaintiffs reserve further comment until they have reviewed the compliance consultant's initial report regarding the barriers to the ADMH Commissioner's compliance with the Consent Decree.

**c.     Admissions into Taylor Hardin.**

(i) <u>ADMH Report</u>:  Utilization of the community based Forensic Secured Programs will expand bed capacity for the inpatient evaluations and competency restoration treatment with anticipated shortened length of stays.

Efforts to reduce the Taylor Hardin waiting list by case-by-case analysis of defendants. Intellectual Disability (ID) defendants are identified for leave to source ID services, revocations are identified for leave to source alternate community providers; orders for inpatient treatment that may convert to civil commitments are identified.  These efforts have already reduced the waiting list from 94 to ~70 in 8 weeks.

(ii)  <u>Plaintiffs' Response</u>:  Plaintiffs do not contest that the enumerated actions are necessary for the ADMH Commissioner to achieve compliance with the Consent Decree, but lack sufficient information to assess whether they are sufficient steps to achieve compliance within a reasonable period of time.  Plaintiffs reserve further comment until they have reviewed the compliance consultant's initial report regarding the barriers to the ADMH Commissioner's compliance with the Consent Decree.

Again, Plaintiffs are deeply concerned that the ADMH Commissioner's reliance on a one-size-fits-all solution to the provision of competency restoration treatment, namely admission into Taylor Hardin, will result in continued inability to achieve compliance.  The reliance on admission into Taylor Hardin for the provision of competency restoration treatment is especially concerning given that class members who are deemed incompetent as a result of an intellectual disability will not be restored to competence, if at all, by means of pharmacological interventions.  Additionally, it is Plaintiffs' experience that, once class members are admitted into Taylor Hardin for treatment, the nature of their care and treatment is not sufficiently individualized to allow for their expedient movement through and out of Taylor Hardin, resulting in a bottleneck that increases the amount of time it takes for class members to be discharged from Taylor Hardin, and ultimately makes it more difficult for ADMH to achieve compliance.  Plaintiffs encourage Commissioner Beshear to work with a compliance consultant to explore the diversification of the forensic continuum of care through which competency restoration treatment is delivered.

3.      **What evidence confirms that the actions outlined in response to Questions 2(a), 2(b), and 2(c) are adequate to remedy the ADMH Commissioner's current noncompliance with the Year 1 benchmark timelines for the provision of court-ordered psychiatric services set forth in the Consent Decree.**

(a)  <u>ADMH Report</u>: At this point in time, the process in each area are showing an increase in the number of outpatient evaluations being assigned and completed WHEN we have the information needed from the court. The data system put in place is allowing ADMH to run and review reports to evaluate areas of need which allows for continued targeted training and education, as well as areas to strengthen. The utilization of the first Forensic Secured program (that opened on January 12, 2019) is demonstrating a reduction in the Taylor Harding waiting list. To accomplish the movement to this Forensic Secured program, ADMH implemented a utilization

review process of the waiting list and this has provided opportunity to directly interact with the courts in situations that may allow for legal diversion from ADMH for this type of care.

(b) <u>Plaintiffs' Response</u>:   Plaintiffs do not have access to the information referenced in the ADMH Commissioner's comments in Section 3.   Broadly, however, Plaintiffs respectfully submit that data management has encumbered the ADMH Commissioner's compliance effort throughout the first three monitoring periods.  *See* Monitoring Reports, ECF No. 116, Exs. A (April 25, 2018 – July 31, 2018 Monitoring Period), B (August 1, 2018 – October 31, 2018 Monitoring Period), and C (November 1, 2018 – January 25, 2019 Monitoring Period). Plaintiffs contend that a utilization review is a necessary, perhaps critical, component of the ADMH Commissioner's compliance efforts, but await information from the compliance consultant's initial report on the barriers to compliance to comment on whether the proposed actions are adequate to remedy current areas of noncompliance.

**4.     If the ADMH Commissioner agrees to engage a compliance consultant to assist her in preparing and implementing a remedial plan to comply with the Year 1 benchmark timelines in the Consent Decree for the provision of outpatient mental evaluations, inpatient mental evaluations, and competency restoration treatment, the names of three consultants proposed by the ADMH Commissioner to serve as a compliance consultant.**

(a) <u>ADMH Report</u>:   ADMH agrees to engage a consultant to assist ADMH personnel in their efforts to comply with the Consent Decree.  Below are two proposed consultants.

1. Goldratt Consulting.

2. John W. Thompson, Jr. M.D., Professor and Chair, Department of Psychiatry and Behavioral Sciences, Director, Division of Forensic Neuropsychiatry, Tulane University School of Medicine.

3.  Upon further investigation others will be considered.

14

(b) <u>Plaintiffs' Response</u>:   Plaintiffs appreciate the ADMH Commissioner's agreement to engage a compliance consultant to assist ADMH personnel in assessing the barriers to compliance with the Consent Decree and formulating a remedial plan to address same.  The Parties have discussed potential consultants and the process of selecting a compliance consultant, which is outlined more fully in Plaintiffs' response to Question 5 below.  Plaintiffs have expressed some concerns regarding potential conflict of interest involving Dr. Thompson, but remain open to exploring with ADMH ways that any such conflict can be ameliorated.  Plaintiffs have also proposed Joel Dvoskin, working alone or in conjunction with a local expert, as an alternative consultant.

5. **If the ADMH Commissioner agrees to engage a compliance consultant to assist her in preparing and implementing a remedial plan, the scope of the compliance consultant's engagement, e.g., the specific tasks and deliverables that will be included in the consultant's engagement and the expected timeline for development of the remedial plan.**

(a) <u>ADMH Report</u>:   Scope will encompass the flow of outpatient evaluations, possible direct contracted CFEs versus contracted CFEs through the contracted provider, general suggestions on efficiency and organization, workforce utilization and whether additional staff should be allocated, fact-finding and examination of barriers to evaluation, analysis of compliant states and programs.

Inpatient analysis for evaluations and restoration will encompass waitlist management, best uses for community hospital-like beds, prioritization of defendants, and efficient discharge.

The idea of hiring a consultant is to bring fresh eyes of a professional to make a possible culture change to establish ways of doing "business" i.e. Taylor Hardin holding defendants longer than necessary before rendering an evaluation to the Court. A consultant could bring new ideas to everyone involved in this process. Other states have hired consultants with success. The only

example we have firsthand knowledge of is in the state of Utah. Their forensic lawsuit is somewhat different from ours but they had a waiting list similar to ours and their consultant group, Goldratt Consulting, was able to bring them into compliance. In one of the Goldratt thesis (© QFI Consulting LLP - all rights reserved) they point out key elements of approach, such as:

    a.  Challenging key assumptions

    b.  Direction of solution

    c.  Primary objections

    d.  Balance

    e.  Strategy and tactics for implementation

The "estimated" timelines are undetermined at this time, especially if the Referral for Payment (RFP) process has to be followed by state government but hopefully engagement in 3 months and full implementation in 6 months.

If ADMH decided it can contract for services with a consultant without the bid process, then the timelines may be shorter if we contract with Dr. John W. Thompson, Jr. M.D., Professor and Chair, Department of Psychiatry and Behavioral Sciences, Director, Division of Forensic Neuropsychiatry, Tulane University School of Medicine, who has expressed his interest and availability in consulting with ADMH on system issues.

        (b) <u>Plaintiffs' Response</u>:  Plaintiffs agree that the topics outlined by ADMH are appropriate for review by the compliance consultant.  Plaintiffs submit, however, that the compliance consultant should conduct a preliminary review of ADMH's current compliance efforts and the barriers to compliance and prepare a detailed report outlining the barriers to compliance.  Following the preparation of that preliminary report, the compliance consultant should work with ADMH personnel to prepare a concrete remedial plan, with definite timeframes

16

for implementation of the specified remedial measures, which should be shared with Plaintiffs prior to implementation.    Plaintiffs submit that the engagement and work of the compliance consultant should proceed on the following schedule:

| Deadline | Activity |
|---|---|
| May 2, 2019 | ADMH engages compliance consultant selected after consultation with Plaintiffs |
| June 15, 2019 | Compliance consultant submits report outlining barriers to compliance with the Consent Decree's timelines for service provision, which is shared with Plaintiffs within 3 business days. |
| June 30, 2019 | Compliance consultant submits remedial plan to address compliance barriers outlined in consultant's initial report, which is shared with Plaintiffs within 3 business days. |
| July 3, 2019 | Parties meet and confer regarding the consultant's remedial plan |
| August 1, 2019 | Amendments to remedial plan, if any, are made and ADMH implementation of remedial plan begins |
| September 1, 2019 | Implementation of remedial plan complete |
| September 15, 2019 | ADMH provides Plaintiffs a Status Report on Compliance following implementation of remedial plan |
| October 1, 2019 | Parties meet and confer regarding status of compliance |

**6.** **If the ADMH Commissioner contends that the ADMH Commissioner can devise and implement a remedial plan that will remedy the ADMH Commissioner's current noncompliance without engaging a compliance consultant, the ADMH Commissioner should provide a detailed description of the following:**

**a.** **The specific actions that the ADMH Commissioner will take to ensure the completion of outpatient mental evaluations within 54 days of the ADMH Commissioner's receipt of a court order for same, within the date-of-receipt order specified in Section VI.1.D of the Consent Decree.**

(i) <u>ADMH Report</u>:  Notification to the court of the failure of parties to submit requested information needed by the certified forensic examiner to support the CFEs opinion.

Request the Circuit Courts to require all information needed for the completion of an outpatient forensic evaluation to be submitted to the court at the time a motion is made for an outpatient forensic evaluation.

17

Request CFEs to complete outpatient forensic evaluations with information currently available within fourteen (14) days of receiving a court order with a note stating requested information was not provided within the timeframe in which it was requested.

Continue to petition the Circuit Courts for assistance in facilitating the outpatient evaluation process in regards to acquiring requested documents and/previous treatment records.

(ii)   Plaintiffs' Response:   Plaintiffs do not contest that the enumerated actions are necessary for the ADMH Commissioner to achieve compliance with the Consent Decree, but lack sufficient information to assess whether they are sufficient steps to achieve compliance within a reasonable period of time.  Plaintiffs reserve further comment until they have reviewed the compliance consultant's initial report regarding the barriers to the ADMH Commissioner's compliance with the Consent Decree and the remedial plan to address same.

     **b.**    **The specific actions that the ADMH Commissioner will take to ensure the completion of inpatient mental evaluations within 54 days of the ADMH Commissioner's receipt of a court order for same, within the date-of-receipt order specified in Section VI.1.D of the Consent Decree.**

(i)   ADMH Report:

1)   Taylor Hardin Secure Medical has discussed contracting with Tulane Psychiatry Department to conduct inpatient evaluations.  The contractor will provide from 5-8 evaluators that are Alabama Forensic Examiners.

2)   Taylor Hardin has discussed contracting with a local evaluator to conduct Forensic examiners so that patients can be returned to jail more expeditiously.

3)   Taylor Hardin is attempting to hire an additional 3 staff psychologists to perform forensic evaluations.

4)   The Psychology department will be reorganized to accommodate the treatment aspects of the patient and the evaluations.  After the hiring process is complete, there will be 4

treatment psychologists to focus on treatment and risk management for discharge planning to open beds for new admissions and 5 examiners to conduct forensic evaluations only.  The treatment psychologists will also be forensically trained to do evaluations and will have a limited assigned in this area as well.

5)   Hire another social work staff to complete status reports to the court eliminating this assignment from psychology, as well assisting with discharge planning.

(ii) <u>Plaintiffs' Response</u>:  Plaintiffs do not contest that the enumerated actions are necessary for the ADMH Commissioner to achieve compliance with the Consent Decree, but lack sufficient information to assess whether they are sufficient steps to achieve compliance within a reasonable period of time.  Plaintiffs reserve further comment until they have reviewed the compliance consultant's initial report regarding the barriers to the ADMH Commissioner's compliance with the Consent Decree and the remedial plan to address same.

**c.   The specific actions that the ADMH Commissioner will take to ensure the admission of persons found incompetent to stand trial into Taylor Hardin or Bryce Hospital for competency restoration treatment within 54 days of the ADMH Commissioner's receipt of a court order for same, within the date-of-receipt order specified in Section VI.1.D of the Consent Decree.**

(i) <u>ADMH Report</u>:  ADMH has added (2019) 16 secured hospital-like beds for inpatient treatment, in addition to those already available at TH or Bryce.  The addition of hospital-like beds in smaller settings should result in faster admission and discharge of revocations, competency restoration defendants, and inpatient evaluations.   These three categories have significant presence on the TH waitlist, but can divert to HC for faster admission and discharge, leaving TH to take the most acute defendants, or those with medical needs in addition to psychiatric needs.

(ii)  Plaintiffs' Response:  Plaintiffs do not contest that the enumerated actions are necessary for the ADMH Commissioner to achieve compliance with the Consent Decree, but lack sufficient information to assess whether they are sufficient steps to achieve compliance within a reasonable period of time.  Plaintiffs reserve further comment until they have reviewed the compliance consultant's initial report regarding the barriers to the ADMH Commissioner's compliance with the Consent Decree and the remedial plan to address same.

d.  **Whether ADMH's existing staff has the expertise and availability to devise and undertake the actions specified in Question 6.a, 6.b, and 6.c given the other demands on their time associated with operating the agency.**

(i)  ADMH Report:  It is felt that the existing staff of ADMH do have the expertise and availability to address the areas outlined. As outlined above, the first year of this settlement agreement required the evaluation of our system and how to tackle the issues at hand, the restructuring of the process ADMH had in place to address these court orders and build a new system to address the forensic outpatient programs needed within ADMH and within the community, and the implementation of the community programs needed to address the programs from an Forensic Secured admission situation to forensic residential housing needs for discharge purposes. All these providers are engaged and in the process of either currently providing treatment or will be providing treatment by the end of year 2 as outlined in the settlement agreement.

(ii)  Plaintiffs' Response:  Absent a more detailed identification of the ADMH personnel involved in ADMH's compliance efforts, and the remedial tasks to which they will be devoted over the coming months, Plaintiffs are extremely concerned that ADMH currently lacks the capacity to devise an adequate remedial plan without external assistance.  Knowledgeable ADMH personnel are heavily engaged in systems-transformation mandated by regulations recently promulgated by the Centers for Medicare and Medicaid Services, and are likely occupied with

20

ensuring that ADMH fully complies with related provisions of the Medicaid Act.  These projects are worthy but extremely labor- and expertise-intensive.

      **e.**      **How the ADMH Commissioner will shift internal capacity in order to ensure that the staff who have been unable to undertake the steps to necessary achieve compliance with the Year 1 benchmark timelines in the Consent Decree have the capacity to implement the remedial actions outlined in response to Questions 6.a, 6.b, and 6.c above.**

      (i) <u>ADMH Report</u>:  AMDH has hired additional staff either directly or through contract. ADMH is also evaluating use of other resources needed for workforce that includes telemedicine. ADMH is evaluating our current internal practices to determine areas that can become more efficient and strengthen our clinical and administrative processes.

      Increase Forensic Outpatient Services staff to three (3) FTEs to address the volume of court orders for forensic outpatient evaluations.

      Forensic Outpatient Services will employ a Forensic Outpatient Services Coordinator/Court Liaison to assist the Forensic Outpatient Services Director manage day to day work flow, i.e. requests for information from defense counsel and district attorneys, transfer of defendant case files to JBS for assignment of a CFE and direct contact with the Circuit Courts regarding delinquent requests for information.

      Forensic Outpatient Services will employ a full-time Administrative Assistant II to assist with requests for information from defense counsel and district attorneys and compiling requested information and transferring case files to JBS for assignment to a certified forensic examiner.

      (ii) <u>Plaintiffs' Response</u>:  ADMH's engagement of the additional personnel outlined above may assist in its efforts to achieve compliance with the Consent Decree.  None of the foregoing personnel, however, will have responsibility for assessing barriers to compliance on a system-wide basis and devising the comprehensive remedial plan necessary to achieve

compliance in the near term. Plaintiffs appreciate that ADMH has agreed to engage a compliance consultant who will prepare a report on the barriers to compliance and a remedial plan, working with the new personnel identified above.

    **f.**    **If the ADMH Commissioner contends that the hiring of a facilities director who will be involved in supervising the ADMH's efforts to achieve compliance with the Consent Decree obviates the need for the engagement of a compliance consultant, what specific authority and duties will the facilities director have in connection with satisfying the Year 1 benchmark timelines.**

    (i) ADMH Report: To be determined.

    (ii) <u>Plaintiffs' Response</u>: For reasons related to internal capacity and the need for an external presence to assist with accountability-related systems within ADMH, Plaintiffs contend that an external compliance consultant is necessary. To the extent that the facilities director can work with that consultant to increase the efficiency of the assessment of barriers and development of a remedial plan, ADMH can move forward with compliance more expeditiously.

    **g.**    **The specific timelines for the implementation of a remedial plan to achieve compliance with the Year 1 benchmarks for the provision of outpatient mental evaluations, inpatient mental evaluations, and competency restoration treatment.**

    (i) <u>ADMH Report</u>:

    1) The Forensic Outpatient Services Coordinator/Court Liaison begins employment on February 4, 2019. The Forensic Outpatient Services Administrative Assistant II will begin employment on April 1, 2019.

    2) The Social Worker will be hired by the end of April 2019.

    3) We are in hopes that the Contracts with the external examiners will be in place by April 30, 2019.

    4) Psychologists are being recruited with ads in major journals and websites.

(ii) <u>Plaintiffs' Response</u>:  Plaintiffs respectfully submit that in order for ADMH to remedy its current non-compliance with the Consent Decree, it must develop and implement a remedial plan with concrete action items throughout the system and fixed timelines for their completion as set forth in Plaintiffs' Response to Question 5 above.

## CONCLUSIONS OF DEFENDANT

The barriers set-out in this status report by defendants still exist to some degree, such as defense counsel or district attorneys not furnishings prior psychiatric records or the timelines previously established for inpatient evaluations i.e. patient enters Taylor Hardin but is unstable and an evaluation cannot be completed without treatment. There may be other inpatient barriers that need to be discussed with plaintiffs. It may be necessary or even recommended that the parties consider Amendment XI, as set out in the Consent Decree for modifications. The Defendants would certainly consider using the Dispute Resolution Process VIII, as set out within the Consent Decree.

## CONCLUSIONS OF PLAINTIFFS

Plaintiffs respectfully submit that a more systematic, detailed assessment of the barriers to compliance must be undertaken in order for ADMH to develop, and implement, an adequate remedial plan that will bring ADMH into compliance within the next six (6) months.  While Plaintiffs have extended ADMH some latitude in identifying barriers and proposing responses to same, they remain concerned that class members suffer significant harm the longer ADMH remains noncompliant with the Consent Decree.  Plaintiffs contend that the engagement of a compliance consultant is an essential, initial step in devising an adequate remedial plan.  Plaintiffs further submit that absent more detailed information concerning the causes of noncompliance and remedial measures identified and implemented, discussions regarding modification of the Consent Decree are premature.

Dated: April 1, 2019                        Respectfully submitted,

                                            /s/ M. Geron Gadd
                                            M. Geron Gadd (ASB-0601-J98S)
                                            ALABAMA DISABILITIES ADVOCACY PROGRAM
                                            400 South Union Street, Suite 280
                                            Montgomery, AL 36104
                                            Telephone:  (334) 240-0994
                                            Facsimile:  (334) 240-0996
                                            Email:  mggadd@adap.ua.edu

                                            William Van Der Pol, Jr. (ASB-2112-114F)
                                            Lonnie J. Williams (ASB-2866-I35W)
                                            Shandra N. Monterastelli (ASB-1016-N00Q)
                                            ALABAMA DISABILITIES ADVOCACY PROGRAM
                                            500 Martha Parham West
                                            Box 870395
                                            Tuscaloosa, AL 35487-0395
                                            Telephone:  (205) 348-4928
                                            Facsimile:  (205) 348-3909
                                            Email:  wvanderpoljr@adap.ua.edu
                                            lwilliams@adap.ua.edu smonterastelli@adap.ua.edu

                                            *Attorneys for Plaintiffs Demontray Hunter, Russell D.
                                            Senn, and Travis S. Parks, Vandarius S. Darnell, Frank
                                            White, Jr.,  Marcus Jackson, Timothy D. Mount, and
                                            Henry P. McGhee  and Plaintiff Alabama Disabilities
                                            Advocacy Program*

                                            Henry F. (Hank) Sherrod III (ASB-1200-D63H) HENRY
                                            F. SHERROD III, P.C.
                                            119 South Court Street
                                            Florence, AL 35630
                                            Telephone:  (256) 764-4141
                                            Facsimile:  (877) 864-0802
                                            Email:  hank@alcivilrights.com
                                            Randall C. Marshall (ASB-3023-A56M)
                                            ACLU OF ALABAMA FOUNDATION
                                            P.O. Box 6179
                                            Montgomery, AL 36106
                                            Telephone:  (334) 420-1741
                                            Facsimile:  (334) 269-5666
                                            rmarshall@aclualabama.org

                                            *Attorneys for Plaintiffs Demontray Hunter, Russell D.
                                            Senn, and Travis S. Parks, Vandarius S. Darnell, Frank*

*White, Jr., Marcus Jackson, Timothy D. Mount, and
Henry P. McGhee*

/s/ Thomas B. Klinner
Thomas B. Klinner (ASB-9911-L67T)
Edward C. Hixon (ASB-5964-H65E)
Ashley L. Nichols (ASB-8291-E36N)
Nancy S. Jones (ASB-4740-S66N)
ALABAMA DEPARTMENT OF MENTAL HEALTH
RSA Union Building
100 North Union Street
Montgomery, Alabama 36104
Tommy.Klinner@mh.alabama.gov
Eddie.Hixon@mh.alabama.gov
Ashley.Nichols@mh.alabama.gov
Nancy.Jones@bryce.mh.alabma.gov

*Attorneys for Defendant Lynn T. Beshear*

## CERTIFICATE OF SERVICE

      I, the undersigned, hereby certify that I have caused a true and correct copy of the foregoing to be served on the counsel of record listed below by filing same with the Clerk of Court via the CM/ECF system this 1st day of April, 2019.

| | |
|---|---|
| M. Geron Gadd<br>Alabama Disabilities Advocacy Program<br>400 South Union Street, Suite 280<br>Montgomery, Alabama 36104<br>mggadd@adap.ua.edu<br><br>William Van Der Pol, Jr.<br>Lonnie Williams<br>Shandra N. Monterastelli<br>Alabama Disabilities Advocacy Program<br>500 Martha Parham West<br>Box 870395<br>Tuscaloosa, AL 35487-0395<br>wvanderpoljr@adap.ua.edu<br>lwilliams@adap.ua.edu<br>smonterastelli@adap.ua.edu | Thomas B. Klinner<br>Edward C. Hixon<br>Ashley L. Nichols<br>Nancy S. Jones<br>Alabama Department of Mental Health<br>RSA Union Building<br>100 North Union Street<br>Montgomery, Alabama 36104<br>Tommy.Klinner@mh.alabama.gov<br>Eddie.Hixon@mh.alabama.gov<br>Ashley.Nichols@mh.alabama.gov<br>Nancy.Jones@bryce.mh.alabma.gov |
| Henry F. (Hank) Sherrod III  Henry F. Sherrod III, P.C.<br>119 South Court Street<br>Florence, AL 35630<br>hank@alcivilrights.com | |
| Randall C. Marshall<br>ACLU of Alabama Foundation<br>P.O. Box 6179<br>Montgomery, AL 36106-0179<br>rmarshall@aclualabama.org | |

                   /s/ M. Geron Gadd
                   M. Geron Gadd (ASB-0602-J98S)
                   Counsel for Plaintiffs