UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DEMONTRAY HUNTER, by and through his next friend, Rena Hunter; RUSSELL D. SENN, by and through his next friend, Irene Senn; TRAVIS S. PARKS, by and through his next friend, Catherine Young; VANDARIUS S. DARNELL, by and through his next friend, Bambi Darnell; FRANK WHITE, JR., by and through his next friend, Linda White; MARCUS JACKSON, by and through his next friend Michael P. Hanle; TIMOTHY D. MOUNT, by and through his next friend, Dorothy Sullivan; HENRY P. MCGHEE, by and through his next friend, Barbara Hardy, individually and on behalf of all others similarly situated; and the ALABAMA DISABILITIES ADVOCACY PROGRAM,

Plaintiffs,

v.

LYNN T. BESHEAR, in her official capacity as Commissioner of the Alabama Department of Mental Health,

Defendant.

CASE NO. 2:16-cv-00798-MHT-CSC

CLASS ACTION FOR
DECLARATORY AND
INJUNCTIVE RELIEF

**SUPPLEMENT TO JOINT REPORT ON STATUS OF COMPLIANCE WITH CONSENT DECREE**

The named Plaintiffs as class representatives, the Alabama Disabilities Advocacy Program, submit on behalf of the parties this supplement to the most recent report on the status of compliance with the Consent Decree entered in this action on January 25, 2018. *See* Order Directing Status Report, ECF No. 95; Consent Decree, ECF No. 94; *see also* Joint Report on Status of Compliance with Consent Decree, ECF No. 168.

## A. Identification and Treatment of Class Members Under the Emergency Treatment Protocol

ADMH officials continued to improve on this compliance measure during the most recent Monitoring Period. Four (4) individuals were referred for possible emergency placement during the Monitoring Period. For three (3) of those individuals, ADMH officials notified ADAP the same day the request for evaluation was received; for the remaining individual, ADMH officials notified the Monitor the following day. All but one of the individuals referred were evaluated within four (4) business days, as required by the Consent Decree. The remaining individual, who was referred on January 27, refused his initial evaluation, which was scheduled for February 1, because he did not want to be evaluated via Zoom. The data provided to ADAP was unclear on whether the individual was finally evaluated in-person on February 2 or February 3, but a February 3 evaluation would have been outside of the four (4) business day mandate of the Consent Decree. ADMH officials notified ADAP of the results of two (2) of the evaluations within 48 hours; the Monitor received notification of the results of the others after three (3) and four (4) days, respectively. Two individuals were approved for emergency admission to Taylor Hardin. One was referred on January 25 and admitted on January 29. The other was referred on February 2 or February 3, but the data provided by ADMH thus far does not indicate whether he has been admitted to Taylor Hardin yet.

## B. Outpatient Mental Evaluations

The number of Outpatient Mental Evaluations conducted decreased slightly during the most recent Monitoring Period. ADMH conducted 16 Outpatient Mental Evaluations in November 2020, 26 in December 2020, and 27 in January 2021, for a total of 69 Outpatient Mental Evaluations, slightly fewer than the previous Monitoring Period.

Further, although the average wait time for evaluations generally appears to be decreasing, it remains worth noting that the continually decreasing wait times for conducting Outpatient Mental Evaluations is still likely due to the continued provision of services outside of the date-of-receipt order specified in the Consent Decree.

39 of the 69 Outpatient Mental Evaluations conducted during the Monitoring Period met the ADMH Commissioner's Substantial Compliance standard of 34 days, which represents a continued increase from the previous two Monitoring Periods. For the current Monitoring Period, about 56% of Outpatient Mental Evaluations were conducted in 34 days or less, which represents the second Monitoring Period in a row where the majority of completed Outpatient Mental Evaluations were conducted within the timeframe for Substantial Compliance.

While the timeframes for provision and submission of Outpatient Mental Evaluations appear to be progressively decreasing, ADMH continues to provide Outpatient Mental Evaluations and submit them to relevant state courts outside of the date-of-receipt order specified in the Consent Decree, and this out-of-order provision and submission of Outpatient Mental Evaluations continues to create the appearance that ADMH is closer to achieving Substantial Compliance than they truly are. Further, the provision of the above-noted 39 evaluations within the relevant 34-day timeframe still does not satisfy the Consent Decree's Substantial Compliance measure, since a substantial number of evaluations during this Monitoring Period were performed out of the date-of-receipt order specified in Section VI.1.D.i. of the Consent Decree.[1]

[1] The ADMH Commissioner provided these evaluations outside the date order prescribed by Section VI.1.D.i of the Consent Decree, which provides that "[i]ncarcerated persons whom ADMH has been ordered to evaluate or treat shall be provided services based on the date of receipt of any court order[.]" *Hunter*, 2018 U.S. Dist. LEXIS 12086, at *17. Further, the average wait time for each of the performance periods above is still well beyond the Substantial Compliance standard.

As in the previous Monitoring Reports, the Monitor will calculate compliance based on the provision and submission of Outpatient Mental Evaluations in the date-of-receipt order specified by the Consent Decree, in addition to calculating compliance based on the total provision and submission of Outpatient Mental Evaluations as a whole. For individuals who did not receive an Outpatient Mental Evaluation during the month in question, the Monitor will use for its calculations the number of days that individual had been waiting for the provision of their Outpatient Mental Evaluation at the time that the waitlist for that month was provided to the Monitor. For purposes of date-of-receipt order calculation, class members currently in the custody of the Alabama Department of Corrections (ADOC) will no longer be excluded, as forensic evaluators are now able to conduct evaluations of individuals in state prisons via telehealth.

While the ADMH Commissioner achieved an average time period for the provision of Outpatient Mental Evaluations that would otherwise constitute Substantial Compliance during November, the average time periods for provision of these reports do not satisfy the Consent Decree's Substantial Compliance measure, because the majority of those evaluations were performed out of the date-of-receipt order specified in Section VI.1.D.i of the Consent Decree. Although the parties have agreed that out-of-order provision of competency services may be acceptable where there is a valid reason for same, ADMH has failed to provide substantive reasons for the continued provision of services outside of the date-of-receipt order dictated in the Consent Decree.

Provision of Outpatient Mental Evaluations

| Performance Period | Total Days Between Date Order Received and Date of Evaluation | Total Number of Evaluations | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 11/1-30/2020 | 273 | 16 | 17.1 days | 34 days | Noncompliant |
| 12/1-31/2020 | 3,249 | 26 | 125 days | 34 days | Noncompliant |
| 1/1-31/2021 | 2,196 | 27 | 81.3 days | 34 days | Noncompliant |

Provision of Outpatient Mental Evaluations in Date-of-Receipt Order

| Performance Period | Total Days Between Date Order Received and Date of Evaluation | Total Number of Evaluations | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 11/1-30/2020 | 2,215 | 16 | 138.4 days | 34 days | Noncompliant |
| 12/1-31/2020 | 5,346 | 26 | 205.6 days | 34 days | Noncompliant |
| 1/1-31/2021 | 3,706 | 27 | 137.3 days | 34 days | Noncompliant |

The average time period for submission of reports on Outpatient Mental Evaluations remained low during the Monitoring Period. While the ADMH Commissioner achieved an average time period for the submission of reports of Outpatient Mental Evaluations that would otherwise constitute Substantial Compliance during each month of the Monitoring Period, the average time periods for submission of these reports do not satisfy the Consent Decree's Substantial Compliance measure, because the majority of the evaluations reported were performed out of the date-of-receipt order specified in Section VI.1.D.i of the Consent Decree.

Submission of Reports on Outpatient Mental Evaluations to Courts

| Performance Period | Total Days Between Date of Evaluation and Submission to Court | Total Number of Submissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 11/1-30/2020 | 507 | 24 | 21.1 days | 34 days | Noncompliant |
| 12/1-31/2020 | 463 | 16 | 29 days | 34 days | Noncompliant |
| 1/1-31/2021 | 1,099 | 40 | 27.5 days | 34 days | Noncompliant |

### C. Inpatient Mental Evaluations

The provision of Inpatient Mental Evaluations remained the same for Taylor Hardin and Hillcrest according to current data during the most recent Monitoring Period, with a total of three (3) evaluations conducted between the two facilities. According to the data provided by ADMH, there were no Inpatient Mental Evaluations conducted at Taylor Hardin during November 2020 or at Hillcrest during December 2020 or January 2021. Wait times for Inpatient Mental Evaluations remained exceptionally high at Taylor Hardin and Hillcrest, as reflected below. At this time, there is no available data for Bryce Hospital.

Provision of Inpatient Mental Evaluations at Taylor Hardin

| Performance Period | Total Days Between Date Order Received and Date of Evaluation | Total Number of Evaluations | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 11/1-30/2020 | N/A | None | N/A | 34 days | N/A |
| 12/1-31/2020 | 385 | 1 | 385 days | 34 days | Noncompliant |
| 1/1-31/2021 | 441 | 1 | 441 days | 34 days | Noncompliant |

Provision of Inpatient Mental Evaluations at Hillcrest

| Performance Period | Total Days Between Date Order Received and Date of Evaluation | Total Number of Evaluations | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 11/1-30/2020 | 363 | 1 | 363 days | 34 days | Noncompliant |
| 12/1-31/2020 | N/A | None | N/A | 34 days | N/A |
| 1/1-31/2021 | N/A | None | N/A | 34 days | N/A |

Provision of Inpatient Mental Evaluations at Bryce Hospital

| Performance Period | Total Days Between Date Order Received and Date of Evaluation | Total Number of Evaluations | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 11/1-30/2020 | No data | No data | No data | No data | No data |
| 12/1-31/2020 | No data | No data | No data | No data | No data |
| 1/1-31/2021 | No data | No data | No data | No data | No data |

A total of five (5) reports on Inpatient Mental Evaluations were submitted from Taylor Hardin and Hillcrest during the most recent Monitoring Period. According to the data provided to the Monitor, no reports were submitted from Hillcrest in December 2020 or January 2021. Although the average wait times for submission from Taylor Hardin during the most recent Monitoring Period would otherwise meet the Substantial Compliance timeframe, the majority of evaluations were provided well outside of date-of-receipt-order, as specified in Section VI.1.D.i. of the Consent Decree, and therefore do not achieve Substantial Compliance. At this time, there is no available data for Bryce Hospital.

Submission of Reports on Inpatient Mental Evaluations to Relevant Courts from Taylor Hardin

| Performance Period | Total Days Between Date of Evaluation and Submission to Court | Total Number of Submissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 11/1-30/2020 | 54 | 2 | 27 days | 34 days | Noncompliant |
| 12/1-31/2020 | 25 | 1 | 25 days | 34 days | Noncompliant |
| 1/1-31/2021 | 25 | 1 | 25 days | 34 days | Noncompliant |

Submission of Reports on Inpatient Mental Evaluations to Relevant Courts from Hillcrest Hospital

| Performance Period | Total Days Between Date of Evaluation and Submission to Court | Total Number of Submissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 11/1-30/2020 | 56 | 1 | 56 days | 34 days | Noncompliant |
| 12/1-31/2020 | N/A | None | N/A | 34 days | N/A |
| 1/1-31/2021 | N/A | None | N/A | 34 days | N/A |

Submission of Reports on Inpatient Mental Evaluations to Relevant Courts from Bryce Hospital

| Performance Period | Total Days Between Date of Evaluation and Submission to Court | Total Number of Submissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 11/1-30/2020 | No data | No data | No data | No data | No data |
| 12/1-31/2020 | No data | No data | No data | No data | No data |
| 1/1-31/2021 | No data | No data | No data | No data | No data |

## D. Competency Restoration Treatment

The ADMH Commissioner did not achieve Substantial Compliance with the timeframes for the provision of Competency Restoration Treatment for Taylor Hardin or Hillcrest during all months of the Monitoring Period. However, although wait times for admission generally remained outside of the timeframe for Substantial Compliance, the ADMH Commissioner continued to make strides toward admitting individuals to all facilities in date-of-receipt order. At this time, there is no available data for Bryce Hospital.

Taylor Hardin Secure Medical Facility

| Performance Period | Total Days Between Date Order Received and Date of Admission | Total Number of Admissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 11/1-30/2020 | 349 | 1 | 349 days | 34 days | Noncompliant |
| 12/1-31/2020 | 716 | 2 | 358 days | 34 days | Noncompliant |
| 1/1-31/2021 | 2,927 | 8 | 365.9 days | 34 days | Noncompliant |

Hillcrest Hospital

| Performance Period | Total Days Between Date Order Received and Date of Admission | Total Number of Admissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 11/1-30/2020 | 388 | 1 | 388 days | 34 days | Noncompliant |
| 12/1-31/2020 | 346 | 1 | 346 days | 34 days | Noncompliant |
| 1/1-31/2021 | 2,082 | 6 | 347 days | 34 days | Noncompliant |

Bryce Hospital

| Performance Period | Total Days Between Date Order Received and Date of Admission | Total Number of Admissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 11/1-30/2020 | No data | No data | No data | No data | No data |
| 12/1-31/2020 | No data | No data | No data | No data | No data |
| 1/1-31/2021 | No data | No data | No data | No data | No data |

### E. Hospital Forensic Beds

The Consent Decree requires that no fewer than 25 hospital forensic beds be added and operationalized between 12 and 24 months after entry of the Consent Decree.[2] The deadline for same was therefore January 24, 2020. By that time, the ADMH Commissioner had added and operationalized 15 hospital forensic beds at Hillcrest Hospital in Birmingham. It is the understanding of the Monitor that ADMH officials had been planning to open a 16-bed forensic facility in the Andalusia area, and had even broken ground on the facility, but ultimately were blocked from being able to open that facility by judicial order. The parties have had the opportunity to discuss the Department's further progress toward opening that planned 16-bed

[2] This is in addition to the 25 beds required to be added and operationalized in Year One, all of which were online at Taylor Hardin Secure Medical Facility as of July 2017. *See Hunter*, 2018 U.S. Dist. LEXIS 12086, at *18 (Section VI.2.A.i-iii).

facility in another location, and understands that the Department is currently working to secure a contract to construct a 16-bed facility in another location. Plaintiffs recognize that the ongoing COVID-19 crisis may delay the construction of this facility. At any rate, the ADMH Commissioner must still add and operationalize a further 10 beds to achieve Substantial Compliance with the requirements for Year Two. Once that facility is constructed and the Monitor has had the opportunity to inspect the beds, it is expected that the ADMH Commissioner will have achieved Substantial Compliance with same.

**F. Community Forensic Beds**

The Consent Decree requires that 32 community forensic beds be added and operationalized between 12 and 24 months after entry of the Consent Decree.[3] The data that Defendant has provided to date indicates that ADMH officials have added and operationalized a total of 32 community forensic beds since the Consent Decree was entered on January 25, 2018. It is Plaintiffs' understanding that ADMH officials had, by January 24, 2020, secured a contract for 17 community forensic beds with JBS. Due to the ongoing COVID-19 crisis, the Monitor has not had the opportunity to inspect these beds yet. However, the Monitor has begun to discuss plans to inspect those beds with ADMH officials and intends to finalize those plans in the coming months. Once the Monitor has had a chance to inspect these beds, it is expected that the ADMH Commissioner must still add and operationalize three more community forensic beds.

Dated: February 19, 2021 Respectfully submitted,

/s/Shandra N. Monterastelli
Shandra N. Monterastelli (ASB-1016-N00Q)
William Van Der Pol, Jr. (ASB-2112-114F)

[3] These 32 beds are in addition to the 20 beds that the Consent Decree required the ADMH Commissioner to add and operationalize during Year One. *See Hunter*, 2018 U.S. Dist. LEXIS 12086, at *19 (Section VI.2.B.i-iii).

Larry G. Canada (ASB-3153-N73L)
Lonnie J. Williams (ASB-2866-I35W)
ALABAMA DISABILITIES ADVOCACY PROGRAM
500 Martha Parham West
Box 870395
Tuscaloosa, AL 35487-0395
Telephone: (205) 348-4928
Facsimile: (205) 348-3909
Email: smonterastelli@adap.ua.edu
wvanderpoljr@adap.ua.edu
lcanada@adap.ua.edu
lwilliams@adap.ua.edu

*Attorneys for Plaintiffs Demontray Hunter, Russell D. Senn, and Travis S. Parks, Vandarius S. Darnell, Frank White, Jr., Marcus Jackson, Timothy D. Mount, and Henry P. McGhee and Plaintiff Alabama Disabilities Advocacy Program*

Henry F. (Hank) Sherrod III (ASB-1200-D63H)
HENRY F. SHERROD III, P.C.
119 South Court Street
Florence, AL 35630
Telephone: (256) 764-4141
Facsimile: (877) 864-0802
Email: hank@alcivilrights.com

Randall C. Marshall (ASB-3023-A56M)
ACLU OF ALABAMA FOUNDATION
P.O. Box 6179
Montgomery, AL 36106-0179
Telephone: (334) 420-1741
Facsimile: (334) 269-5666
rmarshall@aclualabama.org

*Attorneys for Plaintiffs Demontray Hunter, Russell D. Senn, and Travis S. Parks, Vandarius S. Darnell, Frank White, Jr., Marcus Jackson, Timothy D. Mount, and Henry P. McGhee*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I have caused a true and correct copy of the foregoing to be served on the counsel of record listed below by filing same with the Clerk of Court this 19th day of February, 2021.

| | |
|---|---|
| Shandra N. Monterastelli<br>William Van Der Pol, Jr.<br>Larry G. Canada<br>Lonnie J. Williams<br>Alabama Disabilities Advocacy Program<br>500 Martha Parham West<br>Box 870395<br>Tuscaloosa, AL 35487-0395<br>smonterastelli@adap.ua.edu<br>wvanderpoljr@adap.ua.edu<br>lcanada@adap.ua.edu<br>lwilliams@adap.ua.edu | Thomas B. Klinner<br>Edward C. Hixon<br>Ashley L. Nichols<br>Nancy S. Jones<br>Alabama Department of Mental Health<br>RSA Union Building<br>100 North Union Street<br>Montgomery, Alabama 36104<br>Tommy.Klinner@mh.alabama.gov<br>Eddie.Hixon@mh.alabama.gov<br>Ashley.Nichols@mh.alabama.gov<br>Nancy.Jones@mh.alabama.gov |
| Henry F. (Hank) Sherrod III<br>Henry F. Sherrod III, P.C.<br>119 South Court Street<br>Florence, AL 35630<br>hank@alcivilrights.com | |
| Tish G. Faulks<br>ACLU of Alabama Foundation<br>P.O. Box 6179<br>Montgomery, AL 36106-0179<br>tgfaulks@aclualabama.org | |

/s/Shandra N. Monterastelli____________
Shandra N. Monterastelli (ASB-1016-N00Q)
*Counsel for Plaintiffs*