IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| DEMONTRAY HUNTER, et al., ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | CIVIL ACTION NO. |
|     v. ) | 2:16cv798-MHT |
| ) | (WO) |
| KIMBERLY G. BOSWELL, in ) | |
| her official capacity as ) | |
| the Commissioner of the ) | |
| Alabama Department of ) | |
| Mental Health, ) | |
| ) | |
|     Defendant. ) | |

## QUESTIONS FROM THE COURT

This long-running class action litigation addresses delays in the process by which pretrial detainees in the Alabama state court system have their competency to stand trial evaluated and receive competency restoration treatment when found incompetent. The court would like to confirm whether its understanding of this overall process is accurate, and the court would like the parties to answer certain questions that the court has regarding

a proposal that the parties presented at the status conference held in this case on February 22, 2021.

Alabama Rule of Criminal Procedure 11 governs competency evaluations and commitments for treatment. When a detainee is facing trial, the defendant, either attorney, or the court on its own motion may request an evaluation of the defendant's competency to stand trial. *See* Ala. R. Crim. P. 11.2(a)(1). If the defendant has indicated that he or she intends to pursue an insanity defense, any of these parties may also request an examination of the defendant's sanity at the time of the offense. *See* Ala. R. Crim. P. 11.2(a)(2). Sanity evaluations are not the subject of this case, but they are relevant to the parties' proposal that the court will return to below.

Once a competency evaluation is requested, the detainee may either return to jail and have the evaluation done there, or may be sent to one of the state hospitals for the evaluation. Evaluations done in the jails are called "outpatient evaluations" by the consent

decree in this case, while evaluations in the hospitals are called "inpatient evaluations."  In this case, plaintiff the Alabama Disabilities Advocacy Program (ADAP) monitors the amount of time it takes for a pretrial detainee to receive an outpatient or inpatient competency evaluation once the evaluation is requested.  This is reflected in the data from the compliance reports showing the timelines for the provision of outpatient and inpatient mental evaluations.  *See, e.g.*, January 2021 Joint Report on Status of Compliance (Doc. 168) at 2, 10.

After the competency evaluation has been completed, the next step is for an evaluation report to be finished and submitted to the state court that requested the evaluation.  ADAP monitors the amount of time that passes between when an evaluation is finished and when the report from that evaluation is submitted to the state court.  This is reflected in the data from the compliance reports showing the timelines for the submission of reports for outpatient and inpatient mental evaluations.  *See, e.g.*, *id.* at 6, 15.

3

When the state court receives the evaluation report, the next step is for that court to schedule a hearing on the report and decide whether the defendant is in fact incompetent to stand trial.  The Alabama Rules of Criminal Procedure require this hearing to be held within 42 days of the state court's receipt of the evaluation report.  *See* Ala. R. Crim. P. 11.6(a).  But ADAP does not monitor how long this part of the process takes, so the parties do not know how often state judges adhere to that timeline.

At this hearing, the court may find the defendant either competent or incompetent to stand trial.  If the defendant is found competent at the hearing, the criminal case proceeds and ADAP's monitoring stops for that detainee.  If the defendant is found incompetent at the hearing, and the court finds that the defendant doesn't pose a risk of harm to themselves or others, the defendant must be released for outpatient treatment, and in some cases the charges must be dismissed.  ADAP's monitoring ends then for those defendants too.

4

But if the defendant is found incompetent at the hearing, and the court also finds that the defendant poses a risk of harm to themselves or others, the court will order the defendant committed to ADMH custody for competency restoration treatment.  ADAP monitors the amount of time that passes from when the court orders a defendant committed for competency restoration treatment to when the defendant is admitted to a state hospital for treatment.  This is reflected in the data from the compliance reports showing the timelines for competency restoration treatment.  *See, e.g.*, January 2021 Joint Report on Status of Compliance (Doc. 168) at 20.

At some point after the defendant's admission to a hospital for competency restoration treatment, the hospital or another party may inform the state court that the defendant has now become competent to proceed.  *See* Ala. R. Crim. P. 11.7(a).  At that point, the state court will schedule another hearing on the defendant's competency and will proceed with the criminal case if the court finds the defendant competent.  ADAP does not

monitor the amount of time it takes for a defendant to be brought to competency after his or her hospital admission, nor does it monitor the amount of time it takes state courts to hold competency hearings after being notified that defendants are competent.

During the February 22, 2021, status conference in this case, the parties raised a concern that competency evaluations are not being completed until the defendant is ready to have a sanity evaluation done as well.  Sanity evaluations are much more complicated and require the defendant to be sane enough to take part in the evaluation, so combining these two evaluations may delay the competency evaluation or even require psychiatric treatment of the defendant before either evaluation can take place.  The parties therefore proposed "de-coupling" sanity and competency evaluations to address these delays.

In light of all of the above, the court has the following questions for the parties:

(1) Is the court's summary above of the competency evaluation and restoration process and the data monitored by ADAP accurate?

(2) What do the parties mean when they say that competency and sanity evaluations are being done at the same time?  Does this require pretrial detainees to undergo psychiatric treatment before they receive a competency evaluation?  How is such treatment conducted without a finding of incompetence?

(3) How exactly would the parties' proposed "de-coupling" work?  Would it split up the evaluations themselves, the reports of the evaluations, the provision of those reports to the state courts, or all of the above?

It is, therefore, ORDERED that a status conference to discuss these questions is set for February 26, 2021, at 10:00 a.m.  The courtroom deputy is to arrange for the conference to be conducted by videoconferencing.

DONE, this the 25th day of February, 2021.

                                   /s/ Myron H. Thompson
                                **UNITED STATES DISTRICT JUDGE**