UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DEMONTRAY HUNTER, by and through his next friend, Rena Hunter; RUSSELL D. SENN, by and through his next friend, Irene Senn; TRAVIS S. PARKS, by and through his next friend, Catherine Young; VANDARIUS S. DARNELL, by and through his next friend, Bambi Darnell; FRANK WHITE, JR., by and through his next friend, Linda White; MARCUS JACKSON, by and through his next friend Michael P. Hanle; TIMOTHY D. MOUNT, by and through his next friend, Dorothy Sullivan; HENRY P. MCGHEE, by and through his next friend, Barbara Hardy, individually and on behalf of all others similarly situated; and the ALABAMA DISABILITIES ADVOCACY PROGRAM,<br><br>Plaintiffs,<br><br>v.<br><br>KIMBERLY G. BOSWELL, in her official capacity as Commissioner of the Alabama Department of Mental Health,<br><br>Defendant. | CASE NO. 2:16-cv-00798-MHT-CSC<br><br>CLASS ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF |

**PLAINTIFFS' FILING OF SUPPLEMENTAL DATA REFLECTING COMPLIANCE WITH CONSENT DECREE**

The named Plaintiffs as class representatives and the Alabama Disabilities Advocacy Program submit this report reflecting the most recent status of compliance with the Consent Decree entered in this action on January 25, 2018. *See* Consent Decree, ECF No. 94. This report encompasses all new data that Defendant has provided to Plaintiffs since the last supplemental data filing on May 28, 2021. *See* Plaintiffs' Filing of Supplemental Data Reflecting Compliance with Consent Decree, ECF No. 190. All of the compliance measures referenced below must adhere to a timeframe of 34

days or less for completion of the relevant service. Thus, where evaluations are ordered, they must be completed within 34 days of Defendant's receipt of the order directing same. The reports on those evaluations must be submitted to the relevant circuit court within another 34 days (for a total of 68 days from the entry of the order to when the report on the evaluation must be submitted). Where a class member is ordered to be admitted to Taylor Hardin, Hillcrest, or Bryce for Competency Restoration Treatment, he or she must be admitted to the facility within 34 days following Defendant's receipt of the order directing same. For identification and treatment of class members under the Emergency Treatment Protocol (ETP), the following time-related requirements are in place:

1. ADMH officials must provide notice to Monitor of request for evaluation for emergency treatment within 48 hours of receiving same;
2. ADMH officials must ascertain whether the person referred for an evaluation for emergency treatment is a class member, and if the individual is a class member, arrange for a clinical professional to visit the class member to conduct an assessment of the class member's need for emergency treatment within 4 business days of the ADMH Designee's receipt of the notice of the class member's need for emergency treatment;
3. ADMH officials must arrange for the provision of emergency treatment to class members who, following an emergency evaluation for treatment, are deemed by a clinical professional to need early admission into a facility for purposes of receiving a court-ordered inpatient mental evaluation or competency restoration treatment within 7 days of the clinical professional's in-person visit;

4. ADMH officials must advise the Monitor of the clinical professional's determination regarding the class member's need for emergency treatment within 48 hours of the professional's in-person visit with the class member;
5. ADMH officials must advise the Monitor of any refusal by county jail officials to ADMH officials seeking access to a person referred for an evaluation for emergency treatment within 24 hours; and
6. ADMH officials must forward notice of an incarcerated criminal defendant believed to be suicidal to the Monitor within 24 hours.

## I. Identification and Treatment of Class Members Under the Emergency Treatment Protocol

One individual has been referred for treatment under the Emergency Treatment Protocol since the last supplemental filing in this matter. Sometime during the week of June 21 (a date was not provided to class counsel), a circuit judge contacted the Department for emergency placement of a defendant, but, as the defendant was not under an inpatient commitment order at the time, the Department determined he was not a class member (without notifying class counsel) and did not move forward with emergency placement. This is a questionable determination, as the determination for whether a criminal defendant is a class member is not *just* whether they are under an inpatient commitment order, but whether they are detained in a city or county jail and awaiting any competency services. Nevertheless, an Alacourt review of this individual's matter (complicated by the fact that the Department provided class counsel with the wrong name) revealed that the circuit judge ordered the defendant to undergo an *outpatient* evaluation on June 16. The defendant therefore became a class member on June 16. An order for an inpatient evaluation followed on June 25, at which time the defendant had been a class member for nine (9) days.

Class counsel (who also serves as the Monitor in this matter) was not advised of this situation until June 28. At some point during the week of June 21 (again, a date was not provided to class counsel), the individual was evaluated by the local Community Mental Health Center and determined to meet the criteria for emergency placement. He was admitted to Taylor Hardin on June 30. Without having been provided actual dates for when the notification to the Department and the defendant's evaluation took place, it is impossible for Plaintiffs to say whether Defendant complied with the requirements of the ETP, although Defendant clearly did *not* comply with the requirement that class counsel be notified at the time the Department receives a request for evaluation for possible emergency treatment.

## II. Outpatient Mental Evaluations

Defendant provided Plaintiffs with data on Outpatient Mental Evaluations as conducted and submitted for the month of May 2021 at the beginning of June as part of Defendant's routine monthly transmission to Plaintiffs of some limited monitoring data. Defendant has not provided Plaintiffs with any data on Outpatient Mental Evaluations for June 2021. Despite Defendant's knowledge that the parties are now expected to submit supplemental data three days prior to each status conference in this matter pursuant to the Court's Order of June 7, 2021, *see* ECF No. 191, as well as a request that Plaintiffs made to Defendant for data on Inpatient Mental Evaluations via email on June 30, 2021, which included an acknowledgement that Plaintiffs were already expecting the June 2021 data, Defendant did not provide Plaintiffs with data from the month of June 2021 reflecting the provision or submission of Outpatient Mental Evaluations before the due date of this report. Because Defendant has failed to provide Plaintiffs with the necessary data to calculate the current status of Defendant's compliance with the Consent Decree with regard to the

provision and submission of Outpatient Mental Evaluations, Plaintiffs are unable to advise the Court of same, with the exception of compliance for the month of May 2021.

The number of Outpatient Mental Evaluations performed remained relatively consistent with previous months during the month of May 2021, where 29 evaluations were conducted. Further, although the average wait time for evaluations generally appears to be decreasing, it remains worth noting that the continually decreasing wait times for conducting Outpatient Mental Evaluations is still likely due to the continued provision of services outside of the date-of-receipt order specified in the Consent Decree.

12 of the 29 Outpatient Mental Evaluations conducted during May 2021 met the ADMH Commissioner's Substantial Compliance standard of 34 days, which represents a slight decrease from the previous Monitoring Period, or about 41%. While the timeframes for provision and submission of Outpatient Mental Evaluations appear to be generally decreasing, ADMH continues to provide Outpatient Mental Evaluations and submit them to relevant state courts outside of the date-of-receipt order specified in the Consent Decree, and this out-of-order provision and submission of Outpatient Mental Evaluations continues to create the appearance that ADMH is closer to achieving Substantial Compliance than they truly are. Further, the provision of the above-noted 12 evaluations within the relevant 34-day timeframe still does not satisfy the Consent Decree's Substantial Compliance measure, since a substantial number of evaluations during this Monitoring Period were performed out of the date-of-receipt order specified in Section VI.1.D.i. of the Consent Decree, and sufficient reasons for same were not provided in most cases.[1] Although

[1] The ADMH Commissioner provided these evaluations outside the date order prescribed by Section VI.1.D.i of the Consent Decree, which provides that "[i]ncarcerated persons whom ADMH has been ordered to evaluate or treat shall be provided services based on the date of receipt of any court order[.]" *Hunter v. Beshear*, 2018 U.S. Dist. LEXIS 12086, at *17. Further, the average wait

the parties have agreed that out-of-order provision of competency services may be acceptable where there is a valid reason for same, ADMH has mostly failed to provide substantive reasons for the continued provision of services outside of the date-of-receipt order dictated in the Consent Decree.

As in previous reports, compliance was calculated based on the provision and submission of Outpatient Mental Evaluations in the date-of-receipt order specified by the Consent Decree, in addition to calculating compliance based on the total provision and submission of Outpatient Mental Evaluations as a whole. For individuals who did not receive an Outpatient Mental Evaluation during the month in question, the Monitor will use for its calculations the number of days that individual had been waiting for the provision of their Outpatient Mental Evaluation at the time that the waitlist for that month was provided to the Monitor. For purposes of date-of-receipt order calculation, class members currently in the custody of the Alabama Department of Corrections (ADOC) will no longer be excluded, as forensic evaluators are now able to do evaluations of individuals in state prisons via telehealth.

**Provision of Outpatient Mental Evaluations**

| Performance Period | Total Days Between Date Order Received and Date of Evaluation | Total Number of Evaluations | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 5/1-31/2021 | 1,886 | 29 | 65 days | 34 days | Noncompliant |
| 6/1-30/2021 | No data | No data | No data | No data | No data |

time for each of the performance periods above is still well beyond the Substantial Compliance standard.

**Provision of Outpatient Mental Evaluations in Date-of-Receipt Order**

| Performance Period | Total Days Between Date Order Received and Date of Evaluation | Total Number of Evaluations | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 5/1-31/2021 | 2,363 | 29 | 81.5 days | 34 days | Noncompliant |
| 6/1-30/2021 | No data | No data | No data | No data | No data |

The average time periods for submission of reports on Outpatient Mental Evaluations remained low during May 2021. While the ADMH Commissioner achieved an average time period for the submission of reports of Outpatient Mental Evaluations that would otherwise constitute Substantial Compliance during May, the average time periods for submission of these reports do not satisfy the Consent Decree's Substantial Compliance measure, because the majority of the evaluations reported were performed out of the date-of-receipt order specified in Section VI.1.D.i of the Consent Decree and sufficient narrative reasons for same were not given in most cases.

**Submission of Reports on Outpatient Mental Evaluations to Courts**

| Performance Period | Total Days Between Date of Evaluation and Submission to Court | Total Number of Submissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 5/1-31/2021 | 18 | 19 | 11.6 days | 34 days | Noncompliant |
| 6/1-30/2021 | No data | No data | No data | No data | No data |

## III. Inpatient Mental Evaluations

Despite Defendant's knowledge that the parties are now expected to submit supplemental data three days prior to each status conference in this matter pursuant to the Court's Order of June 7, 2021, *see* ECF No. 191, as well as a request that Plaintiffs made to Defendant for data on Inpatient Mental Evaluations via email on June 30, 2021, Defendant provided Plaintiffs only with waiting lists for admission to Bryce and Taylor Hardin on the afternoon this filing was due. Because Defendant has failed to provide Plaintiffs with the necessary data to calculate the current status of

Defendant's compliance with the Consent Decree with regard to the provision and submission of Inpatient Mental Evaluations, Plaintiffs are unable to advise the Court of same.

**Provision of Inpatient Mental Evaluations at Taylor Hardin**

| Performance Period | Total Days Between Date Order Received and Date of Evaluation | Total Number of Evaluations | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 5/1-31/2021 | No data | No data | No data | No data | No data |
| 6/1-30/2021 | No data | No data | No data | No data | No data |

**Provision of Inpatient Mental Evaluations at Hillcrest**

| Performance Period | Total Days Between Date Order Received and Date of Evaluation | Total Number of Evaluations | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 5/1-31/2021 | No data | No data | No data | No data | No data |
| 6/1-30/2021 | No data | No data | No data | No data | No data |

**Provision of Inpatient Mental Evaluations at Bryce Hospital**

| Performance Period | Total Days Between Date Order Received and Date of Evaluation | Total Number of Evaluations | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 5/1-31/2021 | No data | No data | No data | No data | No data |
| 6/1-30/2021 | No data | No data | No data | No data | No data |

**Submission of Reports on Inpatient Mental Evaluations to Relevant Courts from Taylor Hardin**

| Performance Period | Total Days Between Date of Evaluation and Submission to Court | Total Number of Submissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 5/1-31/2021 | No data | No data | No data | No data | No data |
| 6/1-30/2021 | No data | No data | No data | No data | No data |

**Submission of Reports on Inpatient Mental Evaluations to Relevant Courts from Hillcrest Hospital**

| Performance Period | Total Days Between Date of Evaluation and Submission to Court | Total Number of Submissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 5/1-31/2021 | No data | No data | No data | No data | No data |
| 6/1-30/2021 | No data | No data | No data | No data | No data |

**Submission of Reports on Inpatient Mental Evaluations to Relevant Courts from Bryce Hospital**

| Performance Period | Total Days Between Date of Evaluation and Submission to Court | Total Number of Submissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 5/1-31/2021 | No data | No data | No data | No data | No data |
| 6/1-30/2021 | No data | No data | No data | No data | No data |

## IV. Competency Restoration Treatment

Despite Defendant's knowledge that the parties are now expected to submit supplemental data three days prior to each status conference in this matter pursuant to the Court's Order of June 7, 2021, *see* ECF No. 191, as well as a request that Plaintiffs made to Defendant for data reflecting admissions to facilities for Competency Restoration Treatment via email on June 30, 2021, Defendant provided Plaintiffs only with waiting lists for admission to Bryce and Taylor Hardin on the afternoon this filing was due, from which Plaintiffs were able to glean the status of compliance for one individual who was admitted to Bryce for CRT. Other than that, because Defendant has failed to provide Plaintiffs with the necessary data to calculate the current status of Defendant's compliance with the Consent Decree with regard to admissions to facilities for CRT, Plaintiffs are unable to advise the Court of same.

**Taylor Hardin Secure Medical Facility**

| Performance Period | Total Days Between Date Order Received and Date of Admission | Total Number of Admissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 5/1-31/2021 | No data | No data | No data | No data | No data |
| 6/1-30/2021 | No data | No data | No data | No data | No data |

**Hillcrest Hospital**

| Performance Period | Total Days Between Date Order Received and Date of Admission | Total Number of Admissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 5/1-31/2021 | No data | No data | No data | No data | No data |
| 6/1-30/2021 | No data | No data | No data | No data | No data |

**Bryce Hospital**

| Performance Period | Total Days Between Date Order Received and Date of Admission | Total Number of Admissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 5/1-31/2021 | No data | No data | No data | No data | No data |
| 6/1-30/2021 | 45 | 1 | 45 days | 34 days | Noncompliant |

## V. Hospital Forensic Beds

The Consent Decree requires that no fewer than 25 hospital forensic beds be added and operationalized between 12 and 24 months after entry of the Consent Decree.[2] The deadline for same was therefore January 24, 2020. By that time, the ADMH Commissioner had added and operationalized 15 hospital forensic beds at Hillcrest Hospital in Birmingham. It is the understanding of the Monitor that ADMH officials had been planning to open a 16-bed forensic

[2] This is in addition to the 25 beds required to be added and operationalized in Year One, all of which were online at Taylor Hardin Secure Medical Facility as of July 2017. *See Hunter*, 2018 U.S. Dist. LEXIS 12086, at *18 (Section VI.2.A.i-iii).

facility in the Andalusia area, and had even broken ground on the facility, but ultimately were blocked from being able to open that facility by judicial order. The Monitor has had the opportunity to discuss the Department's further progress toward opening that planned 16-bed facility in another location, and understands that the Department is currently working to secure a contract to construct a 16-bed facility in another location. Plaintiffs recognize that the COVID-19 crisis may delay the construction of this facility. Plaintiffs also understand that, in the meantime, the Department has brought online ten (10) temporary beds at Hillcrest Hospital in order to satisfy the terms of the Consent Decree. Due to the COVID-19 crisis, the Monitor has not had the opportunity to inspect these beds yet. However, with COVID restrictions lifting and things returning to normal, Plaintiffs intend to finalize plans to do so in the coming months. Once the Monitor has had the opportunity to inspect those beds, it is expected that the ADMH Commissioner will have achieved Substantial Compliance with the terms of the Consent Decree.

## VI. Community Forensic Beds

The Consent Decree requires that 32 community forensic beds be added and operationalized between 12 and 24 months after entry of the Consent Decree.[3] The data that ADMH officials provided to the Monitor to date indicates that ADMH officials have added and operationalized a total of 32 community forensic beds since the Consent Decree was entered on January 25, 2018. It is the understanding of the Monitor that ADMH officials had, by January 24, 2020, secured a contract for 17 community forensic beds with JBS. Due to the COVID-19 crisis, the Monitor has not had the opportunity to inspect these beds yet. However, with COVID restrictions lifting and things returning to normal, Plaintiffs intend to finalize plans to do so in the coming months. Once

[3] These 32 beds are in addition to the 20 beds that the Consent Decree required the ADMH Commissioner to add and operationalize during Year One. *See Hunter*, 2018 U.S. Dist. LEXIS 12086, at *19 (Section VI.2.B.i-iii).

Plaintiffs have had a chance to inspect these beds, it is expected that the ADMH Commissioner must still add and operationalize three more community forensic beds. ADMH officials have indicated that another 20 community forensic beds were added and operationalized in 2020. Once Plaintiffs have had the opportunity to inspect those beds, it is expected that the ADMH Commissioner will have achieved Substantial Compliance with the Year Two requirement for community forensic beds.

Dated: July 6, 2021

Respectfully submitted,

/s/Shandra N. Monterastelli
Shandra N. Monterastelli (ASB-1016-N00Q)
William Van Der Pol, Jr. (ASB-2112-114F)
Larry G. Canada (ASB-3153-N73L)
Lonnie J. Williams (ASB-2866-I35W)
ALABAMA DISABILITIES ADVOCACY PROGRAM
500 Martha Parham West
Box 870395
Tuscaloosa, AL 35487-0395
Telephone: (205) 348-4928
Facsimile: (205) 348-3909
Email: smonterastelli@adap.ua.edu
wvanderpoljr@adap.ua.edu
lcanada@adap.ua.edu
lwilliams@adap.ua.edu

*Attorneys for Plaintiffs Demontray Hunter, Russell D. Senn, and Travis S. Parks, Vandarius S. Darnell, Frank White, Jr., Marcus Jackson, Timothy D. Mount, and Henry P. McGhee and Plaintiff Alabama Disabilities Advocacy Program*

Henry F. (Hank) Sherrod III (ASB-1200-D63H)
HENRY F. SHERROD III, P.C.
119 South Court Street
Florence, AL 35630
Telephone: (256) 764-4141
Facsimile: (877) 864-0802
Email: hank@alcivilrights.com

Tish G. Faulks
ACLU of Alabama Foundation

P.O. Box 6179
Montgomery, AL 36106-0179
Telephone: (334) 420-1741
Facsimile: (334) 269-5666

*Attorneys for Plaintiffs Demontray Hunter, Russell D. Senn, and Travis S. Parks, Vandarius S. Darnell, Frank White, Jr., Marcus Jackson, Timothy D. Mount, and Henry P. McGhee*

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I have caused a true and correct copy of the foregoing to be served on the counsel of record listed below by filing same with the Clerk of Court this 6th day of July, 2021.

| | |
|---|---|
| Shandra N. Monterastelli<br>William Van Der Pol, Jr.<br>Larry G. Canada<br>Lonnie J. Williams<br>Alabama Disabilities Advocacy Program<br>500 Martha Parham West<br>Box 870395<br>Tuscaloosa, AL 35487-0395<br>smonterastelli@adap.ua.edu<br>wvanderpoljr@adap.ua.edu<br>lcanada@adap.ua.edu<br>lwilliams@adap.ua.edu | Thomas B. Klinner<br>Edward C. Hixon<br>Ashley L. Nichols<br>Nancy S. Jones<br>Alabama Department of Mental Health<br>RSA Union Building<br>100 North Union Street<br>Montgomery, Alabama 36104<br>Tommy.Klinner@mh.alabama.gov<br>Eddie.Hixon@mh.alabama.gov<br>Ashley.Nichols@mh.alabama.gov<br>Nancy.Jones@mh.alabama.gov |
| Henry F. (Hank) Sherrod III<br>Henry F. Sherrod III, P.C.<br>119 South Court Street<br>Florence, AL 35630<br>hank@alcivilrights.com | |
| Tish G. Faulks<br>ACLU of Alabama Foundation<br>P.O. Box 6179<br>Montgomery, AL 36106-0179<br>tgfaulks@aclualabama.org | |

/s/Shandra N. Monterastelli
Shandra N. Monterastelli (ASB-1016-N00Q)
*Counsel for Plaintiffs*