UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DEMONTRAY HUNTER, by and through his next friend, Rena Hunter; RUSSELL D. SENN, by and through his next friend, Irene Senn; TRAVIS S. PARKS, by and through his next friend, Catherine Young; VANDARIUS S. DARNELL, by and through his next friend, Bambi Darnell; FRANK WHITE, JR., by and through his next friend, Linda White; MARCUS JACKSON, by and through his next friend Michael P. Hanle; TIMOTHY D. MOUNT, by and through his next friend, Dorothy Sullivan; HENRY P. MCGHEE, by and through his next friend, Barbara Hardy, individually and on behalf of all others similarly situated; and the ALABAMA DISABILITIES ADVOCACY PROGRAM,<br><br>Plaintiffs,<br><br>v.<br><br>KIMBERLY G. BOSWELL, in her official capacity as Commissioner of the Alabama Department of Mental Health,<br><br>Defendant. | CASE NO. 2:16-cv-00798-MHT-CSC<br><br>CLASS ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF |

**PLAINTIFFS' FILING OF SUPPLEMENTAL DATA REFLECTING COMPLIANCE WITH CONSENT DECREE**

The named Plaintiffs as class representatives and the Alabama Disabilities Advocacy Program submit this report reflecting the most recent status of compliance with the Consent Decree entered in this action on January 25, 2018. *See* Consent Decree, ECF No. 94. This report encompasses all new data that Defendant has provided to Plaintiffs since the last supplemental data filing on September 28, 2021. *See* Plaintiffs' Filing of Supplemental Data Reflecting Compliance with Consent Decree (September 28, 2021), ECF No. 204. All of the compliance

measures referenced below, other than the Emergency Treatment Protocol (ETP), must adhere to a timeframe of 34 days or less for completion of the relevant service. Thus, where evaluations are ordered, they must be completed within 34 days of Defendant's receipt of the order directing same. The reports on those evaluations must be submitted to the relevant circuit court within another 34 days (for a total of 68 days from the entry of the order to when the report on the evaluation must be submitted). Where a class member is ordered to be admitted to Taylor Hardin, Hillcrest, or Bryce for Competency Restoration Treatment, he or she must be admitted to the facility within 34 days following Defendant's receipt of the order directing same. For identification and treatment of class members under the ETP, the following time-related requirements are in place:

1. ADMH officials must provide notice to the Monitor of request for evaluation for emergency treatment within 48 hours of receiving same;
2. ADMH officials must ascertain whether the person referred for an evaluation for emergency treatment is a class member, and if the individual is a class member, arrange for a clinical professional to visit the class member to conduct an assessment of the class member's need for emergency treatment within 4 business days of the ADMH Designee's receipt of the notice of the class member's need for emergency treatment;
3. ADMH officials must arrange for the provision of emergency treatment to class members who, following an emergency evaluation for treatment, are deemed by a clinical professional to need early admission into a facility for purposes of receiving a court-ordered inpatient mental evaluation or competency restoration treatment within 7 days of the clinical professional's in-person visit;

4. ADMH officials must advise the Monitor of the clinical professional's determination regarding the class member's need for emergency treatment within 48 hours of the professional's in-person visit with the class member;
5. ADMH officials must advise the Monitor of any refusal by county jail officials to ADMH officials seeking access to a person referred for an evaluation for emergency treatment within 24 hours; and
6. ADMH officials must forward notice of an incarcerated criminal defendant believed to be suicidal to the Monitor within 24 hours.

## I. Identification and Treatment of Class Members Under the Emergency Treatment Protocol

Since the September 28, 2021 supplemental filing in this matter, two (2) individuals have been referred for treatment under the ETP. Defendant notified Plaintiffs within the appropriate timeframes of each individual's initial referral. One (1) individual was evaluated two (2) days after his initial referral. The other was referred on Friday, November 5 and had not been evaluated yet at the time of this filing; however, Defendant is still within the four (4) business day timeframe for having that individual evaluated. The first individual was determined to be not in need of emergency treatment, and Defendant notified Plaintiffs two (2) days following his evaluation, which is within the appropriate timeframe for same.

## II. Outpatient Mental Evaluations

Defendant provided Plaintiffs with data on Outpatient Mental Evaluations as conducted and submitted for the months of September and October 2021 at the beginning of each of the following months as part of Defendant's routine monthly transmission to Plaintiffs of some limited monitoring data. This represents all of the current data regarding the provision and submission of

Outpatient Mental Evaluations since the previous supplemental filing in this matter. *See* ECF No. 204.

The number of Outpatient Mental Evaluations performed during September and October 2021 increased over the previous month, with 42 and 41 evaluations conducted in each month respectively. Wait times for Outpatient Mental Evaluations continued to decrease, for wait times of 27.3 days in September and 21.9 days in October. Further, even when calculated in date-of-receipt order, wait times for provision and submission of Outpatient Mental Evaluations closely approached the Substantial Compliance timeframe in September and met it in October, for wait times of 34.1 days and 25.4 days respectively. Plaintiffs commend Defendant for this significant development. 74 of the 83 Outpatient Mental Evaluations conducted during September and October 2021 met the ADMH Commissioner's Substantial Compliance standard of 34 days, or roughly 89%.

Although Defendant continues to provide some evaluations outside of date-of-receipt order, Defendant has made vast improvements in providing substantive, understandable narrative reasons for why class members were skipped—for example, a jail may have failed to transport a class for his evaluation, or a defense attorney may have failed to provide the evaluator with information relating to the class member's mental health history. As discussed extensively in previous filings and monitoring reports, the parties have agreed that that out-of-order provision of competency services can be counted toward compliance where Defendant is able to provide a narrative reason why a class member was skipped. Plaintiffs are generally satisfied with the reasons Defendant has provided for why class members were skipped. Thus, for the months of September and October 2021, Plaintiffs will count out-of-order provision of Outpatient Mental Evaluations toward compliance.

As in previous reports, compliance was calculated based on the provision and submission of Outpatient Mental Evaluations in the date-of-receipt order specified by the Consent Decree, in addition to calculating compliance based on the total provision and submission of Outpatient Mental Evaluations as a whole. For individuals who were skipped and did not receive an Outpatient Mental Evaluation during the month in question, Plaintiffs used for compliance calculations the number of days that individual had been waiting for the provision of their Outpatient Mental Evaluation at the time that the waitlist for that month was finalized. For purposes of date-of-receipt order calculation, class members currently in the custody of the Alabama Department of Corrections (ADOC) will no longer be excluded, as forensic evaluators are now able to do evaluations of individuals in state prisons via telehealth. Because, as discussed above, Defendant achieved compliance with the 34-day timeframe for provision of Outpatient Mental Evaluations in September and October 2021, the date-of-receipt order calculations are included solely for context.

**Provision of Outpatient Mental Evaluations**

| Performance Period | Total Days Between Date Order Received and Date of Evaluation | Total Number of Evaluations | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 9/1-30/2021 | 1,146 | 42 | 27.3 days | 34 days | Compliant |
| 10/1-31/2021 | 899 | 41 | 21.9 days | 34 days | Compliant |

**Provision of Outpatient Mental Evaluations in Date-of-Receipt Order**

| Performance Period | Total Days Between Date Order Received and Date of Evaluation | Total Number of Evaluations | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 9/1-30/2021 | 1,433 | 42 | 34.1 days | 34 days | Noncompliant |
| 10/1-31/2021 | 1,041 | 41 | 25.4 days | 34 days | Compliant |

The average time periods for submission of reports on Outpatient Mental Evaluations remained low in September and October 2021. There was a slight increase in the timeframe for submission of Outpatient Mental Evaluations in October 2021, likely due to a few outlying evaluations that, according to the data submitted to Plaintiffs, took more than 50 days—and in some cases more than 90 days—to be submitted. However, average timeframes for same in October 2021 were still under the Substantial Compliance timeframe.

**Submission of Reports on Outpatient Mental Evaluations to Courts**

| Performance Period | Total Days Between Date of Evaluation and Submission to Court | Total Number of Submissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 9/1-30/2021 | 307 | 22 | 14 days | 34 days | Compliant |
| 10/1-31/2021 | 899 | 41 | 30.8 days | 34 days | Compliant |

## III. Inpatient Mental Evaluations

Wait times for Inpatient Mental Evaluations remain high; however, Defendant has made a concerted effort to admit class members to facilities for inpatient-based services and provide those same services in or very close to date-of-receipt order.

**Provision of Inpatient Mental Evaluations at Taylor Hardin Secure Medical Facility**

| Performance Period | Total Days Between Date Order Received and Date of Evaluation | Total Number of Evaluations | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 9/1-30/2021 | 548 | 2 | 274 days | 34 days | Noncompliant |
| 10/1-20/2021 | 57 | 2 | 28.5 days | 34 days | Compliant |

**Provision of Inpatient Mental Evaluations at Hillcrest Hospital**

| Performance Period | Total Days Between Date Order Received and Date of Evaluation | Total Number of Evaluations | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 9/1-30/2021 | N/A | 0 | N/A | 34 days | N/A |
| 10/1-31/2021 | N/A | 0 | N/A | 34 days | N/A |

**Provision of Inpatient Mental Evaluations at Bryce Hospital**

| Performance Period | Total Days Between Date Order Received and Date of Evaluation | Total Number of Evaluations | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 9/1-30/2021 | N/A | 0 | N/A | 34 days | N/A |
| 10/1-31/2021 | N/A | 0 | N/A | 34 days | N/A |

**Submission of Reports on Inpatient Mental Evaluations from Taylor Hardin Secure Medical Facility**

| Performance Period | Total Days Between Date of Evaluation and Submission to Court | Total Number of Submissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 9/1-30/2021 | 44 | 2 | 22 days | 34 days | Compliant |
| 10/1-31/2021 | N/A | 0 | N/A | 34 days | N/A |

**Submission of Reports on Inpatient Mental Evaluations from Hillcrest Hospital**

| Performance Period | Total Days Between Date of Evaluation and Submission to Court | Total Number of Submissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 9/1-30/2021 | N/A | 0 | N/A | 34 days | N/A |
| 10/1-31/2021 | N/A | 0 | N/A | 34 days | N/A |

**Submission of Reports on Inpatient Mental Evaluations from Bryce Hospital**

| Performance Period | Total Days Between Date of Evaluation and Submission to Court | Total Number of Submissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 9/1-30/2021 | N/A | 0 | N/A | 34 days | N/A |
| 10/1-31/2021 | N/A | 0 | N/A | 34 days | N/A |

## IV. Competency Restoration Treatment

Wait times for facility admission to begin receiving Competency Restoration Treatment (CRT) remain high, but Defendant continues to make efforts to admit class members to facilities in order for CRT. Wait times for two of the three class members admitted to Taylor Hardin for CRT in September 2021 exceeded 250 days; the other was an emergency admission who was admitted 21 days following the receipt of his order. All class members admitted to Taylor Hardin for CRT in October 2021 waited longer than 240 days for same. Prior to this filing, Plaintiffs were provided with updated information regarding CRT admissions to Bryce Hospital, so this supplemental filing includes data reflecting same from the months of July and August 2021, in addition to September and October 2021.

**Taylor Hardin Secure Medical Facility**

| Performance Period | Total Days Between Date Order Received and Date of Admission | Total Number of Admissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 9/1-30/2021 | 530 | 3 | 176.7 days | 34 days | Noncompliant |
| 10/1-31/2021 | 1,131 | 4 | 282.8 days | 34 days | Noncompliant |

**Hillcrest Hospital**

| Performance Period | Total Days Between Date Order Received and Date of Admission | Total Number of Admissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 9/1-30/2021 | 335 | 2 | 167.5 days | 34 days | Noncompliant |
| 10/1-31/2021 | N/A | 0 | N/A | 34 days | N/A |

**Bryce Hospital**

| Performance Period | Total Days Between Date Order Received and Date of Admission | Total Number of Admissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 7/1-31/2021 | 47 | 3 | 15.7 days | 34 days | Compliant |
| 8/1-31/2021 | 41 | 3 | 13.7 days | 34 days | Compliant |
| 9/1-30/2021 | N/A | 0 | N/A | 34 days | N/A |
| 10/1-31/2021 | 7 | 1 | 7 days | 34 days | Compliant |

## V. Hospital Forensic Beds

The Consent Decree requires that no fewer than 25 hospital forensic beds be added and operationalized between 12 and 24 months after entry of the Consent Decree.[1] The deadline for same was therefore January 24, 2020. By that time, the ADMH Commissioner had added and operationalized 15 hospital forensic beds at Hillcrest Hospital in Birmingham. Plaintiffs understand that, following some delays which were out of the Department's control, the Department has finalized plans to open a 16-bed facility in Greenville, Alabama in the fall of 2021. Plaintiffs understand that, in the meantime, the Department has brought online ten (10) temporary beds at Hillcrest Hospital in order to satisfy the terms of the Consent Decree. Plaintiffs are currently working with the Department to finalize plans to inspect the Greenville beds in December

[1] This is in addition to the 25 beds required to be added and operationalized in Year One, all of which were online at Taylor Hardin Secure Medical Facility as of July 2017. *See Hunter*, 2018 U.S. Dist. LEXIS 12086, at *18 (Section VI.2.A.i-iii).

2021. Once Plaintiffs have had the opportunity to inspect those beds, it is expected that the ADMH Commissioner will have achieved Substantial Compliance with the terms of the Consent Decree.

**VI. Community Forensic Beds**

The Consent Decree requires that 32 community forensic beds be added and operationalized between 12 and 24 months after entry of the Consent Decree.[2] The data that ADMH officials have provided to Plaintiffs to date indicates that ADMH officials have added and operationalized a total of 32 community forensic beds since the Consent Decree was entered on January 25, 2018. It is Plaintiffs' understanding that ADMH officials had, by January 24, 2020, secured a contract for 17 community forensic beds with JBS. ADMH officials have indicated that another 20 community forensic beds were added and operationalized in 2020. Plaintiffs are currently working with the Department to finalize plans to inspect these beds in December 2021. Once Plaintiffs have had the opportunity to inspect those beds, it is expected that the ADMH Commissioner will have achieved Substantial Compliance with the Year Two requirement for community forensic beds.

Dated: November 9, 2021

Respectfully submitted,

/s/Shandra N. Monterastelli

Shandra N. Monterastelli (ASB-1016-N00Q)
William Van Der Pol, Jr. (ASB-2112-114F)
Larry G. Canada (ASB-3153-N73L)
Lonnie J. Williams (ASB-2866-I35W)
ALABAMA DISABILITIES ADVOCACY PROGRAM
500 Martha Parham West
Box 870395
Tuscaloosa, AL 35487-0395
Telephone: (205) 348-4928
Facsimile: (205) 348-3909

---

[2] These 32 beds are in addition to the 20 beds that the Consent Decree required the ADMH Commissioner to add and operationalize during Year One. *See Hunter*, 2018 U.S. Dist. LEXIS 12086, at *19 (Section VI.2.B.i-iii).

Email: smonterastelli@adap.ua.edu
wvanderpoljr@adap.ua.edu
lcanada@adap.ua.edu
lwilliams@adap.ua.edu

*Attorneys for Plaintiffs Demontray Hunter, Russell D. Senn, and Travis S. Parks, Vandarius S. Darnell, Frank White, Jr., Marcus Jackson, Timothy D. Mount, and Henry P. McGhee and Plaintiff Alabama Disabilities Advocacy Program*

Henry F. (Hank) Sherrod III (ASB-1200-D63H)
HENRY F. SHERROD III, P.C.
119 South Court Street
Florence, AL 35630
Telephone: (256) 764-4141
Facsimile: (877) 864-0802
Email: hank@alcivilrights.com

Tish G. Faulks
ACLU of Alabama Foundation
P.O. Box 6179
Montgomery, AL 36106-0179
Telephone: (334) 420-1741
Facsimile: (334) 269-5666

*Attorneys for Plaintiffs Demontray Hunter, Russell D. Senn, and Travis S. Parks, Vandarius S. Darnell, Frank White, Jr., Marcus Jackson, Timothy D. Mount, and Henry P. McGhee*

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I have caused a true and correct copy of the foregoing to be served on the counsel of record listed below by filing same with the Clerk of Court this 28th day of September, 2021.

| | |
|---|---|
| Shandra N. Monterastelli<br>William Van Der Pol, Jr.<br>Larry G. Canada<br>Lonnie J. Williams<br>Alabama Disabilities Advocacy Program<br>500 Martha Parham West<br>Box 870395<br>Tuscaloosa, AL 35487-0395<br>smonterastelli@adap.ua.edu<br>wvanderpoljr@adap.ua.edu<br>lcanada@adap.ua.edu<br>lwilliams@adap.ua.edu | Thomas B. Klinner<br>Edward C. Hixon<br>Ashley L. Nichols<br>Nancy S. Jones<br>Alabama Department of Mental Health<br>RSA Union Building<br>100 North Union Street<br>Montgomery, Alabama 36104<br>Tommy.Klinner@mh.alabama.gov<br>Eddie.Hixon@mh.alabama.gov<br>Ashley.Nichols@mh.alabama.gov<br>Nancy.Jones@mh.alabama.gov |
| Henry F. (Hank) Sherrod III<br>Henry F. Sherrod III, P.C.<br>119 South Court Street<br>Florence, AL 35630<br>hank@alcivilrights.com | |
| Tish G. Faulks<br>ACLU of Alabama Foundation<br>P.O. Box 6179<br>Montgomery, AL 36106-0179<br>tgfaulks@aclualabama.org | |

/s/Shandra N. Monterastelli____________
Shandra N. Monterastelli (ASB-1016-N00Q)
*Counsel for Plaintiffs*