UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DEMONTRAY HUNTER, by and through his next friend, Rena Hunter; RUSSELL D. SENN, by and through his next friend, Irene Senn; TRAVIS S. PARKS, by and through his next friend, Catherine Young; VANDARIUS S. DARNELL, by and through his next friend, Bambi Darnell; FRANK WHITE, JR., by and through his next friend, Linda White; MARCUS JACKSON, by and through his next friend Michael P. Hanle; TIMOTHY D. MOUNT, by and through his next friend, Dorothy Sullivan; HENRY P. MCGHEE, by and through his next friend, Barbara Hardy, individually and on behalf of all others similarly situated; and the ALABAMA DISABILITIES ADVOCACY PROGRAM,

Plaintiffs,

v.

KIMBERLY G. BOSWELL, in her official capacity as Commissioner of the Alabama Department of Mental Health,

Defendant.

CASE NO. 2:16-cv-00798-MHT-CSC

CLASS ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF

**STATUS REPORT**

Defendant, Kimberly G. Boswell, Commissioner of the Alabama Department of Mental Health (the Department), submits this report and summary of the statements of Dr. Virginia Scott-Adams on the record during the Status Hearing of February 23, 2024, as ordered by the Court on February 23, 2024, in Doc. 278. The summary is taken from the transcript of the hearing as well as input from Dr. Scott-Adams.

**SUMMARY OF DR. SCOTT-ADAMS' TESTIMONY:**

Dr. Scott-Adams stated that there has a been a slight increase in number of days getting evaluation reports to the courts. (p. 6 – Transcript). She reviews these numbers twice a month. (p. 6 – Transcript). The increase was due to staffing. (p. 6 – Transcript). Two employees were promoted to other positions and had to be replaced. (p. 6 – Transcript). Also, two examiners were taking longer than expected to complete reports. (p. 6 – Transcript). This has been addressed with their supervisors and a plan of corrective action has been developed in effort to fully resolve this issue. (p. 6 - Transcript). Dr. Scott-Adams will continue to monitor the numbers. (p. 7 - Transcript).

The Court inquired as to completion of one inpatient evaluation in last reporting period. (p. 8 – Transcript). Ms. Monterastelli stated backlog with inpatient admissions. (p. 8 - Transcript). Once they are in the facility they get evaluated quickly. (p. 8 - Transcript). Dr. Scott-Adams agreed that wait times for admission are longer than we would like them to be. (p. 9 - Transcript). The recent evaluation was a unique case that presented some challenges for admission, but once he was admitted the evaluation process moved quickly. (p. 9 - Transcript). Ms. Monsterastelli agreed the wait times for admission to competency restoration for males are higher than any of the parties would like. (p. 10 - Transcript).

The wait times for females have seen a positive trend and are currently in substantial compliance. (p. 10 - Transcript). The Court inquired as to why wait times are longer for males. (p. 11 - Transcript). Dr. Scott-Adams explained that one reason is that far more orders are received for males than females. (p. 11 - Transcript). Volume and bed availability make it far easier to

admit females. (p. 11 - Transcript). The volume of orders for males has continued to increase and it is difficult to keep pace. (p. 11 - Transcript).

The department receives numerous orders for competency restoration when what is really being sought is a general diagnostic evaluation or medication management. (p. 12 - Transcript). These are actually separate and distinct goals but courts lump them together. (p. 12 - Transcript). Dr. Scott-Adams explained that they are trying to go through the waiting lists and identify cases where medication management or therapeutic intervention would be more appropriate than competency restoration. (p. 12 - Transcript). Providing the person with the services they actually need rather than simply being placed on a waiting list is sometimes more appropriate but can be complex to tackle. (p. 12 - Transcript). However, some people sent to the department for competency restoration are not appropriately referred and need other treatment. (p. 12 - Transcript).

Jail based restoration can be helpful for those defendants that require mostly the competency legal-education (the restoration curriculum) and do not require inpatient psychiatric hospitalization. (p. 13 - Transcript). Delivering this service to the right people in the right setting could restore some defendants more quickly, reduce the number of people on the waitlist, and allow those in need of hospitalization to be admitted more quickly. (p. 13 - Transcript). The department initiated a jail-based competency restoration pilot program to serve defendants in the Jefferson and Bessemer County Jail. (p. 14 - Transcript). It took some time to coordinate the provision of services with the jail but there are five defendants enrolled in the program. (p. 14 - Transcript). The program has built in a screening tool/protocol to identify when a defendant requires intervention beyond legal education such as medication management. (p. 14 - Transcript). There are plans to put a similar program in the Fayette County Jail utilizing Zoom technology as

Fayette is more a more rural setting as well as expanding to the Mobile Metro Jail in the future. (p. 14 - Transcript).

There is also a pilot program to offer community-based competency restoration to defendants on bond which allows these defendants to remain in the community and keep their jobs and stability, such as housing, intact. (p. 15 - Transcript). This program is still a pilot program because staffing and obtaining permanent funding to support this work are obstacles. (p. 15 - Transcript). We also look at opportunities for diversion for persons with minor charges that need services. (p. 15 - Transcript). Sometimes courts are willing to drop the charges if the person gains access to proper services and achieves psychiatric and behavioral stability. (p. 15 - Transcript).

Dr. Scott-Adams stated that her office established a Community of Practice to educate stakeholders on topics pertaining to forensic mental health and to strengthen partnerships across various stakeholders within the criminal justice and mental health systems. Such partnerships and shared understanding can reduce stigma and create opportunities for treatment and possibly diversion for people in the community who are involved in the criminal justice system but who have mental health needs. (p. 16 - Transcript).

In addition to delivering education within our system in Alabama, the Office of Forensic Mental Health Services also partners with the Substance Abuse and Mental Health Services Administration (SAMSHA) GAINS Center, is an active participant on the Policy Academy-Competency to Stand Trial and Competency Restoration Forensic Workgroup, and therefore works with other states to examine strategies for addressing the competency crisis. (p. 16 – Transcript). Through the Academy, Dr. Scott-Adams regularly collaborates with North Carolina, Texas, Washington, D.C., and other states to develop strategies for serving pre-trial defendants. (p. 16 - Transcript). Dr. Scott-Adams continues to research topics pertaining to the competency

crisis to ensure we are implementing interventions that are empirically supported and cost effective. (p. 17 - Transcript). Unfortunately, this is a national issue and other states are navigating similar litigation and consent decrees. (p. 17 - Transcript). Alabama's waiting list and wait times are less than that of many other states. (p. 17 - Transcript). Some states are managing forensic waitlists and wait times that far exceed wait times for restoration services in Alabama. (p. 17 - Transcript).

The department has an established a workplan that will move us toward achieving the commitments and goals established in the consent decree through building partnerships and establishing a system of care. (p. 18 – Transcript). At present, we have the attention of the courts and mental health centers who are growing increasingly supportive of our efforts. (p. 18 - Transcript). To carry out workplan, the Department will need to increase the number of qualified employees to work in the respective areas and will need increased funding to develop and maintain services. (p. 18 - Transcript). not enough staff to carry out the initiatives in the plan. (p. 18 - Transcript). Unfortunately There is, this is a national trend. (p. 18 - Transcript).

Dated: March 13, 2024

Respectfully submitted,

*/s/ Thomas B. Klinner*

Thomas B. Klinner (ASB-9911-L67T)
Edward C. Hixon (ASB-5964-H65E)
ALABAMA DEPARTMENT OF MENTAL HEALTH
RSA Union Building
100 North Union Street
Montgomery, Alabama 36104
Tommy.Klinner@mh.alabama.gov
Eddie.Hixon@mh.alabama.gov

*Attorneys for Defendant Kimberly G. Boswell*

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I have caused a true and correct copy of the foregoing to be served on the counsel of record listed below by filing same with the Clerk of Court via the CM/ECF system this 13th day of March 2024.

Shandra N. Monterastelli
William Van Der Pol, Jr.
Lonnie Williams
Alabama Disabilities Advocacy Program
500 Martha Parham West
Box 870395
Tuscaloosa, AL 35487-0395
wvanderpoljr@adap.ua.edu
lwilliams@adap.ua.edu
smonterastelli@adap.ua.edu

Henry F. (Hank) Sherrod III
Henry F. Sherrod III, P.C.
119 South Court Street
Florence, AL 35630
hank@alcivilrights.com

Tish G. Faulks
ACLU of Alabama Foundation
P.O. Box 6179
Montgomery, AL 36106-0179
tgfaulks@aclualabama.org

/s/ Thomas B. Klinner
Thomas B. Klinner (ASB-9911-L67T)
Counsel for Defendant