UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DEMONTRAY HUNTER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KIMBERLY G. BOSWELL, in her official capacity as Commissioner of the Alabama Department of Mental Health,<br><br>Defendant. | CASE NO. 2:16-cv-00798-MHT-CSC<br><br>CLASS ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF |

**PLAINTIFFS' FILING OF SUPPLEMENTAL DATA REFLECTING COMPLIANCE WITH CONSENT DECREE**

The named Plaintiffs as class representatives and the Alabama Disabilities Advocacy Program submit this report reflecting the most recent status of compliance with the Consent Decree entered in this action on January 25, 2018. *See* Consent Decree, ECF No. 94. This report encompasses all new data that Defendant has provided to Plaintiffs since the last supplemental data filings on February 20, 2024. *See* Plaintiffs' Filing of Supplemental Data Reflecting Compliance with Consent Decree (Feb. 20, 2024), ECF No. 275.

All compliance measures referenced below, other than those pertinent to requests for treatment under the Emergency Treatment Protocol (ETP), must adhere to a timeframe of 34 days or less for completion of the relevant service. Thus, where evaluations are ordered, they must be completed within 34 days of Defendant's receipt of the order directing same. The reports on those evaluations must be submitted to the relevant circuit court within another 34 days (for a total of 68 days from the entry of the order to when the report on the evaluation must be submitted). Where a class member is ordered to be admitted to Taylor Hardin, Hill Crest, Bryce, or the Norman-

McClendon Facility for Competency Restoration Treatment, that individual must be admitted to the facility within 34 days following Defendant's receipt of the order directing same. For identification and treatment of class members under the ETP, the following timeframes are in place:

1. ADMH officials must provide notice to the Monitor of request for evaluation for emergency treatment within 48 hours of receiving same;
2. ADMH officials must ascertain whether the person referred for an evaluation for emergency treatment is a class member, and if the individual is a class member, arrange for a clinical professional to visit the class member to conduct an assessment of the class member's need for emergency treatment within 4 business days of the ADMH Designee's receipt of the notice of the class member's need for emergency treatment;
3. ADMH officials must arrange for the provision of emergency treatment to class members who, following an emergency evaluation for treatment, are deemed by a clinical professional to need early admission into a facility for purposes of receiving a court-ordered inpatient mental evaluation or competency restoration treatment within 7 days of the clinical professional's in-person visit;
4. ADMH officials must advise the Monitor of the clinical professional's determination regarding the class member's need for emergency treatment within 48 hours of the professional's in-person visit with the class member;
5. ADMH officials must advise the Monitor of any refusal by county jail officials to ADMH officials seeking access to a person referred for an evaluation for emergency treatment within 24 hours; and

6. ADMH officials must forward notice of an incarcerated criminal defendant believed to be suicidal to the Monitor within 24 hours.

## I. Identification and Treatment of Class Members Under the Emergency Treatment Protocol

The data provided to Plaintiffs indicates that one class member was referred for emergency treatment during the period since the February 20 supplemental data filing in this matter. ADMH officials were notified of this individual's potential emergency need on April 17, and the individual was approved for emergency facility admission within hours. ADMH officials notified counsel for Plaintiffs of this individual's approval for emergency admission on April 19. She was admitted to Bryce on April 25.

## II. Outpatient Mental Evaluations

The number of Outpatient Mental Evaluations performed increased during the period since the February 20 supplemental data filing, with 35, 25, 69, 46, 38, and 54 evaluations conducted in each month respectively. In total, Defendant conducted a total of 302 evaluations during the period since the last supplemental data filing. Wait times for Outpatient Mental Evaluations were mostly low when accounting for "skips and jumps," for the following average wait times:

- 28.3 days in February 2024;
- 35.2 days in March 2024;
- 21.6 days in April 2024;
- 21.5 days in May 2024;
- 24.4 days in June 2024; and
- 20 days in July 2024.

When calculated in date-of-receipt order, wait times for provision of Outpatient Mental Evaluations fluctuated to an extent, for the following average wait times:

- 41.1 days in February 2024;
- 55.1 days in March 2024;
- 36.6 days in April 2024;
- 55.7 days in May 2024;
- 43 days in June 2024; and
- 34 days in July 2024.

The parties have agreed that out-of-order service provision can be counted toward compliance where Defendant provides substantive, understandable narrative reasons for why class members were skipped. In general, Defendant has continued to put forth a good-faith effort to provide the required narratives:

- In February 2024, Defendant provided narrative reasons for 14 of 21 (66%) of individuals who either did not receive Outpatient Mental Evaluations or who had waited more than 34 days to receive theirs as of the date of receipt.
- In March 2024, Defendant provided narrative reasons for 16 of 21 (~76%) of individuals who either did not receive Outpatient Mental Evaluations or who had waited more than 34 days to receive theirs as of the date of receipt.
- In April 2024, Defendant provided narrative reasons for 11 of 26 (~42%) of individuals who either did not receive Outpatient Mental Evaluations or who had waited more than 34 days to receive theirs as of the date of receipt.
- In May 2024, Defendant provided narrative reasons for 14 of 34 (~41%) individuals who either did not receive Outpatient Mental Evaluations or who had waited more than 34 days to receive theirs as of the date of receipt.

- In June 2024, Defendant provided narrative reasons for 10 of 14 (~71%) individuals who either did not receive Outpatient Mental Evaluations or who had waited more than 34 days to receive theirs as of the date of receipt.
- In July 2024, Defendant provided narrative reasons for 13 of 16 (~81%) individuals who either did not receive Outpatient Mental Evaluations or who had waited more than 34 days to receive theirs as of the date of receipt.

Although the average wait time for Outpatient Mental Evaluations in date-of-receipt order has continued to exceed 34 days in most months, Defendant has continued her good-faith effort to provide clear, substantive narratives to explain most of the skips or delays in service provision, providing narratives for a majority of skips or delays in most months.

As in previous reports, compliance was calculated based on the provision and submission of Outpatient Mental Evaluations in the date-of-receipt order specified by the Consent Decree, in addition to calculating compliance based on the total provision and submission of Outpatient Mental Evaluations as a whole. For individuals who were skipped and did not receive an Outpatient Mental Evaluation during the month in question, Plaintiffs used for compliance calculations the number of days that individual had been waiting for the provision of their Outpatient Mental Evaluation at the time that the waitlist for that month was finalized.

**Provision of Outpatient Mental Evaluations**

| Performance Period | Total Days Between Date Order Received and Date of Evaluation | Total Number of Evaluations | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 2/1-29/2024 | 990 | 35 | 28.3 days | 34 days | Compliant |
| 3/1-31/2024 | 880 | 25 | 35.2 days | 34 days | Compliant |
| 4/1-30/2024 | 1,488 | 69 | 21.6 days | 34 days | Compliant |
| 5/1-31/2024 | 991 | 46 | 21.5 days | 34 days | Compliant |
| 6/1-30/2024 | 926 | 38 | 24.4 days | 34 days | Compliant |
| 7/1-31/2024 | 1,079 | 54 | 20 days | 34 days | Compliant |

**Provision of Outpatient Mental Evaluations in Date-of-Receipt Order**

| Performance Period | Total Days Between Date Order Received and Date of Evaluation | Total Number of Evaluations | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 2/1-29/2024 | 1,438 | 35 | 41.1 days | 34 days | Compliant |
| 3/1-31/2024 | 1,378 | 25 | 55.1 days | 34 days | Compliant |
| 4/1-30/2024 | 2,523 | 69 | 36.6 days | 34 days | Compliant |
| 5/1-31/2024 | 2,560 | 46 | 55.7 days | 34 days | Compliant |
| 6/1-30/2024 | 1,633 | 38 | 43 days | 34 days | Compliant |
| 7/1-31/2024 | 1,836 | 54 | 34 days | 34 days | Compliant |

The average time periods for submission of reports on Outpatient Mental Evaluations was under the Substantial Compliance threshold in every month since the last supplemental data filing in this matter. Plaintiffs are encouraged to see that the problematic upward trend in timeframes for submission of reports on Outpatient Mental Evaluations that was evident earlier in the year has not continued.

**Submission of Reports on Outpatient Mental Evaluations to Courts**

| Performance Period | Total Days Between Date of Evaluation and Submission to Court | Total Number of Submissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 2/1-29/2024 | 882 | 37 | 23.8 days | 34 days | Compliant |
| 3/1-31/2024 | 803 | 32 | 25.1 days | 34 days | Compliant |
| 4/1-30/2024 | 1,045 | 54 | 19.4 days | 34 days | Compliant |
| 5/1-31/2024 | 1,379 | 65 | 21.2 days | 34 days | Compliant |
| 6/1-30/2024 | 1,131 | 56 | 20.2 days | 34 days | Compliant |
| 7/1-31/2024 | 1,587 | 58 | 27.4 days | 34 days | Compliant |

## III. Inpatient Mental Evaluations

The data provided by Defendant indicates that no class members received Inpatient Mental Evaluations during the period since the February 20, 2024 supplemental data filing. Plaintiffs remain encouraged by what appears to be an improvement in the efficiency with which the Department manages its operational capacity (i.e., focusing resources on completing evaluations on an outpatient basis wherever possible).

## IV. Competency Restoration Treatment

For males, wait times for facility admission to begin receiving Competency Restoration Treatment (CRT) remain consistently in excess of 300 days. However, it is clear that Defendant continues to make efforts to admit class members to facilities in order for CRT. Wait times for females to be admitted to Bryce for CRT have generally decreased, although outliers in October 2023 and January 2024 inflated the averages to an extent.

**Taylor Hardin Secure Medical Facility**

| Performance Period | Total Days Between Date Order Received and Date of Admission | Total Number of Admissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 2/1-29/2024 | 1,476 | 4 | 369 days | 34 days | Noncompliant |
| 3/1-31/2024 | 1,977 | 3 | 659 days | 34 days | Noncompliant |
| 4/1-30/2024 | 674 | 2 | 337 days | 34 days | Noncompliant |
| 5/1-31/2024 | 3,703 | 5 | 740.6 days | 34 days | Noncompliant |
| 6/1-30/2024 | N/A | N/A | N/A | N/A | N/A |
| 7/1-31/2024 | N/A | N/A | N/A | N/A | N/A |

**Hill Crest Hospital**

| Performance Period | Total Days Between Date Order Received and Date of Admission | Total Number of Admissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 2/1-29/2024 | 1,087 | 2 | 543.5 days | 34 days | Noncompliant |
| 3/1-31/2024 | N/A | N/A | N/A | N/A | N/A |
| 4/1-30/2024 | 1,181 | 2 | 590.5 days | 34 days | Noncompliant |
| 5/1-31/2024 | N/A | N/A | N/A | N/A | N/A |
| 6/1-30/2024 | N/A | N/A | N/A | N/A | N/A |
| 7/1-31/2024 | N/A | N/A | N/A | N/A | N/A |

**Norman-McClendon Facility (South Central Mental Health Center)**

| Performance Period | Total Days Between Date Order Received and Date of Admission | Total Number of Admissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 2/1-29/2024 | 972 | 2 | 486 days | 34 days | Noncompliant |
| 3/1-31/2024 | N/A | N/A | N/A | N/A | N/A |
| 4/1-30/2024 | N/A | N/A | N/A | N/A | N/A |
| 5/1-31/2024 | N/A | N/A | N/A | N/A | N/A |
| 6/1-30/2024 | N/A | N/A | N/A | N/A | N/A |
| 7/1-31/2024 | N/A | N/A | N/A | N/A | N/A |

**Bryce Hospital**

| Performance Period | Total Days Between Date Order Received and Date of Admission | Total Number of Admissions | Average Time Period | Substantial Compliance Timeframe | Status |
|---|---|---|---|---|---|
| 2/1-29/2024 | N/A | N/A | N/A | N/A | N/A |
| 3/1-31/2024 | 1,087 | 2 | 543.5 days | 34 days | Noncompliant |
| 4/1-30/2024 | 617 | 7 | 88.1 days | 34 days | Noncompliant |
| 5/1-31/2024 | 191 | 3 | 88 days | 34 days | Noncompliant |
| 6/1-30/2024 | 78 | 1 | 78 days | 34 days | Noncompliant |
| 7/1-31/2024 | N/A | N/A | N/A | N/A | N/A |

## V. Hospital Forensic Beds

On January 18, 2023, the ADMH Commissioner was determined to have achieved full compliance with measures relating to Hospital Forensic Beds, and that portion of monitoring was terminated. *See* ECF No. 245.

## VI. Community Forensic Beds

On January 18, 2023, the ADMH Commissioner was determined to have achieved full compliance with measures relating to Community Forensic Beds, and that portion of monitoring was terminated. *See* ECF No. 245.

Dated: February 20, 2024

Respectfully submitted,

/s/Shandra M. Hartly
Shandra M. Hartly (ASB-1016-N00Q)
William Van Der Pol, Jr. (ASB-2112-114F)
Larry G. Canada (ASB-3153-N73L)
Lonnie J. Williams (ASB-2866-I35W)
ALABAMA DISABILITIES ADVOCACY PROGRAM
500 Martha Parham West
Box 870395
Tuscaloosa, AL 35487-0395
Telephone: (205) 348-4928
Facsimile: (205) 348-3909
Email: smhartly@adap.ua.edu
wvanderpoljr@adap.ua.edu
lcanada@adap.ua.edu

lwilliams@adap.ua.edu

*Attorneys for Plaintiffs Demontray Hunter, Russell D. Senn, and Travis S. Parks, Vandarius S. Darnell, Frank White, Jr., Marcus Jackson, Timothy D. Mount, and Henry P. McGhee and Plaintiff Alabama Disabilities Advocacy Program*

Henry F. (Hank) Sherrod III (ASB-1200-D63H)
HENRY F. SHERROD III, P.C.
119 South Court Street
Florence, AL 35630
Telephone: (256) 764-4141
Facsimile: (877) 864-0802
Email: hank@alcivilrights.com

*Attorneys for Plaintiffs Demontray Hunter, Russell D. Senn, and Travis S. Parks, Vandarius S. Darnell, Frank White, Jr., Marcus Jackson, Timothy D. Mount, and Henry P. McGhee*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I have caused a true and correct copy of the foregoing to be served on the counsel of record listed below by filing same with the Clerk of Court this 16th day of August, 2024.

| | |
|---|---|
| Shandra M. Hartly<br>William Van Der Pol, Jr.<br>Larry G. Canada<br>Lonnie J. Williams<br>Alabama Disabilities Advocacy Program<br>2008 12th Street<br>Box 870395<br>Tuscaloosa, AL 35487-0395<br>smonterastelli@adap.ua.edu<br>wvanderpoljr@adap.ua.edu<br>lcanada@adap.ua.edu<br>lwilliams@adap.ua.edu | Thomas B. Klinner<br>Edward C. Hixon<br>Ashley L. Nichols<br>Nancy S. Jones<br>Jacob A. Dubin<br>Alabama Department of Mental Health<br>RSA Union Building<br>100 North Union Street<br>Montgomery, Alabama 36104<br>Tommy.Klinner@mh.alabama.gov<br>Eddie.Hixon@mh.alabama.gov<br>Ashley.Nichols@mh.alabama.gov<br>Nancy.Jones@mh.alabama.gov<br>Jacob.Dubin@mh.alabama.gov |
| Henry F. (Hank) Sherrod III<br>Henry F. Sherrod III, P.C.<br>119 South Court Street<br>Florence, AL 35630<br>hank@alcivilrights.com | |

/s/Shandra M. Hartly______________
Shandra M. Hartly (ASB-1016-N00Q)
*Counsel for Plaintiffs*