UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DEMONTRAY HUNTER, by and through his next friend, Rena Hunter; RUSSELL D. SENN, by and through his next friend, Irene Senn; TRAVIS S. PARKS, by and through his next friend, Catherine Young; VANDARIUS S. DARNELL, by and through his next friend, Bambi Darnell; FRANK WHITE, JR., by and through his next friend, Linda White; MARCUS JACKSON, by and through his next friend Michael P. Hanle; TIMOTHY D. MOUNT, by and through his next friend, Dorothy Sullivan; HENRY P. MCGHEE, by and through his next friend, Barbara Hardy, individually and on behalf of all others similarly situated; and the ALABAMA DISABILITIES ADVOCACY PROGRAM,<br><br>Plaintiffs,<br><br>v.<br><br>KIMBERLY G. BOSWELL, in her official capacity as Commissioner of the Alabama Department of Mental Health,<br><br>Defendant. | CASE NO. 2:16-cv-00798-MHT-CSC<br><br>CLASS ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF |

**<u>JOINT STATUS REPORT</u>**

The named Plaintiffs as class representatives, the Alabama Disabilities Advocacy Program, and Kimberly G. Boswell, Commissioner of the Alabama Department of Mental Health, jointly submit this report on the status of compliance with the Consent Decree entered in this action on January 25, 2018 (*See* Order Directing Status Report, ECF No. 95; Consent Decree, ECF No. 94).

1. The last status conference occurred on August 23, 2024.

2. Since the hearing held on August 23, 2024, the following has occurred:

   a. A Joint Motion for the Partial Termination of the consent decree was filed. *See* EFC No. 286.

   b. The Motion was granted, and the monitoring provisions of the consent decree pertaining to inpatient and outpatient mental evaluations were terminated. All other provisions not otherwise terminated remain, including monitoring of competency restoration treatment. *See* EFC No. 287.

3. The Court had previously, on January 18, 2023, terminated the portion of the Consent Decree pertaining to the Defendant's obligations to provide additional hospital forensic beds and community forensic beds due to Defendant's substantial compliance. *See* EFC No. 245.

4. On January 19, 2023, the Court terminated other requirements of Defendant concerning training and education requirements, etc. as the mandates were completed. *See* EFC No. 248.

5. Shondra Monterastelli Hartley, counsel for Plaintiffs, filed a Motion to Withdraw on October 14, 2024. *See* EFC No. 288.

6. On October 15, 2024, the Motion to Withdraw was granted.

7. The goal is to continue to admit more patients per month, though still outpaced by the number of new, incoming commitment orders, and additional defendants added to the waitlist. Despite the steady increase of inpatient orders, the Department is committed to continued focus on both admissions and discharges as equal priority.

8. Jail-based restoration will help the Department to more swiftly identify those defendants who require inpatient level of care, versus those who can effectively and

appropriately provided competency restoration services in the jail or community setting. The status of the pilot is as follows:

a. The department continues to maintain our a partnership with UA-Doctoral Psychology Program, which allows Doctoral students and two faculty Psychologists to assist with the provision of psychology related services including evaluations and delivering restoration. This includes utilizing approaches to restoration designed to meet the unique needs of defendants with Intellectual Disabilities.

b. The ADMH partnered with the University of Alabama to obtain funding through a Bureau of Justice Assistance to deliver restoration services to defendants in both the Jefferson and Bessemer County jails. The program has expanded to include jails in the following counties: Fayette, Pickens, and Lamar. Restoration services will be available to defendants in the Shelby County jail over the coming weeks. The program will continue to expand over time, delivering restoration to defendants who are in jail and possibly eliminating the need for hospitalization.

c. The Department continues to foster partnerships with the jail to ensure continuity of care for defendants enrolled in the program and to facilitate connections between local mental health centers/community providers and jail staff.

d. There now are established procedures for communicating with the courts when defendants are enrolled in the program, and for communicating with examiners.

e. The Department has provided education to court personal on the restoration program, allowing a greater number of defendants to be released on bond while they receive restoration. The Office of Forensic Mental Health Services makes this

service available primarily using secure and encrypted tele-modalities (e.g., zoom). We are also partnering with Mental Health Centers so that arrangements can be made for defendants to access psychotropic medication when and if necessary.

f. The Department provided training on jail-based restoration models during our joint conference with the UA Southern Behavioral Health and Law Initiative. Other training initiatives include the District Attorney's meetings and through the ViTAL summit, offered in Mobile, Birmingham, Huntsville, in Montgomery which allows for training over 400 people on this approach to service the forensic population and overcoming barriers.

g. Examiners have been trained on procedures for making recommendations for the court, such as the most appropriate place for restoration to occur.

Jail-based restoration to competency programming is currently being piloted in Jefferson and Mobile Counties, and Lamar/Pickens/Fayette Counties, tuning the model to accommodate both larger metropolitan counties and less-densely populated rural counties.

The Department further remains vigilant in seeking opportunities to educate the Bench and Bar, with speaking engagements, lunch-and-learns, or other useful programming to reduce the number of orders to the Department and empower Courts to divert defendants into local care and away from the criminal justice system. The Department co-sponsored a forensic conference in May 2024, which drew a diverse audience of law enforcement, mental health providers, defense attorneys, district attorneys, and judges. The legal division also presented on Rule

11 and Rule 25 procedures on January 22, 2025, at the DA Associates Winter Conference in Muscle Shoals.

9. The Office of Forensic Mental Health Services was recently granted an award through the National Association of State and Mental Health Program Directors (NASMPHPDs). Funding will allow us to 1) partner with peer specialists to bring peer services into the competency restoration model and to solicit their feedback to improve the current model, 2) offer a training allowing clinicians working across the state to be trained on Competency Restoration and to become certified to deliver the curriculum to increase the number of trained professionals available to deliver the service, 3) to hire Competency Restoration Specialists (CRSs) (approximately four) to work with the office and to deliver CR services to defendants who are currently on the waitlist. It is anticipated that 96 people will be served through this model. 5) to establish a plan for offering longer term peer support and case management services to defendants who complete restoration so that they maintain competency and continue on the path to recovery.

10. Our Forensic Director, Dr. Virginia Scott Adams, will be offering free training on legal Competency Restoration, which will allow clinicians to become an Alabama Certified Competency Restoration Specialist (CRS). This will increase the number of clinicians who are trained to deliver CR services.

11. Our women's waitlist to be admitted to Bryce Hospital has increased in the past few months. However, part of the increase was partially due to the COVID outbreak in the hospital, which cause the quarantine of at least five beds. The quarantine will end in March of this year and will make additional female beds available.

12. Our Forensic Director, Dr. Virginia Scott Adams, has been authorized to hire an additional person to work under her in the forensic division, which will free her up to provide technical assistance and coordination to get the evaluations done in a more timely manner.
13. Although the Taylor Hardin waitlist for competency restoration treatment still climbs, we are steadily working on the renovations of Taylor Hardin, and the addition of additional beds.
14. The Commissioner has asked for additional funds from the legislature to increase community beds, which will allow for individuals still residing in Taylor Hardin to move into the community, which will make available more beds open at Taylor Hardin for additional forensic admissions.

**PLAINTIFF'S REPONSE**

While Defendants should be commended on successfully solving all but one area of the Consent Decree, the remaining area is and has always been the most difficult to resolve and poses potentially the greatest violation of the Constitution in the entire Decree: competency restoration services. To be clear, the affected population are those who have been charged with a crime and linger for YEARS in county jails awaiting competency restoration services. This lengthy wait is not new.

Unsurprisingly, the failure to provide timely competency restoration services was the very first area discussed in the original Complaint (Doc 1) filed in this case because it serves as the gateway to resolution of a criminal case while a mentally ill inmates languishes in a county jail

awaiting services. It is a well-known fact that not all individuals charged with a crime will be successfully restored to competency so the matter of whether they in fact even committed a crime at all is needlessly delayed.; all the while the defendant remains held in a jail setting and his/her liberty is curtailed. It is well known that approximately 20-30 % of inmates initially found incompetent are not restorable, and hence long term psychiatric care is needed. (See, for example ***Incompetent, to Stand Trial, Not Restorable, and Dangerous***; Journal of American Academic Psychiatry and Law, 48:237 @ 238 (2020).

With the current waiting list for male and female inmates provided as of January 31, 2025, that would result in 60 to 90 individuals currently housed in county jails who are unlikely to ever be restored to competency, but all the time languishing in an Alabama County Jails awaiting services to see if they are even restorable, and all the time likely receiving mental health services well below the standards of a State Forensic Hospital such as Bryce or Taylor Hardin. The lack of significant services at local county jails also needlessly increases the likely level of suffering for the defendants await services and is counterproductive toward the ultimate goal of determining who is and is not restorable since first the hospital must address any increased mental health issues caused by long-term lack of care. Even for those who are ultimately restored to competency, it is extremely probable that some will ultimately be adjudicated not guilty of the crime for which they are being held. Others will undoubtedly have their cases dismissed for one reason or another. Others will undoubtedly be deemed non-restorable but not in need of a secure setting such as a jail.

But despite this indisputable reality they vainly wait in a line of, for males, YEARS for their admission to competency restoration services, For females, the wait time is a mere six months or so despite the agreement setting the time at 31 days. According to the January report, not a

single male was admitted to Taylor Hardin, and the two females admitted to Bryce, equaled the number of newly committed females. In short, the Defendants have made little or no meaningful progress, now more than seven years after this Court granted approval of the Consent Decree (Doc. 93, dated Jan. 25, 2018).

While defendants mention with pride current or pilot programs at County Jails to provide in-jail restoration services, they neglect to even remotely discuss the current number of individuals serviced in such settings, or how many more they can service outside of Taylor Hardin if the new programs come online as they hope. Plaintiffs suggest that defendants should be prepared to discuss putting "more meat on the bone" at the hearing to include the current number of individuals serviced in these remote settings (i.e. not a state forensic hospital), and a timetable and expected occupancy number at other programs not currently in use so the Plaintiffs and the Court can see if such plans stand any hope of allowing the Department to meet the requirements of the agreed upon Court Order in a reasonable time, or whether more drastic action is required. While Defendants should be applauded for successfully achieving compliance with the other section of the agreed upon Consent Decree, much is left to be done, and for which scant evidence exists, based on past history, that Defendants will even achieve full compliance with the Court Order and their own agreement.

Respectfully submitted,

/s/ William Van Der Pol, Jr.
William Van Der Pol, Jr. (ASB-2112-114F)
ALABAMA DISABILITIES ADVOCACY PROGRAM
Lonnie J. Williams (ASB-2866-I35W)
500 Martha Parham West
Box 870395
Tuscaloosa, AL 35487-0395
Telephone: (205) 348-4928

Facsimile: (205) 348-3909
Email: wvanderpoljr@adap.ua.edu
lwilliams@adap.ua.edu

*Attorneys for Plaintiffs Demontray Hunter, Russell D. Senn, and Travis S. Parks, Vandarius S. Darnell, Frank White, Jr., Marcus Jackson, Timothy D. Mount, and Henry P. McGhee and Plaintiff Alabama Disabilities Advocacy Program*

Henry F. (Hank) Sherrod III (ASB-1200-D63H)
HENRY F. SHERROD III, P.C.
119 South Court Street
Florence, AL 35630
Telephone: (256) 764-4141
Facsimile: (877) 864-0802
Email: hank@alcivilrights.com

ACLU OF ALABAMA FOUNDATION
P.O. Box 6179
Montgomery, AL 36106-0179
Telephone: (334) 420-1741
Facsimile: (334) 269-5666
rmarshall@aclualabama.org

*Attorneys for Plaintiffs Demontray Hunter, Russell D. Senn, and Travis S. Parks, Vandarius S. Darnell, Frank White, Jr., Marcus Jackson, Timothy D. Mount, and Henry P. McGhee*

/s/ Thomas B. Klinner______________________________

Thomas B. Klinner
Edward C. Hixon
Ashley L. Nichols
ALABAMA DEPARTMENT OF MENTAL HEALTH
RSA Union Building
100 North Union Street
Montgomery, Alabama 36104
Tommy.Klinner@mh.alabama.gov
Eddie.Hixon@mh.alabama.gov
Ashley.Nichols@mh.alabama.gov
*Attorneys for Defendant Kimberly G. Boswell*

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I have caused a true and correct copy of the foregoing to be served on the counsel of record listed below by filing same with the Clerk of Court via the CM/ECF system this 21st day of February 2025.

| | |
|---|---|
| William Van Der Pol, Jr.<br>Lonnie Williams<br>Larry Canada<br>Alabama Disabilities Advocacy Program<br>500 Martha Parham West<br>Box 870395<br>Tuscaloosa, AL 35487-0395<br>wvanderpoljr@adap.ua.edu<br>lwilliams@adap.ua.edu<br>smonterastelli@adap.ua.edu | Thomas B. Klinner<br>Edward C. Hixon<br>Ashley L. Nichols<br>Nancy S. Jones<br>Alabama Department of Mental Health<br>RSA Union Building<br>100 North Union Street<br>Montgomery, Alabama 36104<br>Tommy.Klinner@mh.alabama.gov<br>Eddie.Hixon@mh.alabama.gov<br>Ashley.Nichols@mh.alabama.gov<br>Nancy.Jones@mh.alabma.gov |
| Henry F. (Hank) Sherrod III<br>Henry F. Sherrod III, P.C.<br>119 South Court Street<br>Florence, AL 35630<br>hank@alcivilrights.com | |
| Tish G. Faulks<br>ACLU of Alabama Foundation<br>P.O. Box 6179<br>Montgomery, AL 36106-0179<br>tgfaulks@aclualabama.org | |

/s/ Thomas B. Klinner
Thomas B. Klinner (ASB-9911-L67T)
Counsel for Defendant