UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DEMONTRAY HUNTER, by and through his next friend, Rena Hunter; RUSSELL D. SENN, by and through his next friend, Irene Senn; TRAVIS S. PARKS, by and through his next friend, Catherine Young; VANDARIUS S. DARNELL, by and through his next friend, Bambi Darnell; FRANK WHITE, JR., by and through his next friend, Linda White; MARCUS JACKSON, by and through his next friend Michael P. Hanle; TIMOTHY D. MOUNT, by and through his next friend, Dorothy Sullivan; HENRY P. MCGHEE, by and through his next friend, Barbara Hardy, individually and on behalf of all others similarly situated; and the ALABAMA DISABILITIES ADVOCACY PROGRAM,<br><br>Plaintiffs,<br><br>v.<br><br>KIMBERLY G. BOSWELL, in her official capacity as Commissioner of the Alabama Department of Mental Health,<br><br>Defendant. | CASE NO. 2:16-cv-00798-MHT-CSC<br><br>CLASS ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF |

**JOINT STATUS REPORT**

The named Plaintiffs as class representatives, the Alabama Disabilities Advocacy Program, and Kimberly G. Boswell, Commissioner of the Alabama Department of Mental Health, jointly submit this report on the status of compliance with the Consent Decree entered in this action on January 25, 2018 (*See* Order Directing Status Report, ECF No. 95; Consent Decree, ECF No. 94).

1. The last status conference occurred on February 26, 2025. This Court previously terminated the monitory provisions of the consent decree pertaining to inpatient and outpatient mental evaluations. The remaining provisions include monitoring of competency restoration treatment admissions. The Defendant presented this Court with information regarding outpatient and jail-based competency restoration programs undertaken by ADMH.
2. ADMH provided competency restoration training to 94 individuals on April 29, 2025.
3. ADMH continues to operate and expand the outpatient and jail-based Competency Restoration (CR) programs, making CR available to defendants in settings other than inpatient hospitals. The jail-based CR program is currently operating in Jefferson (Birmingham and Bessemer Divisions), Pickens, Fayette, Lamar and Shelby County jails. The program is expanding into Mobile, Etowah and Houston County jails. The CR program also includes peer services for those enrolled in the program.
4. Since expanding the outpatient and jail-based CR programs, ADMH has seen a decrease in the number of orders for inpatient commitment. Historically, ADMH has received approximately 20 orders per month. Over the last quarter, the average number of inpatient orders has decreased to 13 per month. ADMH is hopeful that this trend will continue.
5. The renovations of Taylor Hardin are nearing completion. Assuming proper staffing levels are obtained, approximately 80 additional beds will become operational at Taylor Hardin, eventually increasing the total capacity of Taylor Hardin from 140 to 220. This should improve the pace of admissions.

6. ADMH's goal remains to eventually discharge patients at a faster pace than new inpatient commitment orders are received from Circuit Courts.

**PLAINTIFF'S REPONSE**

Despite the promised improvement and additional resources ADMH suggested were soon to become available, in the period since the last report no progress has been made in either the total number in individuals awaiting in-patient services, or the length of stays in jail settings awaiting appropriate placement at a forensic hospital. While ADMH outlined an array of systems and alternate programs they were planning on deploying to deal with the ever-increasing delay in admissions, it is unclear which, if any, have in fact been accomplished since the last report in February, 2025. It is without dispute that the longer that inmates remain in jail settings poorly equipped to treat mentally ill individuals, the more ill such individuals become and the poorer the outcomes. Longer stays in county jails result in a patient far more likely to be in worse shape upon admission, lengthening the period of stay and decreasing the likelihood of restoration. **Challenges to Reforming the Competence to Stand Trial and Competence Restoration System**; *https://psychiatryonline.org/doi/10.1176/appi.ps.201900483*.

The numbers do not lie. In February 2025 the total number of males awaiting admission was 269, it is now 273. More importantly than the sheer number of males awaiting services, is the total wait times in county jails poorly equipped to serve this population. In February, the longest wait was 796 days. It has now skyrocketed to 943 days. While admittedly the number may be misleading since inmate (inmate 2) was "skipped" in admission, the longest wait for

admission now shows more than 35 individuals waiting for admission for a greater period of time (796 days) than the longest wait in the February report, a significant step in the wrong direction. Not surprisingly, the average wait time has increased from 354 days to 393 for the entire cohort.

For females, the results are equally bleak. In February 2025, there were 30 women awaiting admission while in August that number had risen to 32. This was even though more females were admitted in the last 6 months (12) than males admitted in the same period (10). Despite what at first blush seems like little deterioration in the situation, a closer examination of the data shows that the single more important fact (length of stay in jail) has dramatically increased. The longest female awaiting admission has risen from approximately 6 months in February to 10 months in August. Simply put, the situation is more dire today than it was 6 months ago.

Since it is now two consecutive six month periods that the ADMH has failed to "curb the bleeding" much less make significant progress, it is prudent that the Plaintiffs and the Court examine what barriers to eventual compliance with the Consent Decree are present, so that the Court and the Parties can address the real causes for this slow deterioration in the situation.

The current information required by the Court (which merely states the inmates' name, date of receipt of the order, and days on the waiting list) is insufficient to determine what bottlenecks may be present. Accordingly, Plaintiffs request the Court to require ADMH to provide the exact status of alternative programs (such as jail-based services which are obliquely mentioned in their response), number of inmates enrolled, and success rates for each of the programs outlined in either their response in this report, or their response in the last reporting

period. Armed with this information, the parties and the Court can better access the Department's commitment to bring this case to a successful conclusion.

Secondly, the Plaintiff's request the Court to require the Department to identify those individuals who primary competency barrier is either a result of a substantially subaverage IQ (plaintiff's suggest a cutoff of 55 or below) as these individuals cannot receive some sort of pharmacological intervention or other treatment option which would increase their likelihood of restoration, and for each such individual require the Department to engage with the local court on alternatives other than an almost certainly ill-fated attempt at restoration.

Similarly, the Plaintiff's request that the Court require the Department to identify individuals on the waiting list who have a significant Traumatic Brain Injury, or significant neuro-cognitive impairment (such as advanced Alzheimer's or a Stroke) and require the Department to engage with the local court about alternative resolutions. These two cohorts are historically not going to be rendered competent despite the best efforts of clinicians and could substantially decrease the number awaiting services, and release a badly needed bed to a patient more likely to be restored than one where restoration services are doomed from the beginning. A report on such efforts should be made periodically (perhaps each 3 months) to assess progress.

Plaintiffs request the Court to Order the Department to disclose the total number of forensic (identified as someone subject to this Court Order) released from either Taylor Hardin or Bryce Hospital on a quarterly basis, along with the current capacity, location, and population of forensic group home beds in the state as of that date. Armed with this data, it may be apparent that the issue is that ADMH does not have sufficient outpatient capacity to move appropriate

candidates to the community, and/or is not moving appropriate individuals to a less secure setting, creating a logjam not at the front door of the hospital system, but rather at the backdoor. Additionally, the Department should be required to state the total number of inmates subject to this Court Order currently housed at Bryce and Taylor Hardin (along with sex at Bryce) to aid the Court in evaluating if the Department is utilizing appropriate available resources to comply with this Order.[1]

Finally, Plaintiffs request the Department to identify and summarize any petitions for discharge from Bryce and Taylor Hardin or movement out of a forensic group home, to include a copy of any petition filed with the criminal court, and order of such court on a quarterly basis. The Department should also be required to produce a list of all patients which the patient's treatment team deems appropriate for community placement but no Petition has been filed along with an explanation, if any, why a request was not filed to include the lack of a suitable available community bed. Armed with this data, it may be apparent that the issue is that the Department is not seeking release (or in unable to seek release) when appropriate, needlessly making it impossible to add new patients as none are moving through the continuum of care.

With these additional steps, a solution to what is clearly an untenable and unfixable situation may become clearer. While Plaintiff's are aware of the plans to increase the size and capacity of Taylor Hardin, assuming it can be staffed (and the Court should be skeptical due to

[1] Patients in Taylor Hardin consist solely of males who have either been determined currently Incompetent to Stand Trial (IST's) which are subject to this Court Order, as well as individuals who have been found Guilty but Mentally Ill (GBMI's). The picture at Bryce is a bit more complicated as it contains both male and female patients, and beyond the two above categories, include individuals who have not been charged with any crime but rather are there under a Civil Commitment Order from a Court.

the exact same problems plaguing the Department of Corrections), it will only provide a one-time relief of taking in approximately 1/3 of the waiting list, as the problem is that there is no movement out of the forensic hospitals, not open, unused beds.

Hence, the Plaintiffs respectfully request the Court to impose the additional reporting requirement as outlined herein so that the Court and the Parties can better assess and diagnosis why compliance is getting further away rather than closer at hand.

Respectfully submitted,

/s/ William Van Der Pol, Jr.
William Van Der Pol, Jr. (ASB-2112-114F)
ALABAMA DISABILITIES ADVOCACY PROGRAM
Lonnie J. Williams (ASB-2866-I35W)
500 Martha Parham West
Box 870395
Tuscaloosa, AL 35487-0395
Telephone: (205) 348-4928
Facsimile: (205) 348-3909
Email: wvanderpoljr@adap.ua.edu
lwilliams@adap.ua.edu

*Attorneys for Plaintiffs Demontray Hunter, Russell D. Senn, and Travis S. Parks, Vandarius S. Darnell, Frank White, Jr., Marcus Jackson, Timothy D. Mount, and Henry P. McGhee and Plaintiff Alabama Disabilities Advocacy Program*

Henry F. (Hank) Sherrod III (ASB-1200-D63H)
HENRY F. SHERROD III, P.C.
119 South Court Street
Florence, AL 35630
Telephone: (256) 764-4141
Facsimile: (877) 864-0802
Email: hank@alcivilrights.com

ACLU OF ALABAMA FOUNDATION
P.O. Box 6179
Montgomery, AL 36106-0179
Telephone: (334) 420-1741
Facsimile: (334) 269-5666
rmarshall@aclualabama.org

*Attorneys for Plaintiffs Demontray Hunter, Russell D. Senn, and Travis S. Parks, Vandarius S. Darnell, Frank White, Jr., Marcus Jackson, Timothy D. Mount, and Henry P. McGhee*

/s/ Thomas B. Klinner

Thomas B. Klinner
Edward C. Hixon
Ashley L. Nichols
ALABAMA DEPARTMENT OF MENTAL HEALTH
RSA Union Building
100 North Union Street
Montgomery, Alabama 36104
Tommy.Klinner@mh.alabama.gov
Eddie.Hixon@mh.alabama.gov
Ashley.Nichols@mh.alabama.gov
*Attorneys for Defendant Kimberly G. Boswell*

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I have caused a true and correct copy of the foregoing to be served on the counsel of record listed below by filing same with the Clerk of Court via the CM/ECF system this 18th day of August 2025.

| | |
|---|---|
| William Van Der Pol, Jr.<br>Lonnie Williams<br>Larry Canada<br>Alabama Disabilities Advocacy Program<br>500 Martha Parham West<br>Box 870395<br>Tuscaloosa, AL 35487-0395<br>wvanderpoljr@adap.ua.edu<br>lwilliams@adap.ua.edu<br>smonterastelli@adap.ua.edu | Thomas B. Klinner<br>Edward C. Hixon<br>Ashley L. Nichols<br>Alabama Department of Mental Health<br>RSA Union Building<br>100 North Union Street<br>Montgomery, Alabama 36104<br>Tommy.Klinner@mh.alabama.gov<br>Eddie.Hixon@mh.alabama.gov<br>Ashley.Nichols@mh.alabama.gov<br>Nancy.Jones@mh.alabma.gov |
| Henry F. (Hank) Sherrod III<br>Henry F. Sherrod III, P.C.<br>119 South Court Street<br>Florence, AL 35630<br>hank@alcivilrights.com | |
| Tish G. Faulks<br>ACLU of Alabama Foundation<br>P.O. Box 6179<br>Montgomery, AL 36106-0179<br>tgfaulks@aclualabama.org | |

/s/ Thomas B. Klinner
Thomas B. Klinner (ASB-9911-L67T)
Counsel for Defendant