UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DEMONTRAY HUNTER, by and through his next friend, Rena Hunter; RUSSELL D. SENN, by and through his next friend, Irene Senn; TRAVIS S. PARKS, by and through his next friend, Catherine Young; VANDARIUS S. DARNELL, by and through his next friend, Bambi Darnell; FRANK WHITE, JR., by and through his next friend, Linda White; MARCUS JACKSON, by and through his next friend Michael P. Hanle; TIMOTHY D. MOUNT, by and through his next friend, Dorothy Sullivan; HENRY P. MCGHEE, by and through his next friend, Barbara Hardy, individually and on behalf of all others similarly situated; and the ALABAMA DISABILITIES ADVOCACY PROGRAM,

Plaintiffs,

v.

KIMBERLY G. BOSWELL, in her official capacity as Commissioner of the Alabama Department of Mental Health,

Defendant.

CASE NO. 2:16-cv-00798-MHT-CSC

CLASS ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF

**JOINT STATUS REPORT**

The named Plaintiffs as class representatives, the Alabama Disabilities Advocacy Program, and Kimberly G. Boswell, Commissioner of the Alabama Department of Mental Health ("ADMH"), jointly submit this report on the status of compliance with the Consent Decree entered in this action on January 25, 2018 (*See* Order Directing Status Report, ECF No. 95; Consent Decree, ECF No. 94).

1. The last status conference occurred on August 21, 2025. On August 22, 2025, this court submitted this matter to mediation with Magistrate Judge John Ott to identify and examine existing barriers to ultimate compliance with an eye toward finding solutions. The parties have met with Judge Ott for multiple mediation sessions since then to explore barriers and propose solutions.

2. On December 16, 2025, ADMH met with the Plaintiffs and Judge Ott by videoconference. Commissioner Boswell and other ADMH personnel presented a plan to significantly reduce the inpatient waiting list over the next 12 to 18 months. The highlights of this plan are as follows:

   a. **Implement Taylor Hardin expansion to 225 beds by the end of 2026.**

      Taylor Hardin Secure Medical Facility completed the construction phase of its expansion to increase capacity from 140 to 225 beds. An estimated 12 additional beds are being placed into service each month along with additional direct care staff. Since November 1, 2025, Taylor Hardin's census grew from 143 patients to currently 161 patients.

   b. **Implement Taylor Hardin staffing as additional beds open.**

ADMH has allocated resources to add staff as additional beds open and the facility eventually increases from 140 to 225 patients by the end of 2026.

c. **Increase the admission and discharge rates at Taylor Hardin through revised policies and efficiency.**

ADMH is implementing practices to more efficiently document and process referrals for conditional release where appropriate. In addition, the hospital is moving the risk assessment component from the discharge planning phase to the admission/intake phase, allowing for treatment plans to address criminogenic needs and risk factors beginning at the time of admission and throughout the patient's stay. Taylor Hardin is hiring a full-time discharge coordinator to more closely manage the discharge process. Taylor Hardin is restructuring its hiring of inpatient Certified Forensic Examiners (CFEs). ADMH will now contract with CFEs directly and the CFEs will be under the direct supervision of ADMH clinical staff. ADMH anticipates higher efficiency to the inpatient evaluation process and faster patient turnaround.

d. **Hire four statewide Forensic Navigators to pursue diversion from the inpatient waiting list.**

Forensic Navigators are used in other states and are proven to reduce inpatient forensic waiting lists. The purpose of Forensic Navigators is to identify persons on the waiting list who are appropriate for diversion from the inpatient waiting list due to factors that would make them unlikely to be restored to competency, such as intellectual or developmental disability, traumatic brain injury, dementia, Alzheimer's, advanced age, chronic or complex medical

illness, etc., and link them with the appropriate services outside of forensic inpatient treatment or refer them for outpatient competency restoration. ADMH is hiring four Forensic Navigators to work full-time in different parts of the state. All parties in this case recognize that there are persons on the waiting list that would be better served elsewhere and should be identified and diverted appropriately. For example, two defendants with intellectual disabilities were identified and diverted from jail to residential group home settings with Medicaid Waiver services supporting them. Two additional defendants with intellectual disabilities are currently in the process of similar diversions.

e. **Increased compensation for CFEs.**

ADMH recognizes that rate of pay for CFEs in Alabama is behind that of neighboring states, hindering the ability to recruit and retain qualified CFEs. ADMH is increasing the compensation for CFEs to better compete with neighboring states.

f. **Increased compensation for Psychologists.**

Likewise, ADMH recognizes that the rate of pay for Psychology staff at Taylor Hardin is behind that of neighboring states, hindering the ability to recruit and retain qualified Psychologists. ADMH is conducting a salary study to determine whether and how the department can increase the compensation for Psychology staff to better compete with neighboring states.

g. **Open an additional 16 bed forensic group home.**

ADMH added significant forensic group home capacity pursuant to the Consent Decree in this case. However, the demand for group home beds

continues to grow. Lack of forensic group home beds directly affects the ADMH's ability to discharge patients from Taylor Hardin. Northwest Alabama Mental Health Center has agreed to build and operate an additional 16 bed forensic group home for ADMH forensic patients. ADMH has allocated the resources to fund this project. This will increase community capacity and our ability to timely discharge patients from Taylor Hardin.

h. **Continued expansion of outpatient restoration.**

The outpatient competency restoration program is continuing to grow as Circuit Judges become aware of the program and order additional defendants for restoration. ADMH is presently interviewing for a full-time employee devoted to running this program. Currently, ADMH can enroll approximately 30 defendants at a time. This program directly reduces the inpatient waiting list.

i. **Legislation to address long-term solutions for lengthy confinement of certain patients in ADMH.**

ADMH drafted proposed legislation to address two ongoing concerns with long-term ADMH forensic patients.

First, Alabama law does not have a time limit for confinement of defendants opined unrestorable to competency or adjudicated not guilty by reason of mental disease or defect. Therefore, defendants may be confined in Taylor Hardin longer than they would have served on the underlying criminal charge if the Circuit Judge denies release. The net result is that some patients stay at Taylor Hardin long-term because there is no legal mechanism to compel

Alabama courts to release them, despite the fact that they may have been arrested on a less serious charge or have attained psychiatric stability. This proposed legislation would limit confinement to the maximum of the sentence allowed for the crime charged, or a maximum of 20 years.

Second, patients found unrestorable or not guilty by reason of mental disease or defect do not have the right of direct appeal if a Circuit Court denies release. This is an existing flaw in Alabama's Rules of Criminal Procedure. ADMH's only recourse is a petition for Writ of Mandamus to the appellate court. A mandamus petition is entirely discretionary with the appellate court and does not require a ruling on the merits. A direct appeal would afford the opportunity for a direct appeal for every denial.

Commissioner Boswell and her staff have worked diligently to find a sponsors for these bills in order to guide them through the legislative process this session. Both bills now have sponsors in the Alabama Legislature and are expected to be considered by the Judiciary Committees in both houses.

**PLAINTIFF'S RESPONSE**

Plaintiffs concur that the structural modifications to Taylor Hardin have finally been completed, however Taylor Hardin lacks the staff to fully operationalize the new beds. Only a small fraction of the new beds can in fact be utilized until and hopefully when, additional staff is hired and on-boarded. Hence, while there has been a slight uptick in the number of admissions due to the few new additional beds, ADMH remains fair out of compliance by any measurable

metric to meet the terms of the Consent Decree now, or in the relative future without a significant change in the way that the system currently operates. Even if somehow ADMH were able to operationalize all of the new beds, they would still be far short of meeting the required benchmark of days for Court Order to admission under the Consent Decree.

To summarize for the Court for clarity sake the process, a given individual is charged with a crime, and if his/her attorney so files, a competency evaluation is conducted in the jail to determine current competency to stand trial, Those determined by the Court competent, after review of the report proceed to adjudicate their offense as any other defendant in the criminal justice system. Those determined to lack the current capacity to be tried, are adjudicated as in need of competency restoration services and remain in that status until: 1: they are deemed restored to competency: 2: they receive competency restoration services (at the jail, at alternative hospital sites contracted by the state, or are admitted to Taylor Hardin for males, Bryce Hospital for females). Restoration services result in one of two alternatives, they are restored to competency, and their criminal case is adjudicated, or they are deemed non-restorable in which case their release or continued confinement is covered by Rule 11 of the Alabama Rules of Criminal Procedure. That rule has no mandatory release date regardless of the crime, so someone could be held until a court so chooses to release a person from confinement at Taylor to most likely a limited number of forensic group home settings. From there, they remain until and unless either "stepped down" to a less secure setting, or perhaps unconditionally released. Both the "group home setting" and less restrictive setting are in constant demand and perpetually full, allowing no escape value from Taylor Hardin even for those deemed ready (and a court agrees to) a less restrictive setting.

While it is accurate to state that a new 16 bed forensic group home is becoming available, it will be at least one year until occupancy, as it is a new build. Consequently, the parties have been deeply engaged with Judge John Ott in mediation looking at a multifaceted approach to reduce the waitlist down to the level required under the Consent Decree. Some of components of that plan will require a change in Alabama Law via the legislature. The parties are also exploring other alternatives to increase admissions, decrease placement on the waitlist, diverting some non-restorable patients from the waitlist and seek direct placement in an appropriate setting so as to avoid unnecessarily taxing Taylor Hardin with those that are clearly unable to be restored, and several other methodologies all designed to eventually allow ADMH to reach compliance with the Consent Decree. Whether any and/or all will bear fruit leaves to be seen. What is crystal clear are three things. 1.The status quo without significant substantive changes is not acceptable. 2. Which of those suggested changes will become available soon. 3. There is no possibility that ADMH can reach compliance within the current expiration date of the consent decree regardless of which changes occur.

Consequently, Plaintiffs request the court to set an intermediate hearing halfway between the current hearing and the one currently set in six months. By that date, it will be clear the results of the current legislative session, which if any changes ADMH can do, what a more realistic expiration date for the Consent Decree might look like along with benchmarks leading to compliance, and if necessary, what consequences may become requested by Plaintiffs.

Respectfully submitted,

/s/ William Van Der Pol, Jr.
William Van Der Pol, Jr. (ASB-2112-114F)
Lonnie J. Williams (ASB-2866-I35W)
Larry Canada

500 Martha Parham West
Box 870395
Tuscaloosa, AL 35487-0395
Telephone: (205) 348-4928
Facsimile: (205) 348-3909
Email: wvanderpoljr@adap.ua.edu
lcanada@adap.ua.edu
lwilliams@adap.ua.edu

*Attorneys for Plaintiffs Demontray Hunter, Russell D. Senn, and Travis S. Parks, Vandarius S. Darnell, Frank White, Jr., Marcus Jackson, Timothy D. Mount, and Henry P. McGhee and Plaintiff Alabama Disabilities Advocacy Program*

Henry F. (Hank) Sherrod III (ASB-1200-D63H)
HENRY F. SHERROD III, P.C.
119 South Court Street
Florence, AL 35630
Telephone: (256) 764-4141
Facsimile: (877) 864-0802
Email: hank@alcivilrights.com

ACLU OF ALABAMA FOUNDATION
P.O. Box 6179
Montgomery, AL 36106-0179
Telephone: (334) 420-1741
Facsimile: (334) 269-5666
rmarshall@aclualabama.org

*Attorneys for Plaintiffs Demontray Hunter, Russell D. Senn, and Travis S. Parks, Vandarius S. Darnell, Frank White, Jr., Marcus Jackson, Timothy D. Mount, and Henry P. McGhee*

/s/ Edward C. Hixon

Jacob A. Dubin
Edward C. Hixon
Ashley L. Nichols
ALABAMA DEPARTMENT OF MENTAL HEALTH
RSA Union Building
100 North Union Street
Montgomery, Alabama 36104

Jacob.Dubin@mh.alabama.gov
Eddie.Hixon@mh.alabama.gov
Ashley.Nichols@mh.alabama.gov
*Attorneys for Defendant Kimberly G. Boswell*

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I have caused a true and correct copy of the foregoing to be served on the counsel of record listed below by filing same with the Clerk of Court via the CM/ECF system this 11th day of February 2026.

| | |
|---|---|
| William Van Der Pol, Jr.<br>Lonnie Williams<br>Larry Canada<br>Alabama Disabilities Advocacy Program<br>500 Martha Parham West<br>Box 870395<br>Tuscaloosa, AL 35487-0395<br>wvanderpoljr@adap.ua.edu<br>lwilliams@adap.ua.edu<br>lcanada@adap.ua.edu | Jacob A. Dubin<br>Edward C. Hixon<br>Ashley L. Nichols<br>Alabama Department of Mental Health<br>RSA Union Building<br>100 North Union Street<br>Montgomery, Alabama 36104<br>Jacob.Dubin@mh.alabama.gov<br>Eddie.Hixon@mh.alabama.gov<br>Ashley.Nichols@mh.alabama.gov |
| Henry F. (Hank) Sherrod III<br>Henry F. Sherrod III, P.C.<br>119 South Court Street<br>Florence, AL 35630<br>hank@alcivilrights.com | |
| ACLU of Alabama Foundation<br>P.O. Box 6179<br>Montgomery, AL 36106-0179 | |

/s/ Edward C. Hixon
Edward C. Hixon
Counsel for Defendant